**COPY**

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF.
LOS ANGELES
2009 OCT 16 PM 4:03
BY _____
FILED

1  MEISELMAN, DENLEA, PACKMAN,
   CARTON & EBERZ P.C.
2  Jeffrey I. Carton (*pro hac vice* pending)
   Christine M. Ford (*pro hac vice* pending)
3  1311 Mamaroneck Avenue
   White Plains, New York 10605
4  (914) 517-5000

5  CALDWELL LESLIE & PROCTOR, PC
   ROBYN C. CROWTHER, SBN 193840
6  Crowther@caldwell-leslie.com
   MATTHEW W. O'BRIEN, SBN 261568
7  Obrien@caldwell-leslie.com
   1000 Wilshire Blvd., Suite 600
8  Los Angeles, California 90017-2463
   Telephone: (213) 629-9040
9  Facsimile: (213) 629-9022

10

11 Attorneys for Plaintiff
   and all others similarly situated

12

13           UNITED STATES DISTRICT COURT

14       FOR THE CENTRAL DISTRICT OF CALIFORNIA

15 PETER WILSON, On behalf of himself    Case No.
   and all others similarly situated,
16                                        CV09 07560 GW VBKx
                Plaintiff,
17                                        **CLASS ACTION COMPLAINT**

18    v.

19 GATEWAY, INC., RICHARD D.             1.   **BREACH OF CONTRACT**
   SNYDER, QUINCY L. ALLEN,
20 JANET M. CLARKE, J. EDWARD            2.   **BREACH OF THE
   COLEMAN, SCOTT GALLOWAY,                   IMPLIED COVENANT OF
21 GEORGE H. KRAUSS, DOUGLAS L.               GOOD FAITH AND FAIR
   LACEY, JOSEPH G. PARHAM, JR.,              DEALING**
22 DAVE RUSSELL, and PAUL E.
   WEAVER,                              3.   **UNJUST ENRICHMENT**
23
                Defendants.
24                                       **DEMAND FOR JURY TRIAL**

25

26      Plaintiff, by his attorneys, Meiselman, Denlea, Packman, Carton & Eberz

27 P.C., as and for his class action complaint, alleges, with personal knowledge as to

28 his own actions, and upon information and belief as to those of others, as follows:

-1-

CLASS ACTION COMPLAINT

1

2                        **<u>Nature of this Case</u>**

3          1.      This class action seeks to redress the deceptive breach of contract and

4    breach of the covenant of good faith and fair dealing committed by Gateway, Inc.

5    ("Gateway") and it Board of Directors in connection with its purported assignment

6    of warranties to an insolvent company in an effort to impair its customers' ability to

7    obtain the services for which they paid considerable sums.

8          2.      Gateway, once a darling of the technology sector, was a rising star in

9    the 1980s and early 1990s.  However, following the "dot.com bust" in the early

10   2000s, Gateway was unable to regain its star status in the competitive computer

11   marketplace.  With an eroding market share and increased liabilities, Gateway

12   needed to poise itself for acquisition to keep its brand name alive.

13         3.      As a regular part of its business, Gateway aggressively marketed and

14   sold extended warranties for its computers.  Gateway's customers, believing that

15   Gateway would honor the warranty, individually paid hundreds of dollars and, in

16   the aggregate, millions of dollars for the security of knowing that their computers

17   would be repaired in the event of a malfunction.

18         4.      Gateway, however, in its rush to be acquired completely disregarded

19   the expectations of its customers and assigned all the outstanding warranties from

20   its Professional Division to MPC Corporation ("MPC"), a corporation that Gateway

21   knew or should have known was on the brink of insolvency.   As part of the MPC

22   deal, Gateway acquired a 19% ownership stake in MPC and made a $10 million

23   cash infusion to MPC.

24         5.      Having shed the liability of its warranty obligations through its

25   purported transfer to MPC, Gateway was well-positioned to have its more profitable

26   consumer business acquired by computer giant Acer, Inc. for more than $700

27   million.

28

CLASS ACTION COMPLAINT

6.    Within mere months of acquiring the Gateway warranties, MPC shut its doors and filed for bankruptcy.  MPC has not and cannot honor any warranty claims.  As part of its diligence in acquiring a massive equity stake in MPC, Gateway knew or should have known of MPC's precarious financial condition.

