Paul F. Rafferty (State Bar No. 132266)
*pfrafferty@jonesday.com*
Christopher A. Bauer (State Bar No. 228310)
*cabauer@jonesday.com*
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA  92612
Telephone:   (949) 851-3939
Facsimile:    (949) 553-7539

Attorneys for Defendants
GATEWAY, INC., RICHARD D. SNYDER,
QUINCY L. ALLEN, JANET M. CLARKE,
J. EDWARD COLEMAN, SCOTT
GALLOWAY, GEORGE H. KRAUSS,
DOUGLAS L. LACEY, JOSEPH G.
PARHAM, JR., DAVE RUSSELL, and PAUL
E. WEAVER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER WILSON, On behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>GATEWAY, INC., RICHARD D. SNYDER, QUINCY L. ALLEN, JANET M. CLARKE, J. EDWARD COLEMAN, SCOTT GALLOWAY, GEORGE H. KRAUSS, DOUGLAS L. LACEY, JOSEPH G. PARHAM, JR., DAVE RUSSELL, and PAUL E. WEAVER,<br><br>    Defendants. | Case No. CV 09-07560 GW (VBKx)<br><br>Assigned for all purposes to Hon. George H. Wu<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>**[Fed. R. Civ. P. 12(b)]**<br><br>Date:   January 28, 2010<br>Time:   8:30 a.m.<br>Courtroom:  10 |

IRI-463v2

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that, on January 28, 2010 at 8:30 a.m. before the Honorable George H. Wu in Courtroom 10 of the above-entitled Court, or as soon thereafter as the Court may hear this matter, Defendants Gateway Inc. ("Gateway") and Richard D. Snyder, Quincy L. Allen, Janet M. Clarke, J. Edward Coleman, Scott Galloway, George H. Krauss, Douglas L. Lacey, Joseph G. Parham, Jr., Dave Russell, and Paul E. Weaver (collectively "Directors") will and hereby do move the court to dismiss Plaintiff Peter Wilson's Class Action Complaint for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, and Unjust Enrichment.

This Motion is made on the grounds that (i) the lawsuit of Plaintiff Peter Wilson ("Plaintiff") is effectively barred by the contract between Gateway and Plaintiff, (ii) the causes of action are legally insufficient, (iii) Plaintiff has failed to join an indispensable party, and (iv) the Directors were frivolously joined to the Action without justification.  This Motion is made following the conference of counsel pursuant to L.R. 7–3 which took place on November 11, 2009 and November 18, 2009.  *See* Bauer Decl. ¶¶ 2–4.

This Motion is based upon this Notice of Motion and Motion to Dismiss, the accompanying Memorandum of Points and Authorities, the Declaration of Sharon Hogan, and the Declaration of Christopher A. Bauer, as well as the pleadings, records, and files in this matter and such further evidence or argument as properly may be presented at a hearing on the Motion.

Dated:   November 19, 2009        JONES DAY

By:*/s/ Paul F. Rafferty*
                        Paul F. Rafferty

Attorneys for Defendants GATEWAY, INC., RICHARD D. SNYDER, QUINCY L. ALLEN, JANET M. CLARKE, J. EDWARD COLEMAN, SCOTT GALLOWAY, GEORGE H. KRAUSS, DOUGLAS L. LACEY, JOSEPH G. PARHAM, JR., DAVE RUSSELL, and PAUL E. WEAVER

1

## TABLE OF CONTENTS

2
Page

3

I.     INTRODUCTION ...................................................................................... 1

4

II.    FACTS ...................................................................................................... 1

5

III.   CHOICE OF LAW .................................................................................... 4

IV.    ARGUMENT ............................................................................................ 4

6

      A.    THE TERMS OF THE WARRANTY AGREEMENT BAR

7

            PLAINTIFF'S CLAIMS. ................................................................. 4

8

      B.    THE CAUSES OF ACTION ARE NOT ADEQUATELY
            PLEAD. .......................................................................................... 5

9

            1.    The Breach of Contract Cause of Action Is Insufficient. ........... 6

10

            2.    The Breach of Covenant of Good Faith and Fair Dealing
                 Cause of Action Is Insufficient. ................................................. 8

11

            3.    Plaintiff's Unjust Enrichment Cause of Action Is
                 Insufficient. ............................................................................. 10

12

      C.    PLAINTIFF HAS FAILED TO JOIN AN INDISPENSABLE
            PARTY, AND SO ALL CLAIMS SHOULD BE DISMISSED. ....... 12

13

      D.    ALL CLAIMS AGAINST THE DIRECTORS MUST BE

14

            DISMISSED. ................................................................................. 14

15

            1.    There Is No Merit To The First Cause Of Action for
                 Breach of Contract. .................................................................. 14

16

            2.    There Is No Merit To The Second Cause Of Action for
                 Breach of the Covenant of Good Faith and Fair Dealing. ........ 15

17

            3.    There Is No Merit To The Third Cause Of Action for
                 Unjust Enrichment Against the Directors. ................................ 16

18

V.     CONCLUSION ........................................................................................ 17

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**Page**

**CASES**

*American Greyhound Racing, Inc. v. Hull,*
   305 F.3d 1015 (9th Cir. 2002).......................................................................... 12, 13

*Arcon Construction Co. v. South Dakota Cement Plant,*
   412 N.W.2d 876 (S.D. 1987) ..................................................................................... 14

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009) ......................................................................... 5, 6, 7, 11

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ......................................... 5, 6, 7, 11

*Branch v. Tunnell,*
   14 F.3d 449 (9th Cir. 1994)........................................................................... 2, 3, 6

*Brosnan v. Countrywide Home Loans, Inc.,*
   2009 U.S. Dist. LEXIS 92480 (N.D. Cal. Oct. 5, 2009)........................................ 2

*Chambers v. Time Warner, Inc.,*
   282 F.3d 147 (2nd Cir. 2002)....................................................................... 2

*Clemens v. American Warranty Corp.,*
   193 Cal. App. 3d 444 (1987)......................................................................... 14

*Commercial Trust and Sav. Bank v. Christensen,*
   535 N.W.2d 853 (S.D. 1995) ........................................................................ 12

*Diamond Surface, Inc. v. State Cement Plant Comm'n,*
   583 N.W.2d 155 (S.D. 1998) ......................................................................... 16

*Farm Credit Servs. of Am. v. Dougan,*
   704 N.W.2d 24 (S.D. 2005) ........................................................................ 8, 9

*Galbraith v. County of Santa Clara,*
   307 F.3d 1119 (9th Cir. 2002)....................................................................... 2

*Garrett v. BankWest, Inc.,*
   459 N.W.2d 833 (S.D. 1990) ..................................................................... 8, 16

*Guthmiller v. Deloitte & Touche, LLP,*
   699 N.W.2d 493 (2005) ........................................................................... 7, 8

*Hofeldt v. Mehling,*
   658 N.W.2d 783 (2003) ............................................................................ 10

IRI-463v2

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) ........................................................... 5, 6, 7

*Juttelstad v. Juttelstad*,
    587 N.W.2d 447 (S.D. 1998) ........................................................... 10, 17

*Oppenheimer v. General Cable Corp.*,
    143 Cal. App. 2d 293 (1956) ............................................................... 14

*Parker v. Western Dakota Insurors, Inc.*,
    605 N.W.2d 181 (S.D. 2000) ............................................................... 17

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
    390 U.S. 102 (1968) ........................................................................... 12

*Roth v. Malson*,
    67 Cal. App. 4th 552 (1998) ............................................................... 14

*Sessions, Inc. v. Morton*,
    491 F.2d 854 (9th Cir. 1974) ................................................................. 8

*Table Steaks v. First Premier Bank, N.A.*,
    650 N.W.2d 829 (S.D. 2002) ................................................................. 8

*W. Mining Council v. Watt*,
    643 F.2d 618 (9th Cir. 1981) ................................................................. 5

*Waller v. Truck Ins. Exchange, Inc.*,
    11 Cal. 4th 1 (1995) ...................................................................... 16, 17

*Wilbur v. Locke*,
    423 F.3d 1101 (9th Cir. 2005) ............................................................. 13

**OTHER AUTHORITIES**

4 JAMES W. MOORE, ET AL., MOORE'S FEDERAL PRACTICE
    ¶ 19.03[1] (3d. ed. 2005) .................................................................... 13

FED. R. CIV. P. 8 ........................................................................... 5, 7, 11

FED. R. CIV. P. 8(a) ............................................................................... 5

FED. R. CIV. P. 12 ................................................................................. 1

FED. R. CIV. P. 12(b)(6) ....................................................................... 2

FED. R. CIV. P. 19 .......................................................................... 13, 14

FED. R. CIV. P. 19(a) ...................................................................... 12, 13

IRI-463v2

FED R. CIV. P. 19(a)(1) .................................................................................................... 12

FED. R. CIV. P. 19(a)–(b) ................................................................................................ 14

FED. R. CIV. P. 19(b) ................................................................................................. 12, 13

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3  ## I.  INTRODUCTION

4       Gateway Inc. ("Gateway"), and Richard D. Snyder, Quincy L. Allen, Janet

5  M. Clarke, J. Edward Coleman, Scott Galloway, George H. Krauss, Douglas L.

6  Lacey, Joseph G. Parham, Jr., Dave Russell, and Paul E. Weaver (collectively the

7  "Directors"), bring this motion to dismiss the lawsuit ("Action") of Plaintiff Peter

8  Wilson ("Plaintiff") under Rule 12 of the Federal Rules of Civil Procedure

9  ("FRCP") by (i) enforcing the contract between Gateway and Plaintiff, (ii) moving

10 to dismiss the causes of action as legally insufficient, (iii) moving to dismiss for

11 failure to join an indispensable party, and (iv) moving independently to dismiss the

12 Directors who are frivolously joined without justification.

13       While leave to amend is often granted, the primary deficiency in the Action

14 cannot be corrected.  Specifically, Plaintiff cannot allege that the defendants are

15 liable to him because Gateway assigned his warranty to a third party as the

16 warranty expressly permitted.  In addition, the Directors have done nothing to harm

17 Plaintiff and should not be sued in this manner.

18

19 ## II.  FACTS

20       On July 20, 2005, Mr. Wilson purchased a Gateway computer along with a

21 four-year extended warranty (the "Warranty Agreement").  *See* Action ¶ 50.  On

22 September 4, 2007,[1] Gateway sold its professional division and assigned all of the

23 warranties for those professional products, including the Warranty Agreement, to

24 MPC Corporation.[2]  *See* Action ¶¶ 38, 40.  Plaintiff does not allege **any** breach of

---

25       [1] Gateway adopts the pleadings as "true," as required by Rule 12 analysis.
26 However, the sale actually occurred on October 1, 2007.  Furthermore, Gateway's
   adoption of Wilson's allegations and arguments for this Motion is not intended to
27 waive defenses it must raise in the future, such as that Wilson has sued the wrong
   entity, or that the proper party to the warranty was sold to MPC in 2007.

28       [2] Gateway utilizes these allegation from the Action to establish assignment of
   the warranties for this Motion.  Otherwise, and while not relevant to *this* motion,

IRI-937v1

the Warranty Agreement prior to September 4, 2007.  On February 6, 2009, and while the Warranty Agreement was still allegedly effective, Plaintiff's laptop "ceased functioning completely and was in need of repair."  Action ¶ 51.  Pursuant to the MPC assignment dated September 4, 2007, Gateway denied any responsibility for fixing Plaintiff's computer.  *See* Action ¶ 52.

On November 6, 2008, MPC filed a voluntary petition for bankruptcy pursuant to Chapter 11 of the United States Bankruptcy Code in the United States District Court for the District of Delaware.  *See* Action ¶ 47.

On October 16, 2009, Plaintiff brought the Action asserting that Gateway breached the Warranty Agreement by failing to honor it after it had been assigned to MPC.  Plaintiff further claims that Gateway's assignment breached the covenant of good faith and fair dealing implied in any contract.  Finally, Plaintiff claims that Gateway was unjustly enriched.

Conspicuously, Plaintiff did <u>not</u> attach the Warranty Agreement, nor incorporate any of its material terms into the Action.  Where a plaintiff fails to attach to the complaint documents on which his claims are based, the defendant may attach the documents to a Rule 12(b)(6) motion.  *See Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994) (overruled on other grounds in *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002)).  The Court may consider such documents where (1) the complaint refers to the document, (2) the document is central to plaintiff's claim, and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.  *Id*. at 454; *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, n.3 (2nd Cir. 2002) (collecting cases); *Brosnan v. Countrywide Home Loans, Inc.*, 2009 U.S. Dist. LEXIS 92480, at *5 (N.D. Cal. Oct. 5, 2009) (court "may consider material not appended to the complaint . . .

_____

(continued…)

Gateway in fact sold its entire professional business along with the subsidiary companies that originally sold and held the warranties.

1  without converting a motion to dismiss into one for summary judgment" and may
2  take judicial notice of documents submitted, including the "terms of contracts").

3      The Warranty Agreement is central to the Action.  The first two (of three)
4  causes of action directly rely on it, and its assignment is the focus of the third cause
5  of action.  Its authenticity is established by the Declaration of Sharon Hogan
6  included with this Motion.[3]  Because consideration of the Warranty Agreement is
7  necessary to analyze the causes of action and Gateway's defenses thereto, Gateway
8  is entitled to introduce it.  *See Branch*, 14 F.3d at 453–54.  There are no allegations
9  in the Action that Plaintiff ever contested or rejected the Warranty Agreement.

10     At the time of purchase of his Gateway computer, Plaintiff received a
11 Gateway Business Service Plans booklet (the "GBSP") detailing the warranty and
12 certain other coverages he had acquired.  The cover page of the GBSP is identified
13 by Plaintiff in the Action, *see* Action ¶ 50, and a true and correct copy of the GBSP
14 is attached to the Declaration of Sharon Hogan as Exhibit 3.  A second copy is
15 attached to this Motion as Exhibit A for the Court's ease of reference.

16     The GBSP contains the two documents that form the warranty at issue in the
17 Action.  First, a "Limited Warranty" was provided at the time of purchase.  *See*
18 GBSP, pp. 15–17.  Second, the "Gateway Extended Service Plan" extended the
19 Limited Warranty by four (4) years.  *See* GBSP, pp. 3–7.  And so, Mr. Wilson is
20 claiming a breach of the Limited Warranty, as extended by the Gateway Extended
21 Service Plan, both of which are found in the GBSP.

22     The Warranty Agreement provided that Gateway could assign the Warranty
23 Agreement without Mr. Wilson's consent or notice.  If assigned, Gateway was
24 thereafter relieved from all obligations thereunder and Mr. Wilson agreed to look
25 solely to the assignee for performance.  Mr. Wilson admits the Warranty
26 Agreement was assigned.  *See* Action ¶ 8.

27
28 ───────────────
[3] The Declaration of Sharon Hogan focuses exclusively on laying the proper foundation for, and authenticity of, the Warranty Agreement at issue in this case.

IRI-463v2

3

III.   **CHOICE OF LAW**

The Warranty Agreement states "this Agreement shall be interpreted under the laws of the State of South Dakota, without giving effect to conflicts of law rules."  GBSP, p. 17, § 3, ¶ 2.

IV.   **ARGUMENT**

A.   **THE TERMS OF THE WARRANTY AGREEMENT BAR PLAINTIFF'S CLAIMS.**

The Limited Warranty authorized assignment of the Warranty Agreement. Section 6 states:

> Gateway may assign this Agreement and/or any associated service plan without your consent and without notice to you.  If Gateway does assign this Agreement and/or any associated service plan, the assignee will assume all obligations to you.  Gateway will be released of all obligations, and you agree to look solely to the assignee for the performance of all obligations under this Agreement and/or any associated service plan.

GBSP, p.16, § 6.  The Limited Warranty is the controlling document over all others related to it or which purport to extend it, stating, "[i]f there is any inconsistency between this Agreement and any other agreement included with or relating to products or services purchased from Gateway, this Agreement shall govern." GBSP, p. 17, § 6.

The Gateway Extended Service Plan merely extended the terms of the Limited Warranty:

> This Plan extends the term of the limited warranty coverage and technical support coverage for the Gateway or eMachines-branded personal computer, server or other Gateway or eMachines-branded hardware identified on your invoice.

GBSP, p. 3.

As Mr. Wilson admits, Gateway assigned the Warranty Agreement to MPC on September 4, 2007.  *See* Action ¶ 4.  Plaintiff's computer stopped working on

IRI-463v2

4

February 6, 2009.  *See* Action ¶ 51.  The Warranty Agreement authorized its assignment, released Gateway from all further obligations thereunder, and required Wilson to look to assignee MPC for recovery.  *See* GBSP, p. 16, § 6.  Gateway is therefore not legally responsible for Plaintiff's, or any Warranty holders' broken computers after 2007, and each of Plaintiff's causes of action thus fail to allege facts upon which Plaintiff can recover.

### B.     THE CAUSES OF ACTION ARE NOT ADEQUATELY PLEAD.

Historically, Rule 8 of the Federal Rules of Civil Procedure has provided the simple "notice" requirement that a cause of action be "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a).  The Supreme Court has recently interpreted the rule to mean that the complaint must "provid[e] not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  Moreover, pleading the "grounds" of a plaintiff's entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.  Instead, a plaintiff must provide a factual, not a conclusory, basis for his claims that makes it "plausible" that the alleged wrong occurred.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

More specifically, the U.S. Supreme Court has concluded that Rule 8 "demands more than unadorned, the-defendant-unlawfully-harmed-me accusations."  *Id.* at 1937.  The allegations in the complaint "must be enough to ***raise a right to relief above the speculative level***."  *Id*. (emphasis added).  Indeed, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."  *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (internal quotes omitted).  Courts should not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

IRI-463v2

1    Plaintiff's Action spins an imaginative tale about Gateway, weaving in
2    "facts" about Gateway's historic rise, its business strategies, and the 2007 sale of
3    the Gateway professional business to MPC Corp.  Even taken as true, none of these
4    allegations has anything to do with Plaintiff's causes of action for breach of
5    contract, breach of the covenant of good faith and fair dealing, and unjust
6    enrichment.  By contrast, the one relevant piece of evidence—the Warranty
7    Agreement—was entirely omitted from the pleadings, and, as established above in
8    Section IV.A, the Warranty Agreement flatly refutes Plaintiff's ability to sue
9    Gateway for these claims.  As such, each cause of action fails to adequately state a
10   claim upon which relief can be granted, and Gateway therefore respectfully
11   requests that the Action be dismissed.

12   **1.     The Breach of Contract Cause of Action Is Insufficient.**

13   Plaintiff's First Cause of Action for Breach of Contract fails to sufficiently
14   state the grounds for his claim because his allegations directly contradict the
15   express language of the Warranty Agreement upon which he needs to rely.  *See*
16   *Twombly*, 550 U.S. at 555; *In re Stac Elecs. Sec. Litig.*, 89 F.3d at 1403.  As such,
17   the allegations are not "plausible," and therefore cannot form the basis of a valid
18   breach of contract cause of action.  *See Iqbal*, 129 S. Ct. at 1950.

19   Specifically, Plaintiff alleges in his Action that Gateway breached the
20   Warranty Agreement by assigning the warranty obligations to MPC.  *See* Action
21   ¶¶ 63–65.  However, the express terms of the Warranty Agreement (which Plaintiff
22   omits from his pleading, but which the Court may nevertheless consider on this
23   Motion, *see Branch*, 14 F.3d at 453–54) explicitly provide for such an assignment.
24   *See* GBSP, p. 16, § 6.  Hence, Plaintiff's allegation that the assignment to MPC is
25   the basis for its breach of contract claim simply is not "plausible" given the
26   language of the applicable contract.  *See Twombly*, 550 U.S. at 555; *Iqbal*, 129 S.
27   Ct. at 1950.

28   Additionally, Plaintiff's Action suggests that Gateway breached the Warranty

IRI-463v2

6

Agreement by not continuing to honor the Agreement after the assignment took place.  *See* Action ¶ 65.  Plaintiff specifically asserts that Gateway is still liable under the Warranty Agreement because the assignment to MPC is "ineffective as a matter of law" in that it "impaired" Plaintiff's ability to "obtain performance on the contract."  Action ¶ 64.  This conclusory allegation fails to meet the Rule 8 standard of pleading the factual grounds upon which the claim is based.  *See Twombly*, 550 U.S. at 555.  Plaintiff states no facts describing the alleged assignment of the Warranty Agreement, no facts describing the terms of the Warranty Agreement that either allowed or disallowed the assignment, and no facts describing the circumstances that allegedly made the assignment ineffective.  Instead, he creatively alleges that the Warranty Agreement was assigned, that the assignment was ineffective, and that he was wronged by the assignor because the assignee later went bankrupt.  *See* Action ¶¶ 63–65.  Without at least pleading the relevant terms of the contract and the conduct related to those terms, it is impossible to determine whether there is in fact a breach of contract claim.  Plaintiff's "naked assertion[s]" are void of the "further factual enhancement" required and are nothing more than "the-defendant-unlawfully-harmed-me accusations" that are inadequate under *Twombly* and its progeny.  *See id.*; *Iqbal*, 129 S. Ct. at 1950; *In re Stac Elecs. Sec. Litig.*, 89 F.3d at 1403.

Importantly, Plaintiff's cause of action also fails to state a claim when analyzed under South Dakota law only.  A plaintiff bringing a breach of contract claim in South Dakota must show that (1) an enforceable promise exists; (2) defendant breached that promise; and (3) plaintiff suffered resulting damages.  *See Guthmiller v. Deloitte & Touche, LLP*, 699 N.W.2d 493, 498 (2005).  Plaintiff's Action fails to satisfy all the elements of this cause of action because, while he does allege that Gateway had an enforceable Warranty Agreement in place, he never alleges Gateway made an enforceable promise not to assign the Warranty Agreement.  In fact, the Warranty Agreement itself expressly provided

IRI-463v2

7

1   for such an assignment, and so Gateway could not have breached the agreement

2   when it assigned it to MPC.  *See* GBSP, p. 16, § 6.  There can be no breach of

3   contract when the conduct underlying the putative breach is explicitly allowed by

4   the contract.  *See Guthmiller*, 699 N.W.2d at 498.  Plaintiff has simply failed to

5   plead any facts that suggest Gateway breached the Warranty Agreement.

6   **2.**  **The Breach of Covenant of Good Faith and Fair Dealing**

7   **Cause of Action Is Insufficient.**

8       Plaintiff's Second Cause of Action for Breach of the Covenant of Good Faith

9   and Fair Dealing is based entirely on conclusory allegations of law and unwarranted

10  inferences, and it is therefore ripe for dismissal under the federal pleading standards

11  and South Dakota law.  South Dakota recognizes a covenant of good faith and fair

12  dealing implied in every contract and acknowledges a cause of action for breach of

13  that implied covenant.  *See Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 841 (S.D.

14  1990).  The courts effectively hold that the terms of the contract must be present in

15  the pleading in order for the claim to be adequately made.  *Id.* at 841; *see also Table*

16  *Steaks v. First Premier Bank, N.A.*, 650 N.W.2d 829, 834–35 (S.D. 2002).  The

17  implied covenant "must arise from the language used [in the contract] or it must be

18  indispensable to effectuate the intention of the parties."  *Garrett*, 459 N.W.2d at

19  841 (quoting from *Sessions, Inc. v. Morton*, 491 F.2d 854, 857 (9th Cir. 1974).  It is

20  not possible to legitimately plead an implied obligation that contradicts the express

21  terms of the contract.  *See Farm Credit Servs. of Am. v. Dougan*, 704 N.W.2d 24

22  (S.D. 2005).

23      Because Plaintiff has failed to provide the terms of the contract with his

24  Action, the Court cannot determine from what language the implied covenant of

25  good faith and fair dealing arises.  Furthermore, since the Warranty Agreement

26  actually and explicitly provides for assignment, the intent of the parties is not in

27  question.  Plaintiff cannot honestly plead that the implied covenant prohibits the

28  assignment to MPC because the Warranty Agreement is clear that the warranty

IRI-463v2

1   could be assigned.

2       South Dakota law expressly provides that the covenant of good faith and fair

3   dealing cannot be breached if the alleged breach arises from conduct specifically

4   allowed in the contract.  *See Farm Credit Servs.*, 704 N.W.2d 24.  In *Farm Credit*

5   *Services*, the plaintiffs brought a claim before the South Dakota Supreme Court

6   alleging that the refusal of Farm Credit Services of America ("FCS") to grant extra

7   time to make a loan payment breached the covenant of good faith and fair dealing.

8   *Id.* at 26.  The South Dakota Supreme Court held that because the lending

9   agreement specifically permitted the lender not to extend the date for repayment,

10   there could be no breach of the implied covenant of good faith and fair dealing.  *Id.*

11   at 31.  Specifically, the Court found that FCS was acting within the terms of its

12   contract when it denied the loan extension and that the plaintiffs agreed to these

13   terms when they entered into the contract.  *Id.*  The Court reasoned that "the

14   [plaintiffs] were asking for a better bargain than they agreed to" and that "the

15   covenant of good faith and fair dealing ensures that contracting parties get the full

16   benefit of their bargain, ***but no more***."  *Id.* (emphasis added).

17       Plaintiff is making exactly the same type of claim that the Supreme Court

18   found unpersuasive in *Farm Credit Services*.  Specifically, Plaintiff alleges that

19   Gateway's breach of the covenant of good faith and fair dealing arises from its

20   assignment of the warranty obligations to MPC, which allegedly left Plaintiff

21   without the ability to collect on a warranty claim.  *See* Action ¶ 70–72.  While

22   Plaintiff speculates that all class members expected "Gateway would honor its

23   obligations throughout the warranty period," Action ¶ 69, it is hard to fathom how

24   they could have such an expectation given the language of the Warranty Agreement

25   that permitted assignment.  *See* GBSP, p. 16, § 6.

26       Plaintiff's Action therefore fails to adequately state a claim for breach of the

27   covenant of good faith and fair dealing based on the facts he has provided.  As a

28   result, it is appropriate for the Court to dismiss this cause of action.

IRI-463v2

1   **3.   Plaintiff's Unjust Enrichment Cause of Action Is**

2   **Insufficient.**

3   Plaintiff's Third Cause of Action for unjust enrichment is also insufficiently

4   pled.  To establish a claim of unjust enrichment under South Dakota law, Mr.

5   Wilson must show that (1) Gateway received a benefit; (2) Gateway knew it was

6   receiving a benefit; and (3) it is inequitable to allow Gateway to retain this benefit

7   without paying for it.  *See Hofeldt v. Mehling*, 658 N.W.2d 783, 788 (2003); *see*

8   *also Juttelstad v. Juttelstad*, 587 N.W.2d 447, 451 (S.D. 1998) (unjust enrichment

9   occurs "when a party confers a benefit upon another party who accepts or

10  acquiesces in that benefit and it is inequitable to receive that benefit without

11  paying.").  Although Plaintiff appears to advance two theories on this point, he does

12  not and cannot allege a specific inequity arising from any putative benefit conferred

13  on and retained by Gateway.  In fact, Plaintiff's Action establishes the opposite—

14  that Gateway paid $10,000,000 and received a 19.9% equity stake in a company

15  that went bankrupt.  *See* Action ¶ 38.

16  First, Plaintiff argues that because Gateway "did not honor its warranty

17  obligations" it would be inequitable to allow Gateway to retain the monies received

18  under the Warranty Agreement.  *See* Action ¶ 75.  However, based on the Action's

19  allegations, Gateway assigned the Warranty Agreement to MPC before Plaintiff

20  made his claim on the agreement.  *See* Action ¶¶ 38, 51.  At that point in time—

21  after assignment of the warranty—Gateway could neither honor nor dishonor its

22  warranty obligations; it had no warranty obligations to Plaintiff.  The Warranty

23  Agreement itself provides that the assignee would assume any obligations to

24  Plaintiff, that Gateway would be released of all obligations in the event of

25  assignment, and that Plaintiff agreed "to look solely to the assignee for the

26  performance of all obligations" under the agreement.  *See* GSBP, p. 16, § 6.  In

27  addition, the Warranty Agreement provided that "Gateway may assign this

28  Agreement and/or any associated service plan without your consent and without

IRI-463v2

10

1    notice to you."  GSBP, p. 16, § 6.

2          Because, as alleged in the Action, Plaintiff agreed to the terms of the

3    Warranty Agreement when he purchased his Gateway computer, *see* Action ¶ 50,

4    he can allege no inequity when Gateway performed on the terms of the agreement

5    and allegedly assigned it to MPC.

6          Secondly, Plaintiff argues that it would be inequitable for Gateway to retain

7    the money received from Plaintiff for the Warranty Agreement because he was left

8    with a "worthless warranty."  Action ¶ 75.  In making this argument, Plaintiff

9    seems to speculate that Gateway "knew or should have known" that MPC could not

10   honor the warranties it was assigned.  Action ¶ 39.  In addition, Plaintiff speculates

11   that this assignment occurred quickly and without consideration because Gateway

12   was "desperate to shed its Professional Division in an effort to complete the Acer

13   acquisition."  Action ¶ 38.

14         Such speculative allegations are not enough to sufficiently plead a claim of

15   unjust enrichment, or to reasonably allege that an inequity has occurred.  *See* FED.

16   R. CIV. P. 8; *Twombly*, 550 U.S. at 555; *see also Iqbal*, 129 S. Ct. at 1950 (the

17   accusations "must be enough to raise a right to relief above the speculative level.").

18   Simply alleging that Gateway was "desperate to shed its Professional Division" so

19   that it could complete the Acer acquisition is not enough to show that Gateway

20   received any benefit, or if it did, why it would be inequitable to retain it.  In fact, as

21   pled by Wilson, Gateway received no benefit at all.  It paid $10,000,000 and

22   received 19.9% of the stock in a now-bankrupt company.  *See* Action ¶ 38.  Acer's

23   acquisition of Gateway in 2007, *see* Action ¶ 37, conferred no alleged benefit <u>on</u>

24   <u>Gateway</u>.  Perhaps Gateway's shareholders benefited, perhaps not, but no

25   allegations in the Action support an argument that <u>Gateway</u> received any benefit

26   whatsoever.

27         Finally, Gateway acquiring a "major stake" in MPC through the sale of these

28   warranty obligations, *see* Action ¶ 39, does not show that Gateway engaged in

1     "illegal or inequitable behavior."  *Commercial Trust and Sav. Bank v. Christensen*,

2     535 N.W.2d 853, 858 (S.D. 1995).  If anything, it suggests Gateway's major equity

3     stake in MPC, and millions of dollars paid to help capitalize MPC, was legitimate

4     and in good faith.

5         Plaintiff has failed to sufficiently plead his unjust enrichment claim, and

6     therefore, Gateway respectfully requests that this Court dismiss this claim with

7     prejudice.

8        **C.**     <u>**PLAINTIFF HAS FAILED TO JOIN AN INDISPENSABLE**</u>

9             <u>**PARTY, AND SO ALL CLAIMS SHOULD BE DISMISSED.**</u>

10       Rule 19(a)(1) of the Federal Rules of Civil Procedure provides that "[a]

11    person who is subject to service of process and whose joinder will not deprive the

12    court of subject-matter jurisdiction must be joined as a party if:  (A) in that person's

13    absence, the court cannot accord complete relief among existing parties."  F<small>ED</small> R.

14    C<small>IV</small>. P. 19(a)(1).  Rule 19(b) continues, "If a person who is required to be joined . . .

15    cannot be joined, the court must determine whether, ***in equity and good***

16    ***conscience***, the action should proceed among the existing parties or ***should be***

17    ***dismissed***."  F<small>ED</small>. R. C<small>IV</small>. P. 19(b) (emphasis added).  In making this determination,

18    courts are to consider "(1) the extent to which a judgment rendered in the person's

19    absence might prejudice that person or the existing parties; (2) the extent to which

20    any prejudice could be lessened or avoided . . .; (3) whether judgment rendered in

21    the person's absence would be adequate; and (4) whether the plaintiff would have

22    an adequate remedy if the action were dismissed for nonjoinder."  *Id.*

23       In light of Rule 19's mandate, courts generally employ a two-step inquiry to

24    determine whether a case should be dismissed for non-joinder.  *See Provident*

25    *Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968); *American*

26    *Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1022 (9th Cir. 2002).  First, the

27    court must determine whether the absent party is "necessary."  *Id.*; F<small>ED</small>. R. C<small>IV</small>. P.

28    19(a).  Second, if the absent party is "necessary," the court must determine whether

IRI-463v2

the absent party is "indispensable." *American Greyhound*, 305 F.3d at 1022; FED. R. CIV. P. 19(b).  A party is indispensable if "in equity and good conscience [the court determines that] the action . . . be dismissed" rather than "proceed among the parties before it." *American Greyhound*, 305 F.3d at 1022; FED. R. CIV. P. 19(b).

In assessing whether a party is "necessary" to ongoing litigation, Rule 19(a) should be applied so as to broadly define all those parties that have an interest in the subject of the litigation.  *See* 4 JAMES W. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 19.03[1] (3d. ed. 2005).  Importantly, in *Dawavendewa v. Salt River Project Agriculture Improvement and Power District*, the Ninth Circuit reaffirmed the long-standing and "fundamental principle" that "***a party to a contract is necessary***, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract."  276 F.3d 1150, 1156–57 (9th Cir. 2002) (emphasis added).  The action need not specifically challenge a contractual provision, so long as the effect of the suit would be to render the contract invalid or meaningless.  *See id.*  Where "litigation threatens to impair a party's contractual interest, and thus, its fundamental economic relationship," the party is necessary under Rule 19.  *Id.*; *see also Wilbur v. Locke*, 423 F.3d 1101, 1113 (9th Cir. 2005) (collecting cases that explain the "fundamental principle that a party to a contract is necessary").

In this case, MPC is an indispensable party that Plaintiff has failed to join.  As alleged in Plaintiff's Action, the relevant Warranty Agreement between Plaintiff and Gateway was assigned to MPC in or about September 2007.  *See* Action ¶¶ 38, 50.  By this assignment, MPC has stepped into the shoes of Gateway, and, according to the terms of the Warranty Agreement, Plaintiff must "look solely to [MPC] for the performance of all obligations under [the Warranty] Agreement."  Warranty Agmt., GBSP, p. 16, § 6.  As such, the court "cannot accord complete relief among existing parties" without joinder of MPC, who is the only party obligated to pay any claims under the Warranty Agreement.  FED. R. CIV. P. 19(a).

By contrast, Gateway is no longer obligated by that contract, on which

IRI-463v2

13

1   Plaintiff now seeks recovery under his breach of contract, breach of implied

2   covenant, and unjust enrichment claims.  "In equity and good conscience," this

3   matter cannot be allowed to proceed against Gateway or the Directors in the

4   absence of MPC, and therefore, the case should be dismissed pursuant to Rule 19.

5   FED. R. CIV. P. 19(a)–(b).

6        It is evident what is occurring here.  Mr. Wilson was not satisfied making a

7   claim under his warranty for relief against MPC in bankruptcy.  Instead, he attempts

8   to evade the jurisdiction of the bankruptcy court and bring all other possible

9   warranty holders with him where, ignoring his contractual commitments

10  completely, he attempts to litigate his warranty claim against Gateway as though

11  MPC never existed.  Rule 19 exists to combat such flagrant "defendant shopping."

12        **D.     ALL CLAIMS AGAINST THE DIRECTORS MUST BE**

13             **DISMISSED.**

14        Plaintiff asserts three causes of action against the Directors.  Those claims

15  are for: (i) breach of contract; (ii) breach of the covenant of good faith and fair

16  dealing; and (iii) unjust enrichment.  As a matter of law, all of those claims fail.

17             **1.     There Is No Merit To The First Cause Of Action for Breach**

18                 **of Contract.**

19        The First Cause of Action for Breach of Contract is alleged against all of the

20  Directors.  *See* Action ¶¶ 59–66.  The South Dakota Supreme Court has ruled that,

21  according to South Dakota law, only a party to a contract is obligated to perform

22  under that agreement.  *See Arcon Construction Co. v. South Dakota Cement Plant*,

23  412 N.W.2d 876, 879–880 (S.D. 1987); *cf. Oppenheimer v. General Cable Corp.*,

24  143 Cal. App. 2d 293, 297 (1956) (corporate officers and directors have no

25  obligations under contract made by corporation because officers and directors

26  themselves were not parties to the contract); *Clemens v. American Warranty Corp.*,

27  193 Cal. App. 3d 444, 452 (1987) ("only a signatory to a contract may be liable for

28  any breach"); *Roth v. Malson*, 67 Cal. App. 4th 552, 557 (1998) ("It is, of course,

IRI-463v2

14

1  basic hornbook law that the existence of a contract is a necessary element to an
2  action based on contract, regardless whether the plaintiff seeks specific
3  performance or damages for breach of contract.").

4      The *only* contract Plaintiff identifies in his Action is the "Gateway Extended
5  Warranty Agreement."  *See* Action ¶ 50.  That contract, as plaintiff further alleges,
6  is between himself and Gateway *alone*.  Action ¶ 50 ("Plaintiff purchased the
7  Gateway Extended Service Plan, Priority Access, Accidental Damage and Limited
8  Warranty Plan"); *see also* Action ¶ 3 ("Gateway aggressively marketed and sold
9  extended warranties for its computers"), ¶ 4 ("Gateway . . . assigned all the
10  outstanding warranties from its Professional Division to MPC Corporation"), ¶ 9
11  ("Gateway profited considerably by selling the warranties"), ¶ 14 ("Mr. Wilson
12  purchased a Gateway computer with an extended warranty Gateway purported to
13  assign to MPC"), ¶ 38 ("Gateway's warranty obligations"), ¶ 40 ("Gateway
14  assigned its warranty obligations"), ¶ 41 ("Gateway disclaimed any liability for
15  warranty obligations"), ¶ 60 ("Plaintiff and other class members purchased
16  warranties *from Gateway* with the justified expectation that *Gateway* would honor
17  *its obligations* under the warranties . . . ." (emphasis added)).  Plaintiff does not
18  identify any contract to which he and the Directors are parties, much less a contract
19  that the Directors breached.  Nor, could Plaintiff so allege—as the Directors have
20  never entered into any contract with Plaintiff.

21      As a consequence, Plaintiff may not, as a matter of law, sue the Directors for
22  breaching a contract to which they are not a party.  And, because Plaintiff cannot
23  amend his Action to cure this defect, the First Cause of Action against the Directors
24  should be dismissed without leave to amend.

25          **2.      There Is No Merit To The Second Cause Of Action for**
26              **Breach of the Covenant of Good Faith and Fair Dealing.**

27      Plaintiff also alleges his Second Cause of Action for Breach of the Covenant
28  of Good Faith and Fair Dealing against all of the Directors.  *See* Action ¶¶ 67–72.

IRI-463v2

15

This claim fails for the same reasons that Plaintiff's first cause of action does: A plaintiff may not sue officers and directors of a corporation for breach of a contract's covenant of good faith and dealing where, as here, such officers and directors are not parties to the underlying agreement.  *See Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 843 (S.D. 1990).  Indeed, "before a party can sue for breach of good faith, a contract must be proven.  Contract law does not recognize a breach of good faith separate from a contract."  *Id.*; *see also Diamond Surface, Inc. v. State Cement Plant Comm'n*, 583 N.W.2d 155 (S.D. 1998) ("a claim of breach of good faith, whether under general contract terms or under the UCC implied covenant of good faith, cannot survive in the absence of a contract"); *cf. Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 900, 36 (1995) (same).[4]  As a matter of law, a plaintiff cannot sue for breach of the covenant of good faith and fair dealing absent a contractual agreement between plaintiff and defendant.

Because Plaintiff has not—and cannot—allege any contract to which he and the Directors are parties, Plaintiff may not sue the Directors for breaching a covenant of good faith and fair dealing in a non-existent contract.  Plaintiff cannot amend his complaint to cure this defect, and so the Second Cause of Action against the Directors should be dismissed without leave to amend.

### 3. There Is No Merit To The Third Cause Of Action for Unjust Enrichment Against the Directors.

Like the First and Second Causes of Action, Plaintiff makes out his Third Cause of Action for Unjust Enrichment against all of the Directors.  *See* Action

---

[4] In *Waller*, the California Supreme Court explained that a claim for breach of the covenant of good faith and fair dealing, "is based on general contract law and the long-standing rule 'that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.'"  *Id.* (citations omitted).  Thus, "the covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement."  *Id.* (citations omitted).  That being the case, "[a]bsent that contractual right . . . the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings.'"  *Id.* (citations omitted).

IRI-463v2

16

1   ¶¶ 73–78.  The basis of this claim is Plaintiff's allegation that he "conferred

2   benefits on Defendants *by paying value for extended warranties* that [he] expected

3   Defendants to honor throughout the warranty's term."  *Id.* ¶ 74 (emphasis added).

4   The relief that Plaintiff seeks under this claim is restitution.  *Id.* ¶ 78.

5        Under South Dakota law, unjust enrichment occurs "when a party confers a

6   benefit upon another party who accepts or acquiesces in that benefit and it is

7   inequitable to receive that benefit without paying."  *See Juttelstad v. Juttelstad*, 587

8   N.W.2d 447, 451 (S.D. 1998).  To prove unjust enrichment against the Directors,

9   Plaintiff must show: (i) he conferred a benefit on the Directors; (ii) the Directors

10  were aware of the benefit; and (iii) to allow them to retain that benefit without

11  reimbursement would unjustly enrich them.  *See Parker v. Western Dakota*

12  *Insurors, Inc.*, 605 N.W.2d 181, 187 (S.D. 2000).

13       Here, Plaintiff does not—and cannot—allege any benefit he conferred upon

14  the Directors "by paying value for extended warranties" under the "Gateway

15  Extended Warranty Agreement."  The Directors are not alleged to be parties to that

16  agreement—again, the only contract that the Action identifies.  Nor, does Plaintiff

17  allege how, if at all, the Directors *personally benefited* as "a result of money paid

18  by mistake."  Indeed, there is no allegation that the Directors personally received

19  one penny from Plaintiff.

20       Because Plaintiff has not—and cannot—allege any benefit he conferred to

21  the Directors, Plaintiff may not sue the Directors for unjust enrichment.  Finally,

22  because Plaintiff cannot amend his Action to cure this defect, the Third Cause of

23  Action against the Directors should be dismissed without leave to amend.

24  **V.    CONCLUSION**

25       Multiple grounds exist for complete dismissal of Plaintiff's Action.  The

26  Action (1) is barred by the terms of the contract between Gateway and Plaintiff,

27  (2) the causes of action are legally insufficient, (3) Plaintiff has failed to join an

28  indispensable party, and (4) the Directors were frivolously joined to the Action

IRI-463v2

1   without justification.  Plaintiff's Action fails to meet the basic pleading

2   requirements described by the Federal Rules of Civil Procedure, and therefore, the

3   Action should be dismissed in its entirety.

4

5   Dated:          November 19, 2009          JONES DAY

6

7                                             By:/s/ Paul F. Rafferty
                                                 Paul F. Rafferty

8                                             Attorneys for Defendants
                                              GATEWAY, INC., RICHARD D.
9                                             SNYDER, QUINCY L. ALLEN,
                                              JANET M. CLARKE, J. EDWARD
10                                            COLEMAN, SCOTT GALLOWAY,
                                              GEORGE H. KRAUSS, DOUGLAS L.
11                                            LACEY, JOSEPH G. PARHAM, JR.,
                                              DAVE RUSSELL, AND PAUL E.
12                                            WEAVER

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IRI-463v2

EXHIBIT A

# GATEWAY BUSINESS SERVICE PLANS

*Extended Service Plan*

*Gateway Priority Access*

*Extended Service Plan with Accidental Damage Protection*

*Limited Warranty Agreement*



1

This booklet includes Gateway's service plans and Limited Warranty Agreement. The service plans you purchased are listed on your invoice. Please carefully read the plans for the services you purchased, as well as the Standard Terms of Sale (separately included) and Limited Warranty Agreement.

Extended Service Plan                                                    Page 3

Gateway Priority Access                                                  Page 8

Extended Service Plan with Accidental Damage Protection                 Page 11

Limited Warranty Agreement                                              Page 15

---

© Copyright 2002-2004 Gateway, Inc.  Gateway, the Black-and-White Spot Design, Gateway Extended Service and Gateway Accidental Damage Protection are trademarks or registered trademarks of Gateway, Inc. in the U.S. and other countries

2

**Gateway Extended Service Plan**
**Business Services**

Throughout this Gateway Extended Service℠ Plan ("Plan") the words "we", "us", and "our" refers to Obligor. ("AIGWG") refers to AIG Warranty Guard, Inc. ("Gateway") refers to Gateway.  The words "you" and "your" refer to the purchaser of this Plan.

This Plan extends the term of the limited warranty coverage and technical support coverage for the Gateway or eMachines-branded personal computer, server or other Gateway or eMachines-branded hardware identified on your invoice. This Plan may include additional services described below. Please refer to your invoice for the services that you have purchased.  All Plan coverage commences on the date your product is shipped by Gateway and lasts for the period stated on your Gateway invoice.  This Plan covers manufacturer's defects in material and workmanship that are the result of normal usage.  **THIS AGREEMENT CONTAINS A DISPUTE RESOLUTION CLAUSE (SEE BELOW).**

**Limited Warranty:**
The term of the Gateway limited warranty for your Gateway product begins when your Gateway product is shipped to you and lasts for the period stated on your invoice, **except that portable batteries and big screen monitors (27 inches or larger) are only covered under this Plan for a period of 1 year**. Please refer to the Gateway Limited Warranty Agreement for the scope and terms of your limited warranty. This Plan does not cover software or non-Gateway-branded products such as joysticks, printers, scanners, etc.

**Technical Support:**
We will provide technical support to you for your personal computer or server during the term of this Plan. The scope and terms of technical support are described in the Gateway Limited Warranty Agreement.

**OPTIONAL SERVICES:**

**On-Site Warranty Service.** On-site services are available only in the United States and are not available for mice, monitors, keyboards, docking stations, and similar external components of the product.
- **Basic On-Site.** We will install replacement parts in your product as necessary to correct defects covered under your limited warranty. If we reasonably determine that you are not able to install a replacement part yourself, we may, at our discretion, dispatch a service representative to your location to install the part.
- **Gateway Server Hardware Diagnostic Services.**  Under this service, we will dispatch an authorized technician to your place of business to diagnose issues covered under the limited warranty applicable to your Gateway server. To initiate on-site diagnostics, you must contact us and we will attempt to diagnose and resolve your issue remotely. If we determine that your issue cannot be diagnosed over the phone, then within 4 hours We will dispatch an on-site technician to complete the diagnosis of your issue. We will work diligently to resolve your issue, but it cannot guarantee that your issue will be resolved in any particular time. The on-site visit will be for issue diagnostics only.  If the technician determines that a replacement part or product is needed, it will be ordered and installed under Gateway's standard on-site service policies. You may purchase coverage under this service for terms of up to 3 years, running from the date of shipment of the Product. Because this Service is not available in some locations, we may not be able to provide the Service if you move your server Product from the location to which it was originally shipped by us.
- **Gateway Server 2 and 4-Hour Response Service.** Under this service, we will dispatch an authorized technician to your place of business to diagnose and repair issues covered under the limited warranty applicable to your Gateway server. On-site repairs under this service apply to components of the Product necessary to keep it up and running as determined by us. This is not available in all locations. To initiate on-site diagnostics and repair, you must contact us and we will attempt to diagnose and resolve your issue remotely. If we determine that on-site repair service is necessary to restore your Product to an up-and-running condition, then within 2 or 4 hours (depending on your service plan) we will dispatch an on-site technician to complete the diagnosis of your issue and install replacement parts as necessary to

3

restore your product to an up-and-running condition. We will work diligently to resolve your issue, but we cannot guarantee that your issue will be resolved in any particular time. Your coverage begins from the date of shipment of the product.  Because this service is not available in some locations, we may not be able to provide the service if you move your product from the location to which it was originally shipped by Gateway. This service may not be available for up to 30 days after your product is delivered to you, depending on your system configuration and parts stocking levels in your service area.  During this start-up period, we will attempt to restore your product to an up-and-running condition as soon as possible.

- **Gateway 4-Hour Advanced Exchange Parts Replacement Service.** Under this service, we will dispatch replacement parts to your place of business within 4-hours of completing phone technical support diagnostics when replacement parts are required to restore your product to an up and running condition. To initiate this service you must contact us and we will attempt to diagnose and resolve your issue remotely. If we determine replacement parts are required to restore your Product to an up-and-running condition, then within 4 hours we will dispatch replacement parts to your place of business.  You are responsible for packaging and shipping of the defective component to us. Your coverage begins from the date of shipment of the product. This service is not available in all locations.  Because this service is not available in some locations, we may not be able to provide the service if you move your product from the location to which it was originally shipped by us. This service may not be available for up to 30 days after your product is delivered to you, depending on your system configuration and parts stocking levels in your service area.  During this start-up period, we will attempt to restore your product to an up-and-running condition as soon as possible.

**Installation Services.** The following services are available in the United States.
- **Basic Installation Services.** An authorized technician will install and verify the operation of your product. This service does not include network installation.
- **Network Installation Services.** An authorized technician will install and connect the network cards, applicable software and products purchased from Gateway as part of a business network solution.  You must ensure that proper network wiring is available and that your existing products meet the minimum requirements necessary for connection to your network. Please call us for information on the minimum requirements for this service. **Please Note:** The technician will not perform troubleshooting on your network wiring.  All troubleshooting of wiring requested by you shall be subject to a separate fee.  If installation services are required to be rescheduled due to network wiring issues, you may incur additional charges.
- **Data Migration Services.** An authorized technician will transfer data from an old personal computer to a new product purchased from Gateway. The cost of this service is based on the amount of data that is transferred: up to 200 mb, 400 mb, and greater than 400 mb. In addition, you may be charged extra fees if you do not perform all of your responsibilities as set forth below or if it necessary to reschedule service because you have not performed these responsibilities. Only data files of standard format (e.g. *.xls, *.doc, *.ppt file extensions) will be transferred, no individual file may exceed 95 mb, no application software, operating system software, or databases will be transferred, and the operating system of the old personal computer must be Microsoft 3.1 or a subsequent release. Please call us for information on additional technical requirements for this service.  Data migration services are available only in conjunction with system installation services. Data migration service is available in the continental United States. In addition to the other responsibilities set forth in this Agreement, you are responsible for completing the following tasks before the technician arrives:
  a. Creating a single folder (or directory) named **"Migrate"** and transferring to this folder all data that you want transferred from your old personal computer to your new Product;
  b. Conducting an anti-virus scan on the data prior to the service appointment;
  c. Ensuring all aspects of software security, including performing and reloading backups and licensing;
  d. Converting data to new file formats (e.g. WordPerfect to Word);
  e. Noting the size of **"Migrate"** folder or directory before and after migration service to ensure that all data was successfully transferred;
  f. Ensuring that systems are prepared and functional for migration services;
  g. Creating a backup copy of all data that will be transferred;

4

    h.  Ensuring that there are an adequate number of electrical outlets for old equipment and new equipment to be utilized at the same time;
    i.  Ensuring that old equipment is in working condition for data migration services (e.g. functional serial/parallel ports, system boots properly, etc.);
    j.  Obtaining "quick fixes" from OEMs that you may need to address any compatibility issues that occur post migration.

- **De-installation Services.** We will disconnect the monitor, keyboard, mouse, and peripherals from your old personal computer, box the system using packing materials you supply (you may use the packing materials from your new product, if sufficient), and transport the old system to a central location within the same building or floor on a dolly or utility cart that you supply. Deinstallation services are available only in conjunction with system installation services.

- **Disposition Management Services.** We will provide transportation and disposition of used products, described as monitors (up to 21 inches), keyboards, mice, printers, scanners, portable and desktop personal computers ("Eligible Assets"). Title to all Eligible Assets passes to us when they are picked up from your location. Disposition Management Services are available in the continental United States in those areas located in a business zone (not available for residential locations). You are responsible for completing the following tasks before the technician arrives:
    a.  Packaging the Eligible Assets in individual cartons not exceeding 30 inches in length, 27 inches in width and 42 inches in height (deinstallation services are available from Gateway for a separate fee, although you must tape all cartons closed);
    b.  Completing the *"Inventory Worksheet for Disposition Management"* and submitting it to Gateway (assets not appearing on the inventory may be refused for shipment or subject to an additional fee);
    c.  Having all Eligible Assets, packaged and ready for shipping, assembled at one location on the scheduled pick-up day.

- **ENTERPRISE SOFTWARE SUPPORT LINE (ESS).** For software products listed on the "Supported Enterprise Software List" located at www.Gateway.com we will assist you with (i) use and installation questions; (ii) product, compatibility, and interoperability questions; (iii) interpretation of product documentation; (iv) diagnostics support; and (v) assistance with problem source identification and problem resolution. We provide ESS Support on a per incident basis. Incidents are decremented from your account when we provide you a solution for a single problem. A problem is defined as a singular request for assistance on a specific product or issue. We maintain the right to change the Supported Enterprise Software List at any time for any reason. Requests for assistance on multiple questions or problems are considered multiple incidents. The duration of time available to use purchased incidents is listed on your invoice. ESS Support is not available until 48 hours after the applicable invoice date. For ESS you can call Gateway's Technical Support Hotline at 1-877-485-1464 from 8:00 A.M. to 5:00 P.M. local customer time Monday thru Friday excluding National holidays.

- **Keep Your Hard Drive.** If your personal computer's hard disk drive is diagnosed as defective, we will send you a replacement drive without requiring you to return your defective drive. This will enable you to maintain control over the contents of your hard disk drive.

**Customer Requirements:**
- To obtain service under this Plan:
  - **Click:** You can reach Gateway Support by going to http://www.gateway.com/support for online, E-mail and online chat support.
  - **Call Gateway Direct:** You can call Gateway's Technical Support Hotline at 1-877-485-1464 or Automated Troubleshooting Hotline at 1-800-846-2118, 24 hours a day, 7 days a week.
  - The method of technical support may change at any time at Gateway's discretion.
- You must assist us in diagnosing issues with your Gateway product and follow our warranty processes. If we determine that you need a replacement part, we will ship the part and installation instructions to you. If we reasonably determine that you are not able to install a replacement part yourself, we may, at our discretion, dispatch a service representative to your location to install the part. If necessary to resolve your issue, you may be required to ship your product to a service facility. If we ask you to return defective parts or products, you must do so within 7 days after you receive the

5



replacement parts or products. We will charge you for replacement parts or products if you fail to do so.

- You should back up all files stored on your Gateway product before obtaining technical or warranty services from us. **WE ARE NOT RESPONSIBLE FOR ANY LOSS OF YOUR DATA.**
- You are responsible for properly packaging your product, paying all shipping costs, loss or damage to the product during shipping, and any other taxes, fees or charges associated with transporting the product to a Gateway service facility. We will pay the costs of returning the product to you from the service facility. **YOU ARE RESPONSIBLE FOR ANY DAMAGE TO YOUR GATEWAY PRODUCT DURING SHIPMENT TO US.**
- You must obtain service from us under this Plan.  We will not reimburse you for service performed by others.

**Limitations:**

- This Plan does not cover loss or damage caused by fire, theft, disappearance, misplacement, reckless, abusive, willful or intentional conduct, viruses or damage or loss caused during shipment between you and Gateway or its service providers.
- This Plan does not cover any equipment or components that were not included in your Gateway product as sold by Gateway.
- This Plan does not cover Gateway or eMachines products with altered, modified, or removed serial numbers.
- This Plan does not cover damage resulting from the use of your Gateway or eMachines product in a manner for which it was not intended.
- This Plan does not cover normal wear that does not affect functionality.
- This Plan does not cover cosmetic damage and/or other damage that does not affect functionality.
- This Plan does not include any type of tutorial support.
- You may not assign or transfer this Plan. This Plan terminates when you transfer or dispose of your Gateway product.
- This Plan may not be available in all jurisdictions. Please refer to your invoice to determine whether this Plan applies to you.
- If you request service outside the United States, the level of service available to you may vary. In particular, you may be required to pay shipping costs to and from us to obtain service.
- This Plan does not cover defects to the product that you knew about before you purchased this Plan (a pre-existing condition).
- This Plan does not cover consequential or incidental damages.
- This Plan does not provide coverage for normal wear and tear.
- No deductible applies to this Plan.

**Dispute Resolution:**

You and Us agree that any Dispute between You and Us will be resolved exclusively and finally by arbitration administered by the National Arbitration Forum (NAF) and conducted under its rules, except as otherwise provided below.  You and We will agree on another arbitration forum if NAF ceases operations.  The arbitration will be conducted before a single arbitrator, and will be limited solely to the Dispute between You and Us. The arbitration, or any portion of it, will not be consolidated with any other arbitration and will not be conducted on a class-wide or class action basis.  The arbitration shall be held at any reasonable location near your residence by submission of documents, by telephone, online or in person whichever method of presentation You choose. If You prevail in the arbitration of any Dispute with Us, We will reimburse You for any fees you paid to NAF in connection with the arbitration.  Any decision rendered in such arbitration proceedings will be final and binding on the parties, and judgment may be entered thereon in any court of competent jurisdiction.  Should either party bring a Dispute in a forum other than NAF, the arbitrator may award the other party its reasonable costs and expenses, including attorneys' fees, incurred in staying or dismissing such other proceedings or in otherwise enforcing compliance with this dispute resolution provision. **You understand that, in the absence of this provision, You would have had a right to litigate disputes through a court, including the right to litigate claims on a class-wide or class-action basis, and that You have expressly and knowingly waived those rights and agreed to resolve any Disputes through binding arbitration in accordance with the provisions of this paragraph.**  This arbitration provision shall be governed by the Federal Arbitration Act, 9 U.S.C. Section 1, *et seq.*  For the purposes of this provision, the term "Dispute" means any dispute, controversy, or claim arising out of or relating to (i) this Agreement, its interpretation,

6

or the breach, termination, applicability or validity thereof, or (ii) any other dispute arising out of or relating to the relationship between You and Us, the term "You" means you, or those in privity with you, such as family members or beneficiaries. Information may be obtained from the NAF on line at www.arb-forum.com, by calling 800-474-2371 or writing to P.O. Box 50191, Minneapolis, MN, 55405.

AIGWG is the Administrator under this Plan and the Obligor except in California. AIGWG can be contacted at: 300 Riverside Plaza, Chicago, IL 60606. Telephone 1-800-250-3819.

If you reside in any of the following states: AL, AK, AZ, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, KY, LA, ME, MD, MA, MI, MN, MO, MT, NE, NV, NH, NJ, NM, ND, OH, OK, OR, PA, RI, SC, SD, TN, TX, UT, VT, WA, WV, WI, or WY, this Plan is secured by a contractual liability insurance policy provided by Illinois National Insurance Company, 175 Water Street, 20th Floor, New York, NY 10038. Telephone 1-800-250-3819. If, within sixty (60) days we have not paid a covered claim, provided you with a refund or you are otherwise dissatisfied you may make a claim directly to the insurance company.

If you reside in any of the following states: AR, CA, FL, MS, NY, NC, or VA, this Plan is secured by a contractual liability insurance policy provided by New Hampshire Insurance Company, 175 Water Street, 20th Floor, New York, NY 10038. Telephone 1-800-250-3819. If, within sixty (60) days we have not paid a covered claim, provided you with a refund or you are otherwise dissatisfied you may make a claim directly to the insurance company.

**Special State Laws:**

**CALIFORNIA RESIDENTS**: AIG Warranty Services and Insurance Agency, Inc. (AIGWS) is the Obligor under this Plan. AIG Warranty Guard, Inc. (AIGWG) is the Administrator. AIGWS and AIGWG can be contacted at 300 South Riverside Plaza, Chicago, IL 60606. Telephone 1-800-250-3819.

**CONNECTICUT RESIDENTS:** The expiration date of this Plan shall automatically be extended by the duration that the Product is in Our custody while being repaired. In the event of a dispute with the Administrator, you may file a written complaint with the State of Connecticut Insurance Department, P.O. Box 816, Hartford, CT 06142-0816, Attn: Consumer Affairs. The written compliant must contain a description of the dispute, the purchase price of the Plan, the cost of the repair and the Plan.

**GEORGIA RESIDENTS:** Cancellation will comply with Section 33-24-44 of the Georgia Code.

**NORTH CAROLINA RESIDENTS:** Purchase of this Plan is not required to obtain financing or to purchase Gateway products.

**UTAH RESIDENTS**: NOTICE Coverage afforded under this Plan is not guaranteed by the Utah Property and Casualty Guarantee Association. This Plan may be canceled due to unauthorized repair which results in a material change in the nature or extent of the risk, occurring after the first effective date of the current policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time of the policy was issued or last renewed. Failure to notify within the prescribed time will not invalidate the claim if You can show that notification was not reasonably possible.

**WISCONSIN RESIDENTS:** THIS PLAN IS SUBJECT TO LIMITED REGULATION BY THE OFFICE OF THE WISCONSIN COMMISSIONER OF INSURANCE. This Plan shall not be canceled due to unauthorized repair of the covered equipment. If You cancel this Plan, no deduction shall be made from the refund for the cost of any service received. This Plan is backed by a contractual liability policy with limits of liability of $5,000 per claim and $25,000 in aggregate per Plan.

Form # 86810
10-25-04

7

EXHIBIT _A_ PAGE _25_

## Gateway Priority Access<sup>SM</sup> Service

Throughout this Gateway Priority Access<sup>SM</sup> Service Plan ("Plan") the words "we", "us", and "our" refers to the Obligor. ("AIGWG") refers to AIG Warranty Guard, Inc. ("Gateway") refers to Gateway.  The words "you" and "your" refer to the purchaser of this Plan.

**Scope of Coverage:**
Gateway's Priority Access Service ("Priority Access") increases the service levels available to you under your Gateway Limited Warranty or Extended Service Plan that you purchased. The term of this Gateway Priority Access Service shall be provided on your invoice. Please refer to the Gateway Limited Warranty Agreement and the Gateway Extended Service Plan for details regarding your underlying service plan.  The invoice is incorporated herein by reference. **THIS AGREEMENT CONTAINS A DISPUTE RESOLUTION CLAUSE (SEE BELOW).**

To the extent your underlying Gateway Business Service Plan includes the following, the applicable service levels will be increased accordingly.

**Technical Support:**
When you call us at 1-888-888-0402 a highly trained Gateway technician will answer your call within 30 seconds from the time your customer identification number is validated by our system.  Technical Support is available to valid Priority Access customers twenty-four hours a day, seven days-a-week, three-hundred and sixty-five days a year.

**Next Business Day Replacement Parts:**
If you require a replacement part, that is covered under your Gateway Limited Warranty or Extended Service Plan, we will ship a replacement part  on the same business day, provided that your warranty issue is diagnosed by us before 4 PM, central time, Monday through Friday (excluding holidays), or on the next business day. We will ship the replacement part to you via overnight delivery service, or the most expedient shipping method, if overnight delivery service is not available to you.

**Next Business Day On-site Parts Replacement:**
If we determine you need on-site service and it is available under your Gateway Limited Warranty or Extended Service Plan, we will schedule a service representative to install replacement parts on the business day the parts are scheduled to be received by you or in the most expedient repair method if next business day repair is not available in your area, or such other time as agreed to by you and us.

**Same Day Portable Pick Up:**
If your portable PC must be repaired, and such failure is covered under your Gateway Limited Warranty or Extended Service Plan, we will pick up your Product on the same business day if your issue is diagnosed by us before 12 PM, local customer time, Monday through Friday (excluding holidays).   We will repair your Product within two business days and return it to you via overnight delivery service or the most expedient shipping method if overnight delivery service is not available to you.

**Limitations:**
- This Plan does not include any type of tutorial support.
- This Plan does not cover defects to the product that you knew about before you purchased this Plan (a pre-existing condition).
- You may not assign or transfer this Plan. This Plan terminates when you transfer or dispose of your Gateway product. You may not renew or extend this Plan.
- Replacement parts will be new or serviceably used, comparable in function and performance to the original part.
- No deductible applies to this Plan.
- This Plan is not available in all jurisdictions. Please refer to your invoice to determine whether this Plan applies to you.

8



- If you request service outside the United States, the level of service available to you may vary. In particular, you may be required to pay shipping costs to and from us to obtain service.
- This Plan does not provide coverage for normal wear and tear.

**Dispute Resolution:**
You and Us agree that any Dispute between You and Us will be resolved exclusively and finally by arbitration administered by the National Arbitration Forum (NAF) and conducted under its rules, except as otherwise provided below. You and We will agree on another arbitration forum if NAF ceases operations. The arbitration will be conducted before a single arbitrator, and will be limited solely to the Dispute between You and Us. The arbitration, or any portion of it, will not be consolidated with any other arbitration and will not be conducted on a class-wide or class action basis. The arbitration shall be held at any reasonable location near your residence by submission of documents, by telephone, online or in person whichever method of presentation You choose. If You prevail in the arbitration of any Dispute with Us, We will reimburse You for any fees you paid to NAF in connection with the arbitration. Any decision rendered in such arbitration proceedings will be final and binding on the parties, and judgment may be entered thereon in any court of competent jurisdiction. Should either party bring a Dispute in a forum other than NAF, the arbitrator may award the other party its reasonable costs and expenses, including attorneys' fees, incurred in staying or dismissing such other proceedings or in otherwise enforcing compliance with this dispute resolution provision. **You understand that, in the absence of this provision, You would have had a right to litigate disputes through a court, including the right to litigate claims on a class-wide or class-action basis, and that You have expressly and knowingly waived those rights and agreed to resolve any Disputes through binding arbitration in accordance with the provisions of this paragraph.** This arbitration provision shall be governed by the Federal Arbitration Act, 9 U.S.C. Section 1, *et seq*. For the purposes of this provision, the term "Dispute" means any dispute, controversy, or claim arising out of or relating to (i) this Agreement, its interpretation, or the breach, termination, applicability or validity thereof, or (ii) any other dispute arising out of or relating to the relationship between You and Us, the term "You" means you, or those in privity with you, such as family members or beneficiaries. Information may be obtained from the NAF on line at www.arb-forum.com, by calling 800-474-2371 or writing to P.O. Box 50191, Minneapolis, MN, 55405.

AIGWG is the Administrator under this Plan and the Obligor except in California. AIGWG can be contacted at 300 Riverside Plaza, Chicago, IL 60606. Telephone 1-800-250-3819.

If you reside in any of the following states: AL, AK, AZ, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, KY, LA, ME, MD, MA, MI, MN, MO, MT, NE, NV, NH, NJ, NM, ND, OH, OK, OR, PA, RI, SC, SD, TN, TX, UT, VT, WA, WV, WI, or WY, this Plan is secured by a contractual liability insurance policy provided by Illinois National Insurance Company, 175 Water Street, 20th Floor, New York, NY 10038. Telephone 1-800-250-3819. If, within sixty (60) days we have not paid a covered claim, provided you with a refund or you are otherwise dissatisfied you may make a claim directly to the insurance company.

If you reside in any of the following states: AR, CA, FL, MS, NY, NC, or VA, this Plan is secured by a contractual liability insurance policy provided by New Hampshire Insurance Company, 175 Water Street, 20th Floor, New York, NY 10038. Telephone 1-800-250-3819. If, within sixty (60) days we have not paid a covered claim, provided you with a refund or you are otherwise dissatisfied you may make a claim directly to the insurance company.

**Special State Laws:**

**CALIFORNIA RESIDENTS**: AIG Warranty Services and Insurance Agency, Inc. (AIGWS) is the Obligor under this Plan. AIG Warranty Guard, Inc. (AIGWG) is the Administrator. AIGWS and AIGWG can be contacted at 300 South Riverside Plaza, Chicago, IL 60606. Telephone 1-800-250-3819.

**CONNECTICUT RESIDENTS**: The expiration date of this Plan shall automatically be extended by the duration that the Product is in Our custody while being repaired. In the event of a dispute with the Administrator, you may file a written complaint with the State of Connecticut Insurance Department, P.O. Box 816, Hartford, CT 06142-0816, Attn: Consumer Affairs. The written compliant must contain a description of the dispute, the purchase price of the Plan, the cost of the repair, and the Plan.

9



**GEORGIA RESIDENTS:** Cancellation will comply with Section 33-24-44 of the Georgia Code.

**NORTH CAROLINA RESIDENTS:**  Purchase of this Plan is not required to obtain financing or to purchase Gateway products.

**UTAH RESIDENTS**: NOTICE Coverage afforded under this Plan is not guaranteed by the Utah Property and Casualty Guarantee Association.  This Plan may be canceled due to unauthorized repair which results in a material change in the nature or extent of the risk, occurring after the first effective date of the current policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time of the policy was issued or last renewed.  Failure to notify within the prescribed time will not invalidate the claim if You can show that notification was not reasonably possible.

**WISCONSIN RESIDENTS:**  THIS PLAN IS SUBJECT TO LIMITED REGULATION BY THE OFFICE OF THE WISCONSIN COMMISSIONER OF INSURANCE. This Plan shall not be canceled due to unauthorized repair of the covered equipment. If You cancel this Plan, no deduction shall be made from the refund for the cost of any service received. This Plan is backed by a contractual liability policy with limits of liability of $5,000 per claim and $25,000 in aggregate.

Form #86809
10-25-04

10

## Gateway Extended Service Plan with Accidental Damage Protection Business Services

Throughout this Gateway Extended Service Plan with Accidental Damage Protection ("Plan") the words "we", "us", and "our" refers to Obligor.  ("AIGWG") refers to AIG Warranty Guard, Inc. ("Gateway") refers to Gateway.  The words "you" and "your" refer to the purchaser of this Plan.

This Plan provides for the repair of your Gateway or eMachines-branded computer or other Gateway or eMachines-branded hardware if it fails to perform to manufacturer's specifications due to normal use and handling of the product. The product covered by this Plan and the term of this Plan are described in your invoice and your invoice is incorporated as part of this Plan. **THIS AGREEMENT CONTAINS A DISPUTE RESOLUTION CLAUSE (SEE BELOW).**

**Protection Period:**
The term of your Plan begins on the date your product is shipped by Gateway and lasts for the period stated on your Gateway invoice.

**What is covered?**
- We will repair or replace eligible parts in your Gateway product that fail to perform to manufacturer's specifications due to normal use or handling during the term of this Plan. Eligible parts covered under this Plan consist of components originally included in your Gateway product. Replacement parts will be new or serviceably used, comparable in function and performance to the original part.
- Product failures caused by normal use or handling consist of those caused by impacts, dropping, falls, spilled liquids, immersion in liquids, power surges (when protected by an operational surge suppressor), and similar causes.
- We will arrange to ship replacement parts or products to and from you in the United States, and will pay the shipping costs. We will not reimburse you for shipping costs you incur.
- This Plan covers manufacturer's defects in material and workmanship that are a result of normal usage.
- This Plan does not provide coverage for normal wear and tear.

**What is not covered?**
- Product failures caused by theft, disappearance, misplacement, reckless, abusive, willful or intentional conduct, viruses or damage or loss caused during shipment between you and Gateway or its service providers.
- Product failures caused by natural disasters or casualties such as flood, wind, earthquake, lightning, fire, war or civil insurrection, governmental seizure or destruction, or nuclear reaction, radiation or radioactive contamination.
- Any equipment or components that were not included in your Gateway product as sold by Gateway.
- Gateway products with altered, modified, or removed serial numbers.
- Product failures resulting from the use of your Gateway product in a manner for which it was not intended.
- Normal wear or cosmetic damage and/or other damage that does not affect functionality. This Plan does not cover consumables, such as batteries and fuses, or the results of normal usage that do not materially alter the product's functionality.
- Product failures caused by your failure to follow all instructions contained in the product's user guide or unauthorized parts or service.
- Damages that occurred to your Gateway product before you purchased this Plan (a pre-existing condition).
- Damage to or loss of software, data, removable media, consumables, portable docking stations (other than integrated docking bases which are covered under the Plan), carrying cases, big screen monitors (27 inches or larger), or any non-Gateway-branded products such as joysticks, printers, scanners, speaker systems (other than speakers included in standard PC configurations), etc.

11

**Customer Requirements:**
- To obtain service under this Plan, you must contact Gateway Technical Support, which is available 24 hours a day, 7 days a week. Click on the Gateway web site at http://www.gateway.com/support or call 1-877-485-1464. We will determine how and where repair services are provided, and you may be required to deliver your product to a Gateway repair facility.
- You must assist us in diagnosing issues with your Gateway product and follow our warranty processes. If we determine that you need a replacement part, we will ship the part and installation instructions to you. If we reasonably determine you are not able to install a replacement part yourself, we may, at our discretion, dispatch a service representative to your home or office to install the part. If necessary to resolve your issue, you may be required to ship your Gateway product to a service facility. If we ask you to return defective parts or products, you must do so within 7 days after you receive the replacement parts or products. We will charge you for replacement parts or products if you fail to do so.
- You should back up all files stored on your Gateway product before obtaining services from us. **WE ARE NOT RESPONSIBLE FOR ANY LOSS OF YOUR DATA.**
- We will arrange to ship replacement parts or products to and from you, and will pay the shipping costs. To prevent damage during shipping, ship your Gateway product in suitable packing materials. You are responsible for any damage to your Gateway product that occurs during shipment. **WE ARE NOT RESPONSIBLE FOR ANY DAMAGE TO YOUR GATEWAY PRODUCT DURING SHIPMENT BEFORE WE PERFORM SERVICES.**
- You must obtain service from us under this Plan. We will not reimburse you for service performed by others.

**Limitations:**
- If we are unable to repair or replace parts for your Gateway product for any reason, our maximum liability to you under this Plan will not exceed the original purchase price of your Gateway product.
- This Plan is not available in all jurisdictions. Please refer to your invoice to determine whether this Plan applies to you.
- If you request service outside the United States, the level of service available to you may vary. In particular, you may be required to pay shipping costs to and from us to obtain service.
- No deductible applies to this Plan.

**Dispute Resolution:**
You and Us agree that any Dispute between You and Us will be resolved exclusively and finally by arbitration administered by the National Arbitration Forum (NAF) and conducted under its rules, except as otherwise provided below. You and We will agree on another arbitration forum if NAF ceases operations. The arbitration will be conducted before a single arbitrator, and will be limited solely to the Dispute between You and Us. The arbitration, or any portion of it, will not be consolidated with any other arbitration and will not be conducted on a class-wide or class action basis. The arbitration shall be held at any reasonable location near your residence by submission of documents, by telephone, online or in person whichever method of presentation You choose. If You prevail in the arbitration of any Dispute with Us, We will reimburse You for any fees you paid to NAF in connection with the arbitration. Any decision rendered in such arbitration proceedings will be final and binding on the parties, and judgment may be entered thereon in any court of competent jurisdiction. Should either party bring a Dispute in a forum other than NAF, the arbitrator may award the other party its reasonable costs and expenses, including attorneys' fees, incurred in staying or dismissing such other proceedings or in otherwise enforcing compliance with this dispute resolution provision. **You understand that, in the absence of this provision, You would have had a right to litigate disputes through a court, including the right to litigate claims on a class-wide or class-action basis, and that You have expressly and knowingly waived those rights and agreed to resolve any Disputes through binding arbitration in accordance with the provisions of this paragraph.** This arbitration provision shall be governed by the Federal Arbitration Act, 9 U.S.C. Section 1, *et seq.* For the purposes of this provision, the term "Dispute" means any dispute, controversy, or claim arising out of or relating to (i) this Agreement, its interpretation, or the breach, termination, applicability or validity thereof, or (ii) any other dispute arising out of or relating to the relationship between You and Us, the term "You" means you, or those in privity with you, such as family members or beneficiaries. Information may be

12

obtained from the NAF on line at www.arb-forum.com, by calling 800-474-2371 or writing to P.O. Box 50191, Minneapolis, MN, 55405.

AIGWG is the Administrator under this Plan and the Obligor except in California.  AIGWG can be contacted at: 300 Riverside Plaza, Chicago, IL 60606. Telephone 1-800-250-3819.

If you reside in any of the following states: AL, AK, AZ, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, KY, LA, ME, MD, MA, MI, MN, MO, MT, NE, NV, NH, NJ, NM, ND, OH, OK, OR, PA, RI, SC, SD, TN, TX, UT, VT, WA, WV, WI, or WY, this Plan is secured by a contractual liability insurance policy provided by Illinois National Insurance Company, 175 Water Street, 20th Floor, New York, NY 10038. Telephone 1-800-250-3819. If, within sixty (60) days we have not paid a covered claim, provided you with a refund or you are otherwise dissatisfied you may make a claim directly to the insurance company.

If you reside in any of the following states: AR, CA, FL, MS, NY, NC, or VA, this Plan is secured by a contractual liability insurance policy provided by New Hampshire Insurance Company, 175 Water Street, 20th Floor, New York, NY 10038. Telephone 1-800-250-3819. If, within sixty (60) days we have not paid a covered claim, provided you with a refund or you are otherwise dissatisfied you may make a claim directly to the insurance company.

**Special State Laws:**

**CALIFORNIA RESIDENTS**: AIG Warranty Services and Insurance Agency, Inc. (AIGWS) is the Obligor under this Plan.   AIG Warranty Guard, Inc. (AIGWG) is the Administrator.  AIGWS and AIGWG can be contacted at 300 South Riverside Plaza, Chicago, IL 60606. Telephone 1-800-250-3819.

**CONNECTICUT RESIDENTS:**  The expiration date of this Plan shall automatically be extended by the duration that the Product is in Our custody while being repaired. In the event of a dispute with the Administrator, you may file a written complaint with the State of Connecticut Insurance Department, P.O. Box 816, Hartford, CT 06142-0816, Attn: Consumer Affairs. The written compliant must contain a description of the dispute, the purchase price of the Plan, the cost of the repair, and the Plan.

**GEORGIA RESIDENTS:** Cancellation will comply with Section 33-24-44 of the Georgia Code.

**NORTH CAROLINA RESIDENTS:**  Purchase of this Plan is not required to obtain financing or to purchase Gateway products.

**UTAH RESIDENTS**: NOTICE Coverage afforded under this Plan is not guaranteed by the Utah Property and Casualty Guarantee Association.  This Plan may be canceled due to unauthorized repair which results in a material change in the nature or extent of the risk, occurring after the first effective date of the current policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time of the policy was issued or last renewed.  Failure to notify within the prescribed time will not invalidate the claim if You can show that notification was not reasonably possible.

**WISCONSIN RESIDENTS:**  THIS PLAN IS SUBJECT TO LIMITED REGULATION BY THE OFFICE OF THE WISCONSIN COMMISSIONER OF INSURANCE. This Plan shall not be canceled due to unauthorized repair of the covered equipment. If You cancel this Plan, no deduction shall be made from the refund for the cost of any service received. This Plan is backed by a contractual liability policy with limits of liability of $5,000 per claim and $25,000 in aggregate per Plan.

13

EXHIBIT _A_ PAGE _31_

**IN ALASKA, ARKANSAS, DELAWARE, DISTRICT OF COLUMBIA, IDAHO, IOWA, LOUISIANA, MASSACHUSETTS, MINNESOTA, MISSOURI, NEW JERSEY, NORTH CAROLINA, OHIO, PENNSYLVANIA, AND TENNESSEE:** All references to "Accidental Damage Protection" and the "<u>**What is covered**</u>" section are deleted and replaced with the following:

<u>**What is Covered:**</u>
This plan covers defects in materials and workmanship that are the result of normal usage.  We will repair or replace eligible parts in your Gateway product that experience a failure as provided herein during the term of this plan.   Eligible parts covered under this Plan consist of components originally included in your Gateway product.

The Obligor hereby provides additional limited warranty coverage in excess of that provided in the Gateway Limited Warranty Agreement included with your Gateway Product.  The Obligor herein warrants that the product will operate under normal operating conditions, including operational or structural failures of the product due to normal wear and tear and handling including failures caused by impact (including dropping or falls in the usual course of use) spilled liquids, brief immersion in liquids, power surges (when protected by operational surge suppressor) and other such product or structural failures incurred under normal product usage.

Form #86808
10-25-04

14

EXHIBIT *A* PAGE *32*

# GATEWAY LIMITED WARRANTY AGREEMENT

This Agreement applies to Gateway and eMachines branded products and services purchased by you from Gateway, Inc. or any of its subsidiaries or affiliates ("Gateway") or a Gateway authorized reseller ("Reseller"), unless you enter into a separate written agreement with Gateway. **THIS AGREEMENT APPLIES TO YOU UNLESS YOU NOTIFY GATEWAY IN WRITING THAT YOU DO NOT AGREE TO THIS AGREEMENT WITHIN 15 DAYS AFTER YOU RECEIVE THIS AGREEMENT AND YOU RETURN YOUR PRODUCT OR CANCEL SERVICES UNDER EITHER GATEWAY'S OR THE RESELLER'S REFUND POLICY, AS APPLICABLE. THIS AGREEMENT CONTAINS A DISPUTE RESOLUTION CLAUSE.  PLEASE SEE SECTION 5 BELOW.**

**1.    PC Technical Support.** Gateway will provide technical support for PC products at no additional charge for (i) ninety days; or (ii) for the period stated on your invoice, from the date of purchase by the original end user. Please note that when contacting Gateway via telephone, long distance and other charges may apply, depending upon your calling area. The scope of technical support consists of helping you reinstall the factory-installed operating system and software and restore it to the original factory configuration. In addition, for 30 days from the date of purchase by the original end user Gateway will assist you with (i) installation of any network operating system ("NOS") purchased from Gateway; (ii) configuration of the NOS software so that it works with the networked Gateway computers you purchased; (iii) setup of the NOS software so that it is fully integrated with other products you purchased from Gateway; and (iv) troubleshooting issues associated with the NOS software and assistance with NOS error messages. Gateway provides technical support via on-line, telephone and other methods. Gateway may change the means through which it provides technical support at any time. **Gateway does not guarantee that software will be free from errors, either in isolation or in combination with hardware.**

**2.    Product Limited Warranty.** Gateway warrants that its products will be free from defects in materials and workmanship for (i) ninety days; or (ii) for the period stated on your invoice, from the date of purchase by the original end user. During the warranty period, Gateway will, at its option:  (1) provide replacement parts necessary to repair the product, (2) repair the product or replace it with a comparable product, or (3) refund the amount you paid for the product, LESS DEPRECIATION, upon its return. You must assist Gateway in diagnosing issues with your product and follow Gateway's warranty processes. You must obtain warranty service from Gateway. Gateway will not reimburse you for service performed by others.  You may be required to deliver your product to and from an authorized service facility at your expense. Replacement parts and products will be new or serviceably used, comparable in function and performance to the original part, and warranted for the remainder of the original warranty period or, if longer, 90 days after they are shipped to you.  If Gateway asks you to return defective parts or products, you must do so within 7 days after you receive the replacement parts or products. Gateway will charge you for replacement parts or products if you fail to do so. If you live outside the United States, the details of your warranty service may vary as described below. **THIS LIMITED WARRANTY DOES NOT COVER MISUSE OR MINOR IMPERFECTIONS WITHIN DESIGN SPECIFICATIONS OR THAT DO NOT MATERIALLY ALTER FUNCTIONALITY.  GATEWAY DOES NOT WARRANT AND IS NOT RESPONSIBLE FOR DAMAGES CAUSED BY MISUSE, ABUSE, ACCIDENTS, VIRUSES, UNAUTHORIZED SERVICE OR PARTS, OR THE COMBINATION OF GATEWAY OR EMACHINES BRANDED PRODUCTS WITH OTHER PRODUCTS. THIS LIMITED WARRANTY DOES NOT COVER SOFTWARE, NON-GATEWAY BRANDED, OR NON-EMACHINES BRANDED PRODUCTS. ANY WARRANTY APPLICABLE TO SOFTWARE, NON-GATEWAY BRANDED, OR NON-EMACHINES BRANDED PRODUCTS IS PROVIDED BY THE ORIGINAL MANUFACTURER.**

**3.    Services and Service Limited Warranty.** The terms of services provided to you by Gateway consist of this Agreement and the additional terms stated in separate services descriptions provided by Gateway. For a period of 90 days after services are performed, Gateway warrants that services provided by it were performed in a professional and workmanlike manner. You should back up all files before services are performed and remove any data from parts or products returned to Gateway. **GATEWAY IS NOT RESPONSIBLE FOR ANY LOSS OF YOUR DATA.**

15

**4.   Disclaimer of Warranties; Limitation of Liability.** EXCEPT FOR THE WARRANTIES EXPRESSED IN THIS AGREEMENT, GATEWAY DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OTHER THAN THOSE WARRANTIES IMPLIED BY AND INCAPABLE OF EXCLUSION, RESTRICTION OR MODIFICATION UNDER APPLICABLE LAW. THE TERM OF ANY IMPLIED WARRANTIES THAT CANNOT BE DISCLAIMED ARE LIMITED TO THE TERM OF THIS AGREEMENT. GATEWAY'S AND YOUR MAXIMUM LIABILITY TO THE OTHER IS LIMITED TO THE PURCHASE PRICE YOU PAID FOR PRODUCTS OR SERVICES PLUS INTEREST AS ALLOWED BY LAW. NEITHER YOU NOR GATEWAY IS LIABLE TO THE OTHER IF YOU OR IT ARE UNABLE TO PERFORM DUE TO EVENTS YOU OR IT ARE NOT ABLE TO CONTROL, SUCH AS ACTS OF GOD,  OR FOR PROPERTY DAMAGE, PERSONAL INJURY, LOSS OF USE, INTERRUPTION OF BUSINESS, LOST PROFITS, LOST DATA OR OTHER CONSEQUENTIAL, PUNITIVE OR SPECIAL DAMAGES, HOWEVER CAUSED, WHETHER FOR BREACH OF WARRANTY, CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY OR OTHERWISE, OTHER THAN THOSE DAMAGES THAT ARE INCAPABLE OF LIMITATION, EXCLUSION OR RESTRICTION UNDER APPLICABLE LAW. THIS AGREEMENT GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU MAY ALSO HAVE OTHER RIGHTS THAT VARY FROM JURISDICTION TO JURISDICTION.  SOME JURISDICTIONS DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS OR THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATIONS OR EXCLUSIONS MAY NOT APPLY TO YOU.

**5.   Dispute Resolution.**  You and Gateway agree that any Dispute between You and Gateway will be resolved exclusively and finally by arbitration administered by the National Arbitration Forum (NAF) and conducted under its rules, except as otherwise provided below.  You and Gateway will agree on another arbitration forum if NAF ceases operations. The arbitration will be conducted before a single arbitrator, and will be limited solely to the Dispute between You and Gateway. The arbitration, or any portion of it, will not be consolidated with any other arbitration and will not be conducted on a class-wide or class action basis.  The arbitration shall be held at any reasonable location near your residence by submission of documents, by telephone, online or in person whichever method of presentation You choose. If You prevail in the arbitration of any Dispute with Gateway, Gateway will reimburse You for any fees you paid to NAF in connection with the arbitration. Any decision rendered in such arbitration proceedings will be final and binding on the parties, and judgment may be entered thereon in any court of competent jurisdiction. Should either party bring a Dispute in a forum other than NAF, the arbitrator may award the other party its reasonable costs and expenses, including attorneys' fees, incurred in staying or dismissing such other proceedings or in otherwise enforcing compliance with this dispute resolution provision. **You understand that, in the absence of this provision, You would have had a right to litigate disputes through a court, including the right to litigate claims on a class-wide or class-action basis, and that You have expressly and knowingly waived those rights and agreed to resolve any Disputes through binding arbitration in accordance with the provisions of this paragraph.**  This arbitration provision shall be governed by the Federal Arbitration Act, 9 U.S.C. Section 1, *et seq.*  For the purposes of this provision, the term "Dispute" means any dispute, controversy, or claim arising out of or relating to (i) this Agreement, its interpretation, or the breach, termination, applicability or validity thereof, (ii) the related order for, purchase, delivery, receipt or use of any product or service from Gateway, or (iii) any other dispute arising out of or relating to the relationship between You and Gateway; the term "Gateway" means Gateway, Inc, its parents, subsidiaries, affiliates, directors, officers, employees, beneficiaries, agents, assigns, component suppliers (both hardware and software), and/or any third party who provides products or services purchased from or distributed by Gateway; and the term "You" means you, or those in privity with you, such as family members or beneficiaries.  Information may be obtained from the NAF on line at www.arb-forum.com, by calling 800-474-2371 or writing to P.O. Box 50191, Minneapolis, MN, 55405.

**6.   General.**  You may not assign this Agreement without Gateway's written consent. Gateway may assign this Agreement and/or any associated service plan without your consent and without notice to you. If Gateway does assign this Agreement and/or any associated service plan, the assignee will assume all obligations to you, Gateway will be released of all obligations, and you agree to look solely to the assignee for the performance of all obligations under this Agreement and/or any associated service plan. Gateway, Inc.

16

and its subsidiaries and affiliates are intended beneficiaries of this Agreement. If there is any inconsistency between this Agreement and any other agreement included with or relating to products or services purchased from Gateway, this Agreement shall govern. This Agreement may not be modified, altered or amended without the written agreement of Gateway. Any additional or altered terms shall be null and void, unless expressly agreed to in writing by Gateway. If any term of this Agreement is illegal or unenforceable, the legality and enforceability of the remaining provisions shall not be affected or impaired. This Agreement shall be interpreted under the laws of the State of South Dakota, without giving effect to conflicts of law rules.

**Privacy Notice.** Gateway respects our customers' right to privacy and will take all appropriate steps to keep your personal information confidential. You can review Gateway's Privacy Policy on our web site. The Privacy Policy also explains how you can update your information and elect not to receive email marketing solicitations from Gateway. In addition, Gateway obtains customer information from other companies that provide products and services to our customers. By purchasing, registering for or using other companies' products and services that are distributed by Gateway, you agree that these companies may transfer your customer information to Gateway. Gateway will maintain and use your customer information in accordance with its Privacy Policy.

**For Residents of Canada:** This Agreement is subject to the applicable provisions of Canadian consumer protection laws that cannot be derogated from by private agreement. You confirm your request that this Agreement and all documents related directly or indirectly thereto be drafted in the English language. Vous reconnaissez avoir requis que la présente convention ainsi que tous les documents qui s'y rattachent directement ou indirectement soient rédigés en langue anglaise.

**For All International Customers:** You must comply with all applicable export laws and regulations if you export the product from the United States. Gateway does not accept for return any products purchased from a reseller. The standard warranty stated above also applies to Gateway products shipped to a country outside the United States, *provided that* customers outside the United States may be responsible for paying all freight charges incurred in shipping, importing/exporting and receiving replacement products and parts and for arranging and paying for the shipment of any defective part(s) back to the Gateway. All international customers are responsible for all customs duties, VAT and other associated taxes and charges.

Please send correspondence about this Agreement to:

**Gateway**
**Customer Service Department**
**610 Gateway Drive**
**Attn: Warranty Services**
**North Sioux City, SD 57049**

Current information on technical support and warranty policies, phone numbers and other service information is available on our web sites:

**www.gateway.com**                          **www.emachines.com**

EXHIBIT *A* PAGE 35

18

EXHIBIT _A_ PAGE _36_

19

MAN SVC US BUS VALUE BROCH R8 Rev. 11/04

8510360

20



**CERTIFICATE OF SERVICE**

I, Linda Tapia, certify that on November 19, 2009, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants:

| | |
|---|---|
| Christine M. Ford | cford@mdpcelaw.com |
| Jeffrey I. Carton | jcarton@mdpcelaw.com |
| Matthew W. O'Brien | obrien@caldwell-leslie.com |
| Robyn C. Crowther | crowther@caldwell-leslie.com |

*s/ Linda Tapia*
Linda Tapia

IRI-937v1