1  MEISELMAN, DENLEA, PACKMAN,
   CARTON & EBERZ, P.C.
2  Jeffrey I. Carton (*pro hac vice* pending)
   1311 Mamaroneck Avenue
3  White Plains, New York 10605
   (914) 517-5000
4
   CALDWELL LESLIE & PROCTOR, PC
5  ROBYN C. CROWTHER, State Bar No. 193840
     crowther@caldwell-leslie.com
6  MATTHEW O'BRIEN, State Bar No. 261568
     obrien@caldwell-leslie.com
7  1000 Wilshire Boulevard, Suite 600
   Los Angeles, California 90017-2463
8  Telephone: (213) 629-9040
   Facsimile: (213) 629-9022
9
   Attorneys for Plaintiff and all others
10 similarly situated

11            **UNITED STATES DISTRICT COURT**

12     **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

13

14
   PETER WILSON, On behalf of himself       Case No. CV-09-07560 GW (VBKx)
15 and all others similarly situated,
                                            The Hon. George H. Wu
16            Plaintiff,
                                            **PLAINTIFF PETER WILSON'S**
17        v.                                **OPPOSITION TO DEFENDANTS'**
                                            **MOTION TO DISMISS**
18 GATEWAY, INC., RICHARD D.
   SNYDER, QUINCY L. ALLEN,                 Date:   January 28, 2010
19 JANET M. CLARKE, J. EDWARD               Time:   8:30 a.m.
   COLEMAN, SCOTT GALLOWAY,                 Crtrm.: 10
20 GEORGE H. KRAUSS, DOUGLAS L.
   LACEY. JOSEPH G. PARHAM, JR.,
21 DAVE RUSSELL, and PAUL E.
   WEAVER,
22
              Defendants.
23

24

25

26

27

28

CALDWELL
LESLIE &
PROCTOR

1

# **TABLE OF CONTENTS**

2

**Page**

3

4   I.     PRELIMINARY STATEMENT ............................................................1

5   II.    FACTUAL BACKGROUND .............................................................2

6   A.    Gateway Becomes One of the Country's Most Trusted Computer Brands...........................................................................................2

7

8   B.    Gateway's Market Share Erodes as It Struggles to Compete in the Competitive Computer Field ........................................................3

9   C.    The Gateway Acquisition Pushes MPC into Insolvency.......................5

10   D.    Plaintiff Peter Wilson Purchases a Gateway Computer with a Now-Worthless Extended Warranty........................................................6

11

12   E.    Thousands of Customers Have Been Damaged as a Result of Gateway's Deception ......................................................................7

13   III.    ARGUMENT ..................................................................................8

14   A.    California Law Applies .................................................................8

15   B.    The Applicable Standard for a Motion to Dismiss...............................9

16   C.    The Complaint Adequately Alleges Claims for Relief ........................9

17   1.    Gateway's Purported Assignment of Warranties to MPC Is Invalid.........................................................................9

18

19   2.    The Complaint Alleges the Elements of Breach of Contract ................................................................10

20   3.    The Complaint States a Claim for Breach of the Covenant of Good Faith and Fair Dealing...............................................12

21

22   4.    The Complaint States a Claim for Unjust Enrichment..............13

23   D.    Dismissal Is Not Required under Federal Rule of Civil Procedure 19......................................................................................13

24   1.    MPC Is Not a "Required Party" under Rule 19(a)...................14

25   2.    MPC is Not an "Indispensable" Party .................................16

26   E.    The Directors Should Not Be Dismissed.............................................18

27   IV.    CONCLUSION ..............................................................................19

28

CALDWELL
LESLIE &
PROCTOR

Plaintiff's Opposition to Defendants' Motion to Dismiss

1

# TABLE OF AUTHORITIES

2

Page(s)

3

Cases

4

*Altmann v. Republic of Austria*,

5

     17 F.3d 954 (9th Cir. 2002)........................................................................15

6

*Cartwright v. Viking Indus., Inc.*,

7

     49 F.R.D. 351 (E.D. Cal. 2008)...................................................................9

8

*Cayo v. Valor Fighting & Management LLC*,

9

     2008 WL 5170125 (N.D. Cal. Dec. 8, 2008)........................................11, 12

10

*Careau & Co. v. Security Pacific Business Credit, Inc.*,

11

     22 Cal.App.3d 1371 (Cal. Ct. App. 1990) ..................................................12

12

*CDF Firefighters v. Maldonado*,

13

     58 Cal.App.4th 1226 (Cal. Ct. App. 2008) .................................................12

14

*Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier*,

15

     17 F.3d 1292 (10th Cir. 1994).....................................................................15

16

*Crescent Woodworking Co., Ltd. v. Accent Furniture, Inc.*,

17

     2005 WL 5925586 (C.D. Cal. Dec. 6, 2005) ........................................12, 13

18

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*,

19

     76 F.3d 1150 (9th Cir. 2002)......................................................................16

20

*Dion LLC v. Infotek Wireless, Inc.*,

21

     2007 WL 3231738 (N.D. Cal. Oct. 30, 2007)............................................11

22

*Discover Bank v. Superior Court*,

23

     34 Cal.App.4th 886 (Cal. Ct. App. 2005) ....................................................8

24

*Eminence Capital, LLC v. Aspeon, Inc.*,

25

     16 F.3d 1048 (9th Cir. 2003)......................................................................18

26

27

28

CALDWELL
LESLIE &
PROCTOR

Plaintiff's Opposition to Defendants' Motion to Dismiss

1

# TABLE OF AUTHORITIES

2

Page(s)

3   Cases

4
   *Farb v. Superior Court*,
5          174 Cal.App.4th 678 (Cal. Ct. App. 2009) ....................................8

6
   *Farmland Irrigation Co. v. Dopplmaier*,
7          8 Cal.2d 208 (Cal. 1957) ...........................................................10

8
   *Fed. Deposit Ins. Co. v. Dintino*,
9          67 Cal.App.4th 333 (Cal. App. Ct. 2008) ....................................13

10
   *First Nationwide Savings v. Perry*,
11         1 Cal.App.4th 1657 (Cal. Ct. App. 1992) ....................................13

12
   *Frances T. v. Village Green Owners Assn.*,
13         2 Cal.3d 490 (1986) .............................................................18, 19

14
   *General Teamsters Union Local No. 439 v. Sunrise Sanitation Services, Inc.*,
15         2006 WL 1153577 (E.D. Cal. Apr. 28, 2006)...............................10

16
   *Ghirardo v. Antonioli*,
17         4 Cal.4th 39 (1996) .....................................................................13

18
   *Gilead Sciences Sec. Litig.*,
19         36 F.3d 1049 (9th Cir. 2008) ........................................................9

20
   *Hirsch v. Bank of America, N.A.*,
21         07 Cal.App.4th 708 (Cal. Ct. App. 2003) ....................................13

22
   *Kansas Gas & Elec. Co. v. Ross*,
23         21 N.W.2d 107 (S.D. 1994) .........................................................18

24
   *Lazy Y Ranch Ltd. v. Behrens*,
25         546 F.3d 580 (9th Cir. 2008).........................................................9

26

27

28

CALDWELL
LESLIE &
PROCTOR

Plaintiff's Opposition to Defendants' Motion to Dismiss

1

# TABLE OF AUTHORITIES

2

Page(s)

3  Cases

4

5  *Lectrodryer v. Seoulbank*,
   7 Cal.App.4th 723 (Cal. Ct. App. 2000) ......................................................13

6

7  *M.G. Chamberlain & Co. v. Simpson*,
   73 Cal.App.2d 263 (Cal. Ct. App. 1959) .....................................................11

8

9  *Republic of Philippines v. Pimentel*,
   28 S. Ct. 2180 (2008) .............................................................................14, 17

10

11  *Sanders v. Apple, Inc.*,
    2009 WL 150950 (N.D. Cal. Jan. 21, 2009) ...............................................13

12

13  *United States v. Two Bank Accounts Described As Bank Account
    In The Amount of $197,524.99 Bank of America Seattle, Washington*,

14    2009 WL 803615 (D.S.D. March 24, 2009) ................................................10

15  *Webber v. Inland Empire Investments*,
    4 Cal.App.4th 884 (Cal. Ct. App. 1999) .....................................................18

16

17  *Wilbur v. Locke*,
    23 F.3d 1101 (9th Cir. 2005).......................................................................16

18

19

20  Statutes

21  11 U.S.C. § 362 ...............................................................................................17

22  Cal. Comm. Code § 2210(2) ...........................................................................10

23

24  Fed. R. Civ. P. 8(a)(2)......................................................................................11

25  Fed. R. Civ. P. 15(a)(2)....................................................................................18

26  Fed. R. Civ. P. 19(a)(1)...............................................................................14, 17

27

28

1

**TABLE OF AUTHORITIES**

2

<u>Page(s)</u>

3

4

Fed. R. Civ. P. 19(a)(1)(A) ...................................................................................14

5

Fed. R. Civ. P. 19(a)(1)(B)...................................................................................15

6

Fed. R. Civ. P. 19(a)(1)(B)(i) ...........................................................................15, 16

7

8

Fed. R. Civ. P. 19(a)(1)(B)(ii) ..............................................................................16

9

Fed. R. Civ. P. 19(b) ............................................................................................17

10

11

<u>Other Authorities</u>

12

Restatement (Second) of Conflict of Laws § 187(2)...............................................8

13

14

Restatement (Second) of Contracts § 317(2)(a).....................................................10

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CALDWELL
LESLIE &
PROCTOR

-v-

I.       **PRELIMINARY STATEMENT**

Gateway, once a darling of the technology sector, carefully cultivated a homespun brand image based upon its Midwestern roots.  As such, Gateway positioned itself as a customer-service focused company.  Many, like Plaintiff Peter Wilson, relied upon Gateway's promise to stand behind its products and paid substantial sums to purchase Gateway's extended warranty.

Gateway, however, was anything but focused on its loyal customers and, instead, focused solely on its bottom line.  Indeed, unable to recover from the "dot.com" bust at the beginning of the decade, Gateway did all it could to shed its warranty obligations to improve its balance sheet.  To accomplish its goal of "cleaning" its balance sheet, Gateway found the only potential purchaser, an insolvent corporation that Gateway propped up with a cash infusion.  That insolvent corporation, MPC, was quickly pushed into bankruptcy as it could not bear the crushing burden of Gateway's warranty obligations.  Despite its knowledge of MPC's precarious financial position, Gateway disavowed any obligation to honor its warranties.  Within days of announcing the sale of its warranty obligations to MPC, Gateway announced that it was being acquired by industry giant, Acer, Inc.

Gateway now asserts that it cannot be held liable for its failure to honor its warranty commitments because the terms of the contract that Gateway drafted permitted Gateway to assign its obligations without the consent of the consumers.  Gateway's argument ignores the black-letter law that an assignment is invalid if it materially impairs the other party's ability to obtain return performance.  Gateway does not and cannot argue that consumers can obtain performance on the warranties.

Relying on the purported assignment provision, Gateway asserts that the Complaint fails to state a claim for breach of contract.  However, the Complaint sufficiently alleges the invalidity of Gateway's assignment to MPC and the elements of a cause of action for breach of contract.  Similarly, the Complaint sufficiently alleges a breach of the covenant of good faith and fair dealing as it alleges that

1   Gateway engaged in bad faith when it knowingly assigned warranties to an insolvent

2   corporation.  Moreover, Gateway received full value for warranties that it

3   intentionally rendered worthless and thus was unjustly enriched.

4        In addition, Gateway asserts that the Complaint should be dismissed because

5   MPC is a required party pursuant to Federal Rule of Civil Procedure 19.  Tellingly,

6   however, Gateway does not and cannot satisfy any of the Rule 19 criteria.  Gateway

7   further argues that its directors should be dismissed from this action.  However, it is

8   black-letter law that a corporation can only act through its directors and officers who

9   cannot shield themselves from intentional wrongdoing.  Accordingly, Gateway's

10   arguments should be rejected and this case should proceed to discovery and trial.

11   **II.     FACTUAL BACKGROUND**

12       *A.     Gateway Becomes One of the Country's Most Trusted Computer*

13            *Brands*

14        Founded in 1985 in an Iowa farmhouse, Gateway founders Ted Waitt and

15   Mike Hammond successfully developed a business of direct sales of personal

16   computers ("PCs").  From its humble beginnings, Gateway became one of the

17   nation's biggest business success stories.  Indeed, in 1991, *Inc.* magazine named

18   Gateway the fastest growing private company in America.  In 1993, Gateway

19   completed an initial public offering and started trading on the NASDAQ.  By the

20   mid-1990s, Gateway became a fixture on the *Fortune* 500 list of the largest

21   companies worldwide.

22        After relocating its headquarters to California in 1998, Gateway operated

23   three divisions:  (1) the Professional Division, which sold computers to educational

24   institutions, small businesses and governmental entities; (2) the Consumer Division,

25   which focused on direct sales to consumers; and (3) the retail division, which sold

26   computers through major retailers such as Best Buy and Wal-Mart.  Many students

27   purchased Gateway computers and extended warranties through the Professional

28   Division.

CALDWELL
LESLIE &
PROCTOR

Plaintiff's Opposition to Defendants' Motion to Dismiss

**B.      Gateway's Market Share Erodes as It Struggles to Compete in the Competitive Computer Field**

After riding high through the late 1990s, Gateway struggled in the dot-com bust at the beginning of the decade.  In the early 2000s, Gateway sought to return to profitability by withdrawing from international markets, reducing retail outlets and entering into the consumer electronics markets.  At the same time, the once-struggling Apple Inc. was reinvigorated with the introduction of new products and services that began to erode Gateway's market share.  Moreover, Gateway's expansion into the consumer electronics marketplace saw only mild success and the company withdrew from that market segment in 2004.

Struggling to compete against these market forces, Gateway determined to focus its energies on maximizing the profit potential for its consumer businesses and attracting an acquirer.  The problem:  Gateway's Professional Division and its warranty liability of $60 million.  On August 27, 2007, Gateway announced that it was "considering" selling its Professional Division, which would help Gateway streamline expenses by $130-150 million annually.  Later that same day, Gateway announced its consumer divisions were being acquired by Acer, Inc., the Taiwan-based technology giant.  The acquisition by Acer, which was valued at $710 million, did not include Gateway's Professional Division.

Desperate to shed its Professional Division in an effort to complete the Acer acquisition, Gateway turned to Idaho-based MPC Corporation. *Within a mere week*, on September 4, 2007, Gateway trumpeted a deal with MPC in which MPC agreed to acquire Gateway's Professional Division for $90 million.  As part of the MPC deal, Gateway acquired a 19.9% stake in MPC and infused $10 million in cash into MPC.  Expressly included as part of the MPC deal was that MPC would assume Gateway's warranty obligations to its Professional Division customers, a liability estimated at $60 million.  Discovery will reveal that Gateway's $10 million

investment was the pay-off to MPC for assuming liabilities that MPC never intended to honor.

Gateway, which as part of the MPC deal acquired a major stake in MPC, knew or should have known that MPC was not able to shoulder the burden of Gateway's warranties.  At the time the Professional Division sale was announced, MPC itself was on the brink of insolvency.  Indeed, MPC's Form 10-Q for the period ended September 30, 2007 -- the quarter in which the acquisition of Gateway's Professional Division was announced -- which was publicly filed with the United States Securities and Exchange Commission warned:

> [T]here can be no assurance that we will be able to
> continue in the ordinary course of business due to our
> significant liquidity constraints, unprofitable operations
> and negative operating cash flows. . . .
>
> We face liquidity constraints . . . .
>
> We may need to raise a significant amount of
> additional funds to satisfy vendor payment obligations and
> to fund our business if our losses continue.  There can be
> no assurance that we will be able to secure additional
> sources of financing.  Even if we do obtain additional
> funding, the amount of such funding may not be sufficient
> to fully address all of our liquidity constraints, which
> could negatively and materially impact our business and
> results of operations.

Despite these dire public warnings, in its desperation to rid itself of liabilities and increase its attractiveness to Acer, Gateway ignored altogether the interests of its customers who spent good money for warranties.  Thus, Gateway assigned its warranty obligations knowing that the assignment to MPC materially impaired the customers' ability to obtain performance on a warranty claim.

CALDWELL
LESLIE &
PROCTOR

1      Immediately upon the close of the MPC deal in October 2007, Gateway

2   disclaimed any liability for warranty obligations for its Professional Division

3   customers and referred them to MPC.  MPC, however, was never financially or

4   otherwise able to assume the warranty obligations.  In fact, the risk to Gateway's

5   warranty holders was immediately apparent.  MPC's Form 10-K for the period

6   ended December 31, 2007 identified several "risk factors" to its business including,

7   "Gateway's warranty and other obligations assumed by us may exceed those

8   contemplated at the time of the acquisition."  Specifically, MPC's Form 10-K

9   reported:

10              In connection with our acquisition of [Gateway's]

11              Professional Business, we assumed all of the warranty

12              obligations and other obligations . . . of the Professional

13              Business.  The amount of the assumed obligations and

14              timing of related cash flows to fund such obligations may

15              differ from our estimates and could adversely impact our

16              limited ability to fund these obligations and adversely

17              impact our relationships with customers and suppliers.

18   MPC also reported that Gateway had become the largest holder of MPC's common

19   stock and, as such, "is able to exercise significant influence over matters subject to

20   shareholder approval."

21      **C.      *The Gateway Acquisition Pushes MPC into Insolvency***

22      Within just a few months of acquiring Gateway's Professional Division,

23   MPC's liquidity problems reached a crisis stage.  On May 8, 2008, the American

24   Stock Exchange ("AMEX") notified MPC that it failed to satisfy a continued listing

25   rule.  Specifically, MPC had stockholder equity of less than $2 million and sustained

26   losses in two of its three most recent fiscal years.  Although the AMEX accepted

27   MPC's plan to regain compliance with its listing standards, MPC was given a

28   deadline of November 9, 2008 to comply.  MPC, however, could not regain

CALDWELL
LESLIE &
PROCTOR

Plaintiff's Opposition to Defendants' Motion to Dismiss

1   compliance with the exchange's listing standards.  On October 27, 2008, MPC
2   announced that the NYSE Alternext US LLC (which acquired AMEX on October 1,
3   2008) intended to file a delisting application with the Securities and Exchange
4   Commission striking MPC's common stock and warrants from the exchange.  On
5   November 4, 2008, MPC was delisted from the NYSE Alternext as a result of its
6   sustained losses.

7          MPC admitted that it appeared "questionable as to whether we will be able to
8   continue operations."  Gateway, despite its significant equity stake in MPC, did
9   nothing to stave off MPC's inevitable bankruptcy petition.  With this final blow,
10  MPC could no longer function.  On November 6, 2008, MPC filed a voluntary
11  petition for bankruptcy pursuant to Chapter 11 of the United States Bankruptcy
12  Code in the United States District Court for the District of Delaware.  In a statement
13  concerning its bankruptcy filing, MPC's chief executive officer attributed MPC's
14  extensive losses to "unforeseen issues surrounding our integration of the Gateway
15  Professional business unit . . . ."

16         By December 29, 2008, MPC announced that it would liquidate all of its
17  remaining assets and close its doors.  Unfortunately for the Gateway warranty
18  holders, there would be no recourse on any warranty claims.  Gateway, meanwhile,
19  persisted in its refusal to offer any reprieve to those Professional Division customers
20  who had warranty claims.

21      **D.     *Plaintiff Peter Wilson Purchases a Gateway Computer with a Now-***
22              ***Worthless Extended Warranty***

23         On July 20, 2005, Plaintiff Peter Wilson, a resident of Big Bear, California, as
24  a freshman student at Master's College, located in Santa Clarita, California,
25  purchased a Gateway computer, M250-E Laptop, serial number 0035612802, along
26  with a four-year extended warranty.  Plaintiff purchased the Gateway Extended
27  Service Plan, Priority Access, Accidental Damage and Limited Warranty Plan
28  (collectively, "Gateway Extended Warranty Agreement").  The total purchase price

was $1,475, plus $121.69 in sales tax.  The total purchase price was added to his Master's College billing statement, which Plaintiff paid in full.  Plaintiff never had the ability to negotiate the terms of use of the Extended Warranty Agreement.

On or about February 6, 2009, with approximately one year remaining until Plaintiff's Gateway Extended Warranty Agreement terminated, Plaintiff's Gateway laptop ceased functioning completely and was in need of repair.  Plaintiff contacted Gateway directly at this time to exercise his Gateway Extended Warranty Agreement and have Gateway honor its agreement to repair Plaintiff's computer. Upon contacting Gateway, Plaintiff was informed by a Gateway representative that, due to the recent acquisition of Gateway professional products, all service and support for Plaintiff's computer now were being handled by MPC.  Plaintiff then contacted MPC, only to find out that MPC was out of business and could not service Plaintiff's computer.  Plaintiff contacted Gateway directly for a second time to complain that, after paying approximately $1,000 for a Gateway Extended Warranty and with more than one year remaining until the Extended Warranty terminated, Plaintiff was entitled to have his laptop computer warranty honored by Gateway. Gateway refused, and directed him again to MPC, informing Plaintiff that it was no longer responsible to honor the warranty on his computer as it had sold Plaintiff's warranty to MPC, a bankrupt corporation.  As such, Plaintiff's Gateway Extended Warranty is worthless, and Plaintiff has suffered damage.

## E.     *Thousands of Customers Have Been Damaged as a Result of Gateway's Deception*

Thousands of customers like Peter Wilson have suffered as a result of Gateway's deception.  Web sites are full of complaints from individuals and small business owners left with worthless warranties.  *Infoworld* and other technology publications have reported consumer grievances over the worthlessness of Gateway warranties.  Numerous complaints have been submitted to the Better Business Bureau and state attorneys general.  Unfortunately, many of the individuals

1    suffering from Gateway's deception are students who acquired their computers

2    through the Professional Division, because that unit serviced educational

3    institutions.  In addition to pecuniary losses, Gateway's refusal to honor its

4    warranties has negatively impacted students throughout the nation.

5    **III.    ARGUMENT**

6          **A.    *California Law Applies***

7          There is no basis for Gateway's choice of South Dakota law.  In California,

8    the enforcement of choice of law provisions is governed by the Restatement

9    (Second) of Conflict of Laws § 187(2).  *See Discover Bank v. Superior Court*, 134

10   Cal.App.4th 886, 890 (Cal. Ct. App. 2005).  Pursuant to the Restatement, the

11   "proper approach" for deciding whether a choice of law provision will be enforced

12   is to determine:  "(1) whether the chosen state has a substantial relationship to the

13   parties or their transaction, or (2) whether there is any other reasonable basis for the

14   parties' choice of law."  *Id.*  "If neither of these tests is met, that is the end of the

15   inquiry, and the court need not enforce the parties' choice of law."  *Id.* at 891; *see*

16   *also Farb v. Superior Court*, 174 Cal.App.4th 678, 686 (Cal. Ct. App. 2009).

17         There is no nexus whatsoever between the parties, their transaction, and the

18   law of South Dakota.  Gateway is incorporated under the laws of Delaware and

19   maintains its principal place of business in Irvine, California.  Plaintiff Peter Wilson

20   is a resident and citizen of the State of California, where the events giving rise to

21   this action occurred.   Gateway's citation, without any analysis, to the choice of law

22   provision in its standardized warranty cannot overcome these facts.  Thus, the court

23   need not look to South Dakota law to resolve issues in this lawsuit.[1]

24

25

26   _____

27   [1] Nonetheless, Plaintiff occasionally cites to South Dakota law here to show that,
     even if South Dakota law were to apply, Defendants' Motion to Dismiss should still

28   be denied.

**B.      The Applicable Standard for a Motion to Dismiss**

"To survive a motion to dismiss for failure to state a claim, the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  "In general, the inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff."  *Id.*  "[A] district court ruling on a motion to dismiss is not sitting as a trier of fact."  *Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008).  "[S]o long as the plaintiff alleges facts to support a theory that is not facially implausible," the motion to dismiss must be denied.  *Id.*  Indeed, the "court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the 'well-pleaded' allegations of the complaint." *Cartwright v. Viking Indus., Inc.*, 249 F.R.D. 351, 353 (E.D. Cal. 2008).  The Complaint is more than sufficient under these well-settled standards.

**C.      The Complaint Adequately Alleges Claims for Relief**

**1.      Gateway's Purported Assignment of Warranties to MPC Is Invalid**

Gateway argues that it should be exonerated from any liability on its warranties because its unilateral warranty agreement contained an assignment clause, which purportedly permitted Gateway to assign the warranties without the consent of consumers.  Def. Mem. at 4.  However, Gateway's one-sided assignment provision cannot insulate it from an assignment to a company that Gateway knew (or should have known) to be insolvent and incapable of performing under the warranty agreements.

Indeed, it is black-letter law that a contractual right ***cannot*** be assigned if "the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or ***materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining***

1  ***return performance, or materially reduce its value to him.***"  Restatement (Second)

2  of Contracts § 317(2)(a) (emphasis added).  Courts in California and South Dakota

3  adhere to the principles of Section 317.  *See, e.g., Farmland Irrigation Co. v.*

4  *Dopplmaier*, 48 Cal.2d 208, 222 (Cal. 1957) ("Rights . . . cannot be assigned if the

5  assignment would materially impair the nonassigning party's chance of obtaining

6  the performance he expected."); *General Teamsters Union Local No. 439 v. Sunrise*

7  *Sanitation Servs., Inc.*, 2006 WL 1153577, at *4 (E.D. Cal. Apr. 28, 2006); *United*

8  *States v. Two Bank Accounts Described As Bank Account In The Amount of*

9  *$197,524.99 Bank of America Seattle, Washington*, 2009 WL 803615, at *5 n.5

10  (D.S.D. Mar. 24, 2009).  Indeed, in adopting the California Commercial Code, the

11  Legislature prohibited the assignment of a contract when the non-assigning party's

12  rights would be materially impaired.  *See* Cal. Comm. Code § 2210(2).

13  Here, Gateway's assignment of its warranty obligations to MPC materially

14  impaired consumers' ability to obtain performance – in fact, Gateway's assignment

15  guaranteed that there would be ***no*** performance on the warranties because Gateway

16  knew or should have known that MPC was insolvent.  Because consumers could not

17  obtain any performance from Gateway or its purported assignee, MPC, the value of

18  the warranty was rendered worthless.  Thus, Gateway's assignment to MPC is

19  invalid and unenforceable.

20  **2.  The Complaint Alleges the Elements of Breach of Contract**

21  Gateway further contends that Plaintiff has not met the requirements of

22  Federal Rule of Civil Procedure 8(a) with respect to his breach of contract claim.

23  Gateway's argument is based entirely on the incorrect premise that its assignment of

24  the warranty to MPC was valid.  As discussed above, however, Gateway's

25  assignment of its warranty obligations to an insolvent corporation violates

26  fundamental tenets of law embodied in the Restatement (Second) of Contracts and

27  adopted in California and South Dakota.

28

CALDWELL
LESLIE &
PROCTOR

-10-

Plaintiff's Opposition to Defendants' Motion to Dismiss

1      Federal Rule of Civil Procedure 8(a) requires only "a short and plain

2  statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ.

3  P. 8(a)(2); *accord Dion LLC v. Infotek Wireless, Inc.*, 2007 WL 3231738, at *2

4  (N.D. Cal. Oct. 30, 2007).  The requirements of Rule 8 are satisfied when the

5  allegations of the complaint are sufficient to put the opposing party on notice of the

6  claim against it and allow it to formulate a responsive pleading.  *See Cayo v. Valor*

7  *Fighting & Management LLC*, 2008 WL 5170125, at *2 (N.D. Cal. Dec. 8, 2008).

8  The Complaint adequately alleges the factual basis for each element of Plaintiff's

9  claim and amply satisfies Rule 8.

10      "A cause of action for breach of contract requires proof of the following

11  elements:  (1) existence of the contract; (2) plaintiff's performance or excuse for

12  nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of

13  the breach."  *CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239 (Cal. Ct.

14  App. 2008); *see also M.G. Chamberlain & Co. v. Simpson*, 173 Cal.App.2d 263,

15  274 (Cal. Ct. App. 1959) (noting the well-settled elements of a breach of contract

16  claim are "the making of the contract and its terms, plaintiff's performance,

17  defendant's breach, and damages to plaintiff therefrom").

18      The Complaint alleges each element of Plaintiff's breach of contract claim.

19  Specifically, the Complaint alleges that Plaintiff purchased a warranty from

20  Gateway.  Compl. ¶¶ 14, 50, 60.  Plaintiff performed under the contract by paying

21  substantial sums for the warranty agreement.  *Id.* ¶ 62.  Gateway breached the

22  contract by making an ineffective assignment of the warranty to MPC and thereafter

23  refusing to honor its warranty obligations.  *Id.* ¶¶ 51, 52, 63-65.  As a result of

24  Gateway's refusal to honor its contractual obligations, Plaintiff has suffered

25  damages.  *Id.* ¶¶ 52, 65, 66.  These allegations set forth in detail the basis for

26  Plaintiff's claim and thus provide Gateway with sufficient information to formulate

27  a responsive pleading.  *See Cayo*, 2008 WL 5170125, at *2.

28

CALDWELL
LESLIE &
PROCTOR

-11-

3.      **The Complaint States a Claim for Breach of the Covenant of Good Faith and Fair Dealing**

Relying again on the invalid contractual provision purportedly permitting it to assign its warranty obligations, Gateway argues that it did not breach the implied covenant of good faith and fair dealing.  Gateway, however, ignores the invalidity of its assignment and the allegations of bad faith in connection with its attempt to assign its obligations to an insolvent company for the purpose of depriving Plaintiff and others of the benefit of their bargain.

"There is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract." *Crescent Woodworking Co., Ltd. v. Accent Furniture, Inc.*, 2005 WL 5925586, at *3 (C.D. Cal. Dec. 6, 2005).  The covenant is breached by a "conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement."  *Careau & Co. v. Security Pac. Bus. Credit, Inc.*, 222 Cal.App.3d 1371, 1395 (Cal. Ct. App. 1990).  What constitutes a breach of the covenant of good faith and fair dealing is decided on a case-by-case basis.  *Id.* Indeed, "'[a] complete catalogue of the types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.'" *Crescent Woodworking*, 2005 WL 5925586, at *3 (quoting Restatement (Second) of Contracts § 205 cmt. d. (1981)).

The Complaint alleges that Gateway breached the covenant of good faith by purporting to assign its obligations to an insolvent corporation that Gateway knew or should have known was unable to perform.  Compl. ¶¶ 71-72.  This allegation is distinct from the central allegation of the breach of contract claim that Gateway

1  itself has failed to honor warranty claims.  *See Crescent Woodworking*, 2005 WL

2  5925586, at *3.  Thus, the claim for breach of the covenant of good faith and fair

3  dealing is an independent claim that has been adequately alleged.

4  ### 4.    The Complaint States a Claim for Unjust Enrichment

5  State and federal courts throughout California have recognized a cause of

6  action for unjust enrichment.  *See*, *e.g.*, *Sanders v. Apple, Inc.*, 2009 WL 150950

7  (N.D. Cal. Jan. 21, 2009); *Fed. Deposit Ins. Co. v. Dintino*, 167 Cal.App.4th 333,

8  346 (Cal. App. Ct. 2008).  To recover for unjust enrichment, a complaint must

9  allege "receipt of a benefit and unjust retention of the benefit at the expense of

10  another."  *Lectrodryer v. Seoulbank*, 77 Cal.App.4th 723, 726 (Cal. Ct. App. 2000);

11  *see also Ghirardo v. Antonioli*, 14 Cal.4th 39, 51 (1996); *Hirsch v. Bank of America,*

12  *N.A.*, 107 Cal.App.4th 708, 722 (Cal. Ct. App. 2003).  A claim for unjust enrichment

13  is synonymous with restitution.  *First Nationwide Savings v. Perry*, 11 Cal.App.4th

14  1657, 1662 (Cal. Ct. App. 1992).  Whether or not a plaintiff is entitled to recover on

15  a theory of unjust enrichment requires a determination of policy considerations and

16  the knowledge of the alleged wrongdoer.  *Id.*

17  The Complaint alleges that Gateway accepted substantial sums from Plaintiff

18  and others in exchange for warranty obligations.  Compl. ¶ 75.  Gateway, in turn,

19  purported to assign its obligations to an entity that Gateway knew or should have

20  known was unable to perform.  *Id.*  Gateway thus intentionally frustrated the

21  purpose of its contracts with Plaintiff and others, who were not able to obtain

22  performance from a counter-party.  Plaintiff was therefore left with a worthless

23  warranty.  Gateway, however, retained the full monetary benefit conferred by

24  Plaintiff.  *Id.* ¶ 76.  Under these circumstances, it would be inequitable for Gateway

25  to retain the money received for a worthless warranty.

26  ### D.    Dismissal Is Not Required under Federal Rule of Civil Procedure 19

27  Gateway also asserts that this action should be dismissed because the

28  insolvent corporation to which it purportedly assigned its warranty obligations,

CALDWELL
LESLIE &
PROCTOR

-13-

MPC, has not been joined to this lawsuit.  However, Defendants fail to show that joinder of MPC is "required" under Rule 19(a) or that MPC's absence from the suit requires dismissal of the action under Rule 19(b).[2]  MPC is a stranger to the transaction, and MPC's absence will not hinder the Court's ability to resolve this dispute.

### 1.   MPC Is Not a "Required Party" under Rule 19(a)

MPC does not meet any of Rule 19(a)'s prerequisites for joinder of a "required party."  First, Defendants cannot satisfy the requirements of Rule 19(a) designed to protect parties seeking relief.[3]  Joinder is required if, in a party's absence, "the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A).  While Mr. Wilson appreciates Defendants' solicitude for his rights, "complete relief" is available from Defendants.  Indeed, if MPC were able to provide the relief Mr. Wilson seeks, this lawsuit would not be necessary.  Unlike MPC, Defendants are fully capable of paying damages, reimbursing Mr. Wilson and others similarly situated, and disgorging the profits they have unjustly retained.

Second, Defendants cannot satisfy the requirements of Rule 19(a) designed to protect absent parties.[4]  Joinder is required where the absent party "*claims an*

---

[2] In 2007, Rule 19 was amended so that the word "required" replaced the word "necessary" in Rule 19(a), and the word "indispensable" was omitted from Rule 19(b).  *See Republic of Philippines v. Pimentel*, 128 S. Ct. 2180, 2184-85 (2008) (discussing changes).  The changes "were stylistic only," and "the substance and operation of the Rule both pre- and post-2007 are unchanged." *Id.* at 2184.  Because Defendants have chosen to use the outdated terminology, Mr. Wilson refers to it occasionally here.

[3] Rule 19(a)(1) provides, in relevant part:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties.

Fed. R. Civ. P. 19(a)(1).

[4] Rule 19(a)(1)(B) provides that joinder is required if an absent party (footnote continued)

CALDWELL
LESLIE &
PROCTOR

1  *interest* relating to the subject of the action," which of course MPC has not done

2  here.  *Id.* 19(a)(1)(B) (emphasis added); *Altmann v. Republic of Austria*, 317 F.3d

3  954, 971 (9th Cir. 2002) ("Joinder is contingent upon an initial requirement that the

4  absent party *claim* a legally protected interest relating to the subject matter of the

5  action.") (internal quotations and citation omitted) (emphasis in original).  "Where a

6  party is aware of an action and chooses not to claim an interest, the district court

7  does not err by holding that joinder [is] 'unnecessary.'"  *Altmann*, 317 F.3d at 971

8  (citing *United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999)).  MPC's failure

9  to claim an interest in this suit is even more striking given Defendants' one-fifth

10  ownership stake in MPC.  *See* Compl., ¶ 4.

11      Nor is there any reason why "as a practical matter" MPC's absence from the

12  suit would "impair or impede [its] ability to protect [its] interest."  Fed. R. Civ. P.

13  19(a)(1)(B)(i); *see also Citizen Band Potawatomi Indian Tribe of Oklahoma v.*

14  *Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994) (party moving for dismissal bears

15  burden of proving absent party has interest that would be impaired).  Revealingly,

16  Defendants do not argue otherwise.  Indeed, as Defendants are fully aware, MPC

17  has disclaimed its interest in honoring the warranty obligations, *see* Compl., ¶ 52,

18  filed for bankruptcy, *see id.* ¶ 47, and liquidated all of its remaining assets, *see id.* ¶

19  48.  Finally, MPC's absence will not subject Defendants to "multiple[] or otherwise

20  inconsistent obligations."  Fed. R. Civ. P. 19(a)(1)(B)(ii).  Again, Defendants do not

21

22  _____

23      claims an interest relating to the subject of the action and is so situated
        that disposing of the action in the person's absence may:

24      (i) as a practical matter impair or impede the person's ability to protect
        the interest; or

25

26      (ii) leave an existing party subject to a substantial risk of incurring
        double, multiple, or otherwise inconsistent obligations because of the
        interest.

27

28  Fed. R. Civ. P. 19(a)(1)(B).

CALDWELL
LESLIE &
PROCTOR

Plaintiff's Opposition to Defendants' Motion to Dismiss

1   argue otherwise.

2        Defendants' assertion that a party to a contract is always a "necessary" party

3   is misplaced.  None of the case law cited by Defendants deals with a scenario even

4   remotely similar to the present dispute.  To the contrary, the two cases Defendants

5   cite hold that Native American tribes are "necessary" parties in suits affecting their

6   contracts with other sovereign governments.  *See Wilbur v. Locke*, 423 F.3d 1101,

7   1113 (9th Cir. 2005); *Dawavendewa v. Salt River Project Agric. Improvement &*

8   *Power Dist.*, 276 F.3d 1150, 1156-57 (9th Cir. 2002).  These cases illustrate the

9   unremarkable proposition that where litigation may impair an absent party's

10  contractual rights, the absent party is "necessary."  *See* Fed. R. Civ. P.

11  19(a)(1)(B)(i); *Dawavendewa*, 276 F.3d at 1157.

12       Here, of course, MPC was not a party to the warranty agreement that Mr.

13  Wilson entered into with Defendants.  As argued above, the purported assignment of

14  Defendants' contractual obligations to MPC is void as a matter of law.  MPC, a

15  bankrupt company that has refused to honor Mr. Wilson's warranty, has no

16  contractual interest to protect, and will not be "affected by" this litigation.  *See*

17  *Dawavendewa*, 276 F.3d at 1156 (citation omitted).  Even if the assignment were

18  presumptively valid, Defendants cite no precedent holding that in a lawsuit

19  challenging an assignment as a matter of law, a purported assignee in bankruptcy is

20  a "required party."

21          **2.**     **MPC is Not an "Indispensable" Party**

22       Even if Defendants somehow could show that MPC is a "required party," they

23  fail to establish that dismissal is required pursuant to Rule 19(b).[5]  *See Republic of*

24

25  [5] Rule 19(b) provides as follows:

26       If a person who is required to be joined if feasible cannot be joined, the
         court must determine whether, in equity and good conscience, the

27       action should proceed among the existing parties or should be
         dismissed. The factors for the court to consider include:

28  (footnote continued)

CALDWELL
LESLIE &
PROCTOR

-16-

1   *Philippines*, 128 S. Ct. at 2189 ("Required persons [under Rule 19(a)] may turn out

2   not to be required [under Rule 19(b)] for the action to proceed after all.").

3       Defendants' Motion does not identify which of Rule 19(b)'s four factors they

4   rely on to assert that MPC is "indispensable," likely because none favor such a

5   theory.  In short, for the same reasons discussed above, MPC's absence neither

6   prejudices MPC nor leaves Mr. Wilson and others without an adequate remedy.

7       Defendants baldly assert that the Court should dismiss the action "in equity

8   and good conscience."  *See* Fed. R. Civ. P. 19(b).  They cite no precedent for

9   dismissal of an action "in equity and good conscience" where, as here, a defendant

10   seeks to avoid liability for its bad faith conduct that has left a plaintiff with no

11   choice but to seek relief from that defendant.  Equity and good conscience preclude

12   dismissal of this case, rather than justify it.  *See* Compl., ¶¶ 36-49 (detailing

13   Defendants' scheme to unload $60 million in warranty obligations to MPC, a

14   company known to be on the verge of bankruptcy, while positioning Gateway for a

15   highly profitable acquisition).

16

17   ——————————————

18       (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

19       (2) the extent to which any prejudice could be lessened or avoided by:

20           (A) protective provisions in the judgment;

21           (B) shaping the relief; or

22           (C) other measures;

23       (3) whether a judgment rendered in the person's absence would be adequate; and

25       (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

26   Fed. R. Civ. P. 19(b).  Here, even if MPC were a "required party," joinder is not

27   feasible because of its status as a debtor in bankruptcy.  *Id.* 19(a)(1); 11 U.S.C. § 362.

28

CALDWELL
LESLIE &
PROCTOR

-17-

### E.     The Directors Should Not Be Dismissed

Despite Defendants' claims to the contrary, Mr. Wilson's claims against the Directors are anything but frivolous.  As stated in the Complaint, the Directors approved of the improper assignment to MPC when they knew or should have known that MPC was on the brink of insolvency.  *See, e.g.*, Compl., ¶¶ 63, 70.  "[W]hen the notion of a legal entity is used to defeat public convenience, justify wrong, [or] protect fraud, . . . then sufficient reason will exist" to hold corporate directors individually liable.  *Kansas Gas & Elec. Co. v. Ross*, 521 N.W.2d 107, 112 (S.D. 1994); *Webber v. Inland Empire Investments*, 74 Cal.App.4th 884, 900 (Cal. Ct. App. 1999) (same).

Nonetheless, in the event the Court does not permit Mr. Wilson's contractual claims against the Directors to go forward, Mr. Wilson hereby requests leave to amend the Complaint to add tort claims against the Directors.  *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires"); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) ("This policy is to be applied with extreme liberality.") (internal quotations omitted).  The Complaint sufficiently alleges facts to show the Directors may be personally liable in tort for their individual roles in devising Gateway's scheme with MPC, and, if the Court grants Mr. Wilson leave to amend, the Amended Complaint will pinpoint the Directors' tortious conduct.

A corporate director is individually liable where he or she "authorizes, directs, or in some meaningful sense actively participates in the wrongful conduct." *Frances T. v. Village Green Owners Assn.*, 42 Cal.3d 490, 504 (1986) (quotations and citation omitted).  Directors "may be joined as defendants if they personally directed or participated in the tortious conduct."  *Id.*  "Directors are liable to third persons injured by their own tortious conduct regardless of whether they acted on behalf of the corporation and regardless of whether the corporation is also liable." *Id.*

1    Finally, the Directors may not attempt to hide behind the business judgment

2  rule, particularly at this stage in the litigation.  The business judgment rule "does not

3  abrogate the common law duty which every person owes to others - that is, a duty to

4  refrain from conduct that imposes an unreasonable risk of injury on third parties."

5  *Id*. at 507.  Thus, there is no basis for dismissal of Mr. Wilson's claims against the

6  Directors.  *See id.* at 511 (holding that whether individual directors acted reasonably

7  under the circumstances was a question "for the trier of fact and not appropriate

8  grounds for sustaining a general demurrer to plaintiff's claim").

9  **IV.   CONCLUSION**

10    For the foregoing reasons, the Court should deny Defendants' motion to

11  dismiss in its entirety and should grant such other and further relief as it deems just

12  and proper.

13  DATED:  January 7, 2010          Respectfully submitted,

14                                    MEISELMAN, DENLEA, PACKMAN,
15                                    CARTON & EBERZ P.C.
                                      JEFFREY I. CARTON
16

17                                    By_____/S/_____
18                                           JEFFREY I. CARTON
                                      Attorneys for Plaintiffs and all others similarly
19                                    situated

20                                    CALDWELL LESLIE & PROCTOR, PC
21                                    ROBYN C. CROWTHER
                                      MATTHEW O'BRIEN
22

23                                    By_____/S/_____
24                                           ROBYN C. CROWTHER
                                      Attorneys for Plaintiffs and all others similarly
25                                    situated

26

27

28

CALDWELL
LESLIE &
PROCTOR

-19-