7.    Gateway's purported assignment of warranties to MPC completely frustrated the essential purpose of the warranty contracts and materially impaired its customers' ability to receive the performance for which they paid substantial sums. Gateway knew or should have known that MPC was well on the way to insolvency and could not honor warranty obligations.  Yet, Gateway and its Board of Directors purposely plowed forward without regard to the very real likelihood that consumers' warranty obligations would not be fulfilled.  Accordingly, Gateway's assignment of warranties to MPC is ineffective as a matter of law. Gateway, however, refuses to provide any warranty support or services to persons who had purchased a computer through its Professional Division.

8.    Customers now hold worthless warranties for which they paid considerable sums.  Gateway's assignment of the warranties to MPC was in bad faith, with knowledge that the warranties would be rendered worthless.

9.    By contrast, Gateway profited considerably by selling the warranties, not once but twice – to customers and then to MPC.   The sale of the Professional Division allowed Gateway to be acquired for hundreds of millions of dollars.

10.    This suit is brought on behalf of a nationwide class of all persons who purchased an extended warranty from Gateway's Professional Division whose warranty, in turn, was sold to MPC Corporation during the period from January 1, 2005, to the present (the "Class").  It seeks, inter alia, damages, restitution and/or compensatory damages for Plaintiffs and each Class member, including but not limited to:  damages; reimbursement; attorneys' fees; and the costs of this suit.

**Jurisdiction and Venue**

CLASS ACTION COMPLAINT

11.   Jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d), as some class members' citizenship is diverse from Defendant, there are more than 100 class members, and the amount in controversy is in excess of $5 million.

12.   Venue is proper in this district under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Central District of California.

13.   Venue is also proper in this district under 28 U.S.C. § 1391(a)(2), on the grounds that a substantial part of the events relating to Plaintiffs' claims occurred in the Central District of California.

### Parties

14.   Plaintiff Peter Wilson is a resident of the State of California, San Bernardino County.  Mr. Wilson purchased a Gateway computer with an extended warranty Gateway purported to assign to MPC.  Neither company will honor the warranty.  Accordingly, Mr. Wilson's warranty has been rendered worthless.

15.   Defendant Gateway, Inc. is incorporated under the laws of the State of Delaware, with its principal place of business located in Irvine, California.

16.   Defendant Gateway, Inc. does actual business throughout the State of California, including through the direct sale of its merchandise in the State.

17.   Defendant Richard D. Snyder has been a director of Gateway since 1991.

18.   Defendant Quincy L. Allen has been a director of Gateway since 2006.

19.   Defendant Janet M. Clarke has been a director of Gateway since 2005.

20.   Defendant J. Edward Coleman is Gateway's chief executive officer and has served as a director of Gateway since 2006.

21.   Defendant Scott Galloway has been a director of Gateway since 2006.

22.   Defendant George H. Krauss has been a director of Gateway since 1991.

CLASS ACTION COMPLAINT

23.     Defendant Douglas L. Lacey has been a director of Gateway since 1989.

24.     Defendant Joseph G. Parham, Jr. has been a director of Gateway since 2005.

25.     Defendant Dave Russell has been a director of Gateway since 2007.

26.     Defendant Paul E. Weaver has been a director of Gateway since 2006.

## Operative Facts

### A.     *Gateway Becomes One of the Country's Most Trusted Computer Brands*

27.     Founded in 1985 in an Iowa farmhouse, Gateway founders Ted Waitt and Mike Hammond successfully developed a business of direct sales of personal computers ("PCs").

28.     Gateway capitalized on its homespun, Midwestern roots by implementing advertising campaigns with the tagline "Computers from Iowa?" and by shipping its products in distinctive cow-patterned boxes.  For several years, cows featured prominently in Gateway's marketing materials and Gateway even sold dolls of its cow mascot.

29.     In 1991, *Inc.* magazine named Gateway the fastest growing private company in America.

30.     In 1993, Gateway completed an initial public offering and started trading on the NASDAQ.  By the mid-1990s, Gateway became a fixture on the *Fortune* 500 list of the largest companies worldwide.

31.     After relocating its headquarters to California in 1998, Gateway operated three divisions:  (1) the Professional Division, which sold computers to educational institutions, small businesses and governmental entities; (2) the Consumer Division, which focused on direct sales to consumers; and (3) the retail division, which sold computers through major retailers such as Best Buy and Wal-Mart.  Many students purchased Gateway computers and extended warranties through the Professional Division.

-5-

**B.**     *Gateway's Market Share Erodes As It Struggles To Compete In the Competitive Computer Field*

32.     After riding high through the late 1990s, Gateway struggled in the dot-com bust at the beginning of the decade.

33.     In the early 2000s, Gateway struggled to return to profitability by withdrawing from international markets, reducing retail outlets and entering into the consumer electronics markets.

34.     At the same time, the once-struggling Apple Inc. was reinvigorated with the introduction of new products and services that began to erode Gateway's market share.

35.     Moreover, Gateway's expansion into the consumer electronics marketplace saw only mild success and the company withdrew from that market segment in 2004.

36.     Struggling to compete against these market forces, Gateway determined to focus its energies on maximizing the profit potential for its consumer businesses and attracting an acquirer.  The problem:  Gateway's Professional Division and its warranty liability of $60 million.

37.     On August 27, 2007, Gateway announced that it was "considering" selling its Professional Division, which would help Gateway streamline expenses by $130-150 million annually.  Later that same day, Gateway announced its consumer divisions were being acquired by Acer, Inc., the Taiwan-based technology giant. The acquisition by Acer, which was valued at $710 million, did not include Gateway's Professional Division.

38.     Desperate to shed its Professional Division in an effort to complete the Acer acquisition, Gateway turned to Idaho-based MPC Corporation. *Within a mere week*, on September 4, 2007, Gateway trumpeted a deal with MPC in which MPC agreed to acquire Gateway's Professional Division for $90 million.  As part of the MPC deal, Gateway acquired a 19.9% stake in MPC and infused $10 million in cash

CLASS ACTION COMPLAINT

1  into MPC.  Expressly included as part of the MPC deal was that MPC would assume
2  Gateway's warranty obligations to its Professional Division customers, a liability
3  estimated at $60 million.  Discovery will reveal that Gateway's $10 million
4  investment was the pay-off to MPC for assuming liabilities that MPC never
5  intended to honor.

6        39.    Gateway, which as part of the MPC deal acquired a major stake in
7  MPC, knew or should have known that MPC was not able to shoulder the burden of
8  Gateway's warranties.  At the time the Professional Division sale was announced,
9  MPC itself was on the brink of insolvency.  Indeed, MPC's Form 10-Q for the
10 period ended September 30, 2007 -- the quarter in which the acquisition of
11 Gateway's Professional Division was announced -- which was publicly filed with
12 the United States Securities and Exchange Commission warned:

13        *[T]here can be no assurance that we will be able to continue in the*
14        *ordinary course of business due to our significant liquidity*
15        *constraints, unprofitable operations and negative operating cash*
16        *flows. . . .*
17        We face liquidity constraints . . . .
18        We may need to raise a significant amount of additional funds to satisfy
19        vendor payment obligations and to fund our business if our losses
20        continue.  There can be no assurance that we will be able to secure
21        additional sources of financing.  Even if we do obtain additional
22        funding, the amount of such funding may not be sufficient to fully
23        address all of our liquidity constraints, which could negatively and
24        materially impact our business and results of operations.

25        40.    Despite these dire public warnings, in its desperation to rid itself of
26 liabilities and increase its attractiveness to Acer, Gateway ignored altogether the
27 interests of its customers who spent good money for warranties.  Thus, Gateway

28

CLASS ACTION COMPLAINT

assigned its warranty obligations knowing that the assignment to MPC materially impaired the customers' ability to obtain performance on a warranty claim.

41.     Immediately upon the close of the MPC deal in October 2007, Gateway disclaimed any liability for warranty obligations for its Professional Division customers and referred them to MPC.  MPC, however, was never financially or otherwise able to assume the warranty obligations.

42.     In fact, the risk to Gateway's warranty holders was immediately apparent.  In MPC's Form 10-K for the period ended December 31, 2007 identified several "risk factors" to its business including, "Gateway's warranty and other obligations assumed by us may exceed those contemplated at the time of the acquisition."  Specifically, MPC's Form 10-K reported:

> In connection with our acquisition of [Gateway's] Professional Business, we assumed all of the warranty obligations and other obligations . . . of the Professional Business.  The amount of the assumed obligations and timing of related cash flows to fund such obligations may differ from our estimates and could adversely impact our limited ability to fund these obligations and adversely impact our relationships with customers and suppliers.

MPC also reported that Gateway had become the largest holder of MPC's common stock and, as such, "is able to exercise significant influence over matters subject to shareholder approval."

**C.     The Gateway Acquisition Pushes MPC Into Insolvency**

43.     Within just a few months of acquiring Gateway's Professional Division, MPC's liquidity problems reached a crisis stage.  On May 8, 2008, the American Stock Exchange ("AMEX") notified MPC that it failed to satisfy a continued listing rule.  Specifically, MPS had stockholder equity of less than $2 million and sustained losses in two of its three most recent fiscal years.

CLASS ACTION COMPLAINT

44.    Although the AMEX accepted MPC's plan to regain compliance with its listing standards, MPC was given a deadline of November 9, 2008 to comply.

45.    MPC, however, could not regain compliance with the exchange's listing standards. On October 27, 2008, MPC announced that the NYSE Alternext US LLC (which acquired AMEX on October 1, 2008) intended to file a delisting application with the Securities and Exchange Commission striking MPC's common stock and warrants from the exchange. On November 4, 2008, MPC was delisted from the NYSE Alternext as a resulted of its sustained losses.

46.    MPC admitted that it appeared "questionable as to whether we will be able to continue operations." Gateway, despite its significant equity stake in MPC, did nothing to stave off MPC's inevitable bankruptcy petition.

47.    With this final blow, MPC could no longer function. On November 6, 2008, MPC filed a voluntary petition for bankruptcy pursuant to Chapter 11 of the United States Bankruptcy Code in the United States District Court for the District of Delaware. In a statement concerning its bankruptcy filing, MPC's chief executive officer attributed MPC's extensive losses to "unforeseen issues surrounding our integration of the Gateway Professional business unit . . . ."

48.    By December 29, 2008, MPC announced that it would liquidate all of its remaining assets and close its doors. Unfortunately for the Gateway warranty holders, there would be no recourse on any warranty claims.

49.    Gateway, meanwhile, persisted in its refusal to offer any reprieve to those Professional Division customers who had warranty claims.

**D.    *Plaintiff Peter Wilson Purchases A Gateway Computer With A Now-Worthless Extended Warranty***

50.    On July 20, 2005, Plaintiff Peter Wilson, a resident of Big Bear, California, as a freshman student at Master's College, located in Santa Clarita, California, purchased a Gateway computer, M250-E Laptop, serial number 0035612802, along with a 4 year extended warranty. Plaintiff purchased the Gateway Extended Service Plan, Priority Access, Accidental Damage and Limited

-9-

1   Warranty Plan (collectively, "Gateway Extended Warranty Agreement").  The total
2   purchase price was $1,475, plus $121.69 in sales tax.  The total purchase price was
3   added to his Master's College billing statement, which Plaintiff paid in full.
4   Plaintiff never had the ability to negotiate the terms of use of the Extended Warranty
5   Agreement.

6         51.    On or about February 6, 2009, with approximately one year remaining
7   until Plaintiff's Gateway Extended Warranty Agreement terminated, Plaintiff's
8   Gateway laptop ceased functioning completely and was in need of repair.  Plaintiff
9   contacted Gateway directly at this time to exercise his Gateway Extended Warranty
10  Agreement and have Gateway honor its agreement to repair Plaintiff's computer.

11        52.    Upon contacting Gateway, Plaintiff was informed by a Gateway
12  representative that, due the recent acquisition of Gateway professional products, all
13  service and support for Plaintiff's computer was now being handled by MPC.
14  Plaintiff then contacted MPC, only to find out that MPC was out of business and
15  could not service Plaintiff's computer.  Plaintiff contacted Gateway directly for a
16  second time to complain that, after paying approximately $1,000 for a Gateway
17  Extended Warranty and with more than one year remaining until the Extended
18  Warranty terminated, Plaintiff was entitled to have his laptop computer warranty
19  honored by Gateway.  Gateway refused, and directed him again to MPC, informing
20  Plaintiff that it was no longer responsible to warrant his computer as it had sold
21  Plaintiff's warranty to MPC, a bankrupt corporation.  As such, Plaintiff's Gateway
22  Extended Warranty is worthless, and Plaintiff has suffered damage.

23  **E.**    ***Thousands of Customers Have Been Damaged As A Result of Gateway's***
24          ***Deception***

25        53.    Thousands of customers like Peter Wilson have suffered as a result of
26  Gateway's deception.  Web sites are full of complaints from individuals and small
27  business owners left with worthless warranties.  *Infoworld* and other technology
28  publications have reported consumer grievances over the worthlessness of Gateway

-10-

CLASS ACTION COMPLAINT

1  warranties.  Numerous complaints have been submitted to the Better Business

2  Bureau and state attorney generals.

3      54.    Unfortunately, many of the individuals suffering from Gateway's

4  deception are students who acquired their computers through the Professional

5  Division, because that unit serviced educational institutions.  In addition to

6  pecuniary losses, Gateway's refusal to honor its warranties has negatively impacted

7  the studies of students throughout the nation.

8  **Class Action Allegations**

9      55.    Plaintiff brings this action on his own behalf and additionally, pursuant

10  to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a nationwide class

11  of all persons who have purchased an extended warranty from Gateway's

12  Professional Division whose warranty, in turn, was sold to MPC Corporation during

13  the period from January 1, 2005, to the present (the "Class").

14      56.    Excluded from the Class are Defendants; any parent, subsidiary, or

15  affiliate of Defendants; any entity in which Defendants have or had a controlling

16  interest, or which Defendants otherwise control or controlled; and any officer,

17  director, employee, legal representative, predecessor, successor, or assignee of

18  Defendants.

19      57.    This action is brought as a class action for the following reasons:

20          a.    The Class consists of at least thousands of persons and is

21  therefore so numerous that joinder of all members, whether otherwise required or

22  permitted, is impracticable;

23          b.    There are questions of law or fact common to the Class that

24  predominate over any questions affecting only individual members, including:

25              i.    whether Defendants violated contractual warranties by

26  purporting to assign its warranty obligations to an insolvent corporation for the

27  purpose of materially impairing Plaintiff's and other class members ability to obtain

28  the performance for which they had paid substantial sums.

-11-

CLASS ACTION COMPLAINT

ii.      whether Defendants violated the covenant of good faith and fair dealing applicable to all contracts;

iii.      whether Defendants unjustly enriched themselves by selling its warranty obligations and eviscerating its customers' ability to use warranty services;

iv.      whether members of the Class have sustained damages and/or other compensable losses and, if so, the proper measure thereof; and

c.      The claims asserted by Plaintiff are typical of the claims of the members of the Class;

d.      Plaintiff will fairly and adequately protect the interests of the Class, and Plaintiff has retained attorneys experienced in class and complex litigation, including related litigation involving contracts and consumer fraud;

e.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

i.      Absent a class action, Class members as a practical matter will be unable to obtain redress, Defendants' violations of its legal obligations will continue without remedy, additional customers will be harmed, and Defendants will continue to retain their ill-gotten gains;

ii.      It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

iii.      When the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Class;

iv.      A class action will permit an orderly and expeditious administration of Class claims, foster economies of time, effort, and expense and ensure uniformity of decisions; and

v.      The lawsuit presents no difficulties that would impede its management by the Court as a class action.

1    f.    Defendants have acted on grounds generally applicable to Class

2 members, making class-wide relief appropriate; and

3    g.    The prosecution of separate actions by individual members of the

4 Class would create a risk of incompatible standards of conduct for Defendants and

5 of inconsistent or varying adjudications for all parties.

6    58.   Defendants' violations of the common law are applicable to all

7 members of the Class.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

59.   Plaintiff repeats and realleges the allegations contained in Paragraphs 1
through 58 above as if fully set forth herein.

60.   Plaintiff and other class members purchased warranties from Gateway
with the justified expectation that Gateway would honor its obligations under the
warranties to offer repair and replacement services.  To obtain the benefit of the
warranties, Plaintiff and other class members paid substantial sums.

61.   When entering into the contract for warranty services, Plaintiff and
other class members had no ability to negotiate the warranty's terms.  The terms of
the warranty unreasonably favored Gateway and eviscerated several of Plaintiff and
the class member's rights without adequate notice.

62.   Plaintiff and the class members have fulfilled their obligation under the
warranty contract by paying for the warranty protection.

63.   Despite the full performance by Plaintiffs and other class members,
Gateway, with the full knowledge and approval of its Board of Directors, assigned
the warranties to MPC, a corporation that Defendants knew or should have known
was on the brink of insolvency and, in fact, became insolvent.

64.   Gateway's purported assignment of its warranty obligations to MPC is
ineffective as a matter of law because the assignment materially impaired the
warranty holders' ability to obtain performance on the contract.

CLASS ACTION COMPLAINT

65.   Gateway's refusal to honor its warranty obligations is a material breach of contract, which has resulted in harm to Plaintiffs and other class members who cannot obtain the benefit of their bargain.

66.   By reason of the foregoing, Defendants have breached the parties' contract and is liable to Plaintiff and the other members of the Class.

## SECOND CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing)

67.   Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 66 above as if fully set forth herein.

68.   As a direct and proximate result of Defendants' actions as described herein, Plaintiff and the Class have suffered, and continue to suffer, injury in fact and have lost money as a result of Defendants' deception.

69.   Plaintiff and other class members purchased Extended Warranty protection with the expectation that Gateway would honor its obligations throughout the warranty period.

70.   Gateway, however, with the full knowledge and consent of its Board of Directors, assigned the warranty to a corporation that Defendants knew or should have known was insolvent.

71.   Thus, Defendants assigned the warranties when it knew or should have known that it was materially impairing the ability of Plaintiff and other class members to obtain the performance for which they contracted.  As such, Plaintiff and other class members have not obtained the benefit of their bargain from Gateway and the essential purpose of the warranty contract has been frustrated.

72.   By reason of the foregoing, Defendants have breached the covenant of good faith and fair dealing and are liable to Plaintiff and the other members of the Class.

CLASS ACTION COMPLAINT

### THIRD CAUSE OF ACTION

**(Unjust Enrichment)**

73.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 72 above as if fully set forth herein.

74.     Plaintiff and the Class have conferred benefits on Defendants by paying value for extended warranties that they expected Defendants to honor throughout the warranty's term.

75.     Defendants knowingly and willingly accepted monetary benefits from Plaintiff and the Class, although Defendants did not honor its warranty obligations. Rather, Defendants profited from the sales of warranties which it then sold to an insolvent company only to leave the Plaintiff and the Class with a worthless warranty.

76.     Under the circumstances described herein, it is inequitable for Defendants to retain the full monetary benefit at the expenses of Plaintiff and the Class.

77.     By engaging in the conduct described above, Defendants have been unjustly enriched at the expense of Plaintiff and the Class and is required, in equity and good conscience, to compensate Plaintiff and the Class for harm suffered as a result of Defendants' actions.

78.     As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and the Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement from Defendants of the benefit conferred by Plaintiff and the Class.

WHEREFORE, Plaintiffs respectfully requests that the Court enter judgment against Defendant as follows:

1.     Certifying this action as a class action, pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, with a class as defined above;

CLASS ACTION COMPLAINT

2.      On Plaintiff's First Cause of Action, awarding Plaintiff and the Class all appropriate remedies, including but not limited to damages as well as consequential and incidental damages;

3.      On Plaintiff's Second Cause of Action, awarding Plaintiff and the Class all appropriate remedies, including but not limited to damages as well as consequential and incidental damages;

4.      On Plaintiff's Third Cause of Action, awarding Plaintiff and the Class all appropriate remedies, including but not limited to reimbursement, restitution, and disgorgement of all profits unjustly retained by Defendant;

5.      Awarding Plaintiff's and the Class' interest, costs and attorneys' fees; and

6.      Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.


DATED:  October 16, 2009          Respectfully submitted,

                                  MEISELMAN, DENLEA, PACKMAN,
                                  CARTON & EBERZ P.C.
                                  JEFFREY I. CARTON
                                  JEROME NOLL

                                  By    *Jeffrey I. Carton/va*
                                  JEFFREY I. CARTON
                                  Attorneys for Plaintiffs

                                  CALDWELL LESLIE & PROCTOR, PC
                                  ROBYN C. CROWTHER
                                  MATTHEW W. O'BRIEN

                                  By    *Robyn C C*
                                  ROBYN C. CROWTHER
                                  Attorneys for Plaintiffs

-16-

CLASS ACTION COMPLAINT

1

## DEMAND FOR TRIAL BY JURY

2        Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby

3  demands a trial by jury.

4

5  DATED:  October 16, 2009            Respectfully submitted,

6

7                                      MEISELMAN, DENLEA, PACKMAN,
                                        CARTON & EBERZ P.C.
                                        JEFFREY I. CARTON
8                                       JEROME NOLL

9

10                                     By _Jeffrey C. Carton Ire_
                                          JEFFREY J. CARTON
11                                     Attorneys for Plaintiffs

12                                     CALDWELL LESLIE & PROCTOR, PC
                                        ROBYN C. CROWTHER
13                                     MATTHEW W. O'BRIEN

14

15                                     By _Robyn C C_
                                          ROBYN C. CROWTHER
16                                     Attorneys for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

COPY

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PETER WILSON, On behalf of himself and all others similarly situated,<br><br>PLAINTIFF(S)<br><br>v.<br><br>GATEWAY,INC.,RICHARD D. SNYDER,QUINCY L. ALLEN,JANET M. CLARKE,J. EDWARD COLEMAN,SCOTT GALLOWAY,GEORGE H. KRAUS,DOUGLAS L. LACEY, JOSEPH G. PARHAM, JR.,DAVE RUSSELL, and PAUL E. WEAVER<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV09 07560 GW VBKx**<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S): _____                  _____

A lawsuit has been filed against you.

Within 20_____ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Robyn C. Crowther_____ , whose address is 1000 Wilshire Blvd., Suite 600, Los Angeles, Ca. 90017_____ . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___OCT 1 6 2009___          By: ___CHRISTOPHER POWERS___
                                              SEAL
                                              Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

**COPY**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐ )

PETER WILSON, On behalf of himself and all others similarly situated

**DEFENDANTS**

GATEWAY, INC., RICHARD D. SNYDER, QUINCY L. ALLEN, JANET M. CLARKE, J. EDWARD COLEMAN, SCOTT GALLOWAY, GEORGE H. KRAUSS, DOUGLAS L. LACEY, JOSEPH G. PARHAM, JR., DAVE RUSSELL, and PAUL E. WEAVER

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Robyn C. Crowther
CALDWELL LESLIE & PROCTOR, PC
1000 Wilshire Blvd., Suite 600
Los Angeles, Ca. 90017
P: (213) 629-9040; F: (213) 629-9022

Attorneys (If Known)

---

**II.   BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III.   CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV.   ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V.   REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes  ☐ No      ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI.   CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause.  Do not cite jurisdictional statutes unless diversity.)

29 U.S.C. § 1332(d) Diversity of Citzenship
Cause of Actions 1) Breach of Contract; 2)Breach of the Covenant of Good Faith and Fair Dealing; 3) Unjust Enrichment

**VII.   NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☒ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | | ☐ 660 Occupational Safety/Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS - Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

---

**FOR OFFICE USE ONLY:**   Case Number:

CV09 07560

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CCD-JS44

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [X] No  [ ] Yes

If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [X] No  [ ] Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  [ ]  A. Arise from the same or closely related transactions, happenings, or events; or

[ ]  B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ]  C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ]  D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.

[ ]  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.

[ ]  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.

**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties

Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): *Robyn C. Crowther*    Date October 16, 2009

Robyn C. Crowther

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George H. Wu and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## CV09- 7560 GW (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.