1   MEISELMAN, DENLEA, PACKMAN,
    CARTON & EBERZ, P.C.
2   Jeffrey I. Carton (*pro hac vice*)
      *jcarton@mdpcelaw.com*
3   Joshua S. Bauchner (*pro hac vice*)
      *jbauchner@mdpcelaw.com*
4   1311 Mamaroneck Avenue
    White Plains, New York 10605
5   (914) 517-5000

6   CALDWELL LESLIE & PROCTOR, PC
    ROBYN C. CROWTHER, State Bar No. 193840
7     *crowther@caldwell-leslie.com*
    JEANNE A. FUGATE, State Bar No. 236341
8     *fugate@caldwell-leslie.com*
    MATTHEW O'BRIEN, State Bar No. 261568
9     *obrien@caldwell-leslie.com*
    1000 Wilshire Boulevard, Suite 600
10  Los Angeles, California  90017-2463
    Telephone: (213) 629-9040
11  Facsimile: (213) 629-9022

12  Attorneys for Plaintiff and others similarly
    situated

13

14                    **UNITED STATES DISTRICT COURT**

15          **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

16  PETER WILSON, On behalf of himself        Case No. CV-09-07560 GW (VBKx)
    and all others similarly situated,

17                                            Honorable George H. Wu
                 Plaintiff,
18          v.                                **REDACTED SECOND AMENDED
                                              CLASS ACTION COMPLAINT**
19  GATEWAY, INC., a California
    corporation; and NATIONAL
20  ELECTRONICS WARRANTY LLC, a
    Delaware corporation;                     1.  **BREACH OF CONTRACT
21                                                (Based on Unconscionability)**
                 Defendants.
22                                            2.  **BREACH OF CONTRACT
                                                  (Based on Breach of Implied
23                                                Covenant of Good Faith and Fair
                                                  Dealing)**
24                                            3.  **UNJUST ENRICHMENT**

25                                            4.  **UNFAIR BUSINESS
                                                  PRACTICES (Business &
26                                                Professions Code § 17200)**

27                                            5.  **CONSUMERS LEGAL
                                                  REMEDIES ACT (Civil Code §
28                                                1750)**

CALDWELL
LESLIE &
PROCTOR

                                              SECOND AMENDED CLASS ACTION COMPLAINT

1                                          **<u>DEMAND FOR JURY TRIAL</u>**

2

3      GATEWAY, INC.,

               Third Party Plaintiff,

4               v.

5      NATIONAL ELECTRONICS
       WARRANTY LLC, a Delaware

6      corporation, CHARTIS WARRANTY
       SERVICES, INC. (F.K.A. AIG

7      Warranty Services and Insurance
       Agency, Inc.) a Delaware corporation;

8      and CHARTIS WARRANTYGUARD,
       INC. (F.K.A. AIG Warranty Guard,

9      Inc.), a Delaware corporation,

10              Third Party Defendants.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CALDWELL
LESLIE &
PROCTOR

1    Plaintiff, by his attorneys, Meiselman, Denlea, Packman, Carton & Eberz P.C.

2 and Caldwell Leslie & Proctor, PC, as and for his class action complaint, alleges,

3 with personal knowledge as to his own actions, and upon information and belief as

4 to those of others, as follows:

5                              **Nature of this Case**

6    1.    Since 2005, more than 1.7 million customers, including Plaintiff,

7 purchased an extended service warranty from the Professional Business Line ("Pro

8 Business") of Gateway, Inc. ("Gateway"), paying millions of dollars in the

9 aggregate for the security of knowing that their computers or other equipment would

10 be repaired or replaced in the event of a malfunction.  The warranties were sold by

11 Gateway on behalf of Defendant National Electronics Warranty LLC ("NEW"), one

12 of the nation's largest providers of extended warranty plans, which agreed to

13 "administer" the warranties.  The actual "servicing" was initially done by a

14 subsidiary of Gateway, Gateway Companies, Inc. ("GCI"), with whom NEW

15 contracted for this purpose.

16    2.    Although Gateway aggressively marketed and sold these "Pro-ESP

17 warranties"[1] to customers, Gateway eventually determined that it was not profitable

18 to actually service the warranties.  Relying on a one-sided, unconscionable

19 contractual provision, in October 2007 Gateway purportedly assigned all the

20 outstanding Pro-ESP warranties to MPC Corporation ("MPC"), a corporation that

21 Gateway knew or should have known was on the brink of insolvency.  As part of

22 that transaction, Gateway also sold to MPC its subsidiary, GCI, which was

23 responsible for servicing the warranties.

24

---

25 [1] As used herein, the terms "Pro-ESPs" and "Pro-ESP warranties" refer to the
26 "extended service plan" warranties sold by Gateway's Professional Business
Division ("Pro Business"), including but not limited to: Extended Service Plan,
27 Gateway Priority Access, Extended Service Plan with Accidental Damage
Protection, and Limited Warranty Agreement.

28

3.

4.     As Gateway should have anticipated, the additional burden of servicing Gateway's unwanted warranties was too much for MPC, and itf iled for bankruptcy in November 2008.  Accordingly, MPC has not serviced any warranty claims since shortly after it filed for bankruptcy, and can no longer do so.

5.     To make matters worse, Gateway continued to direct its Pro-ESP customers to MPC after MPC ceased operations.  Gateway's technical support website continued to instruct Pro-ESP customers to call a toll-free number assigned to MPC that was out of service, and Pro-ESP customers who attempted to call or email Gateway for help were similarly directed to call that same non-working telephone number.  Those customers who were able to contact MPC were informed that MPC was not able to service their warranty needs.

6.     Gateway's continued efforts to "deflect" its Pro-ESP customers to the bankrupt MPC were not a mistake, however, as made clear from Gateway's response to customers, such as the Plaintiff, who contacted Gateway to complain that MPC could not provide the service they were contractually owed.  In response to a Better Business Bureau complaint filed by Mr. Wilson, Gateway stated: "We

CALDWELL
LESLIE &
PROCTOR

SECOND AMENDED CLASS ACTION COMPLAINT

1  do understand the frustration that Mr. Wilson may be experiencing; however,

2  Gateway is no longer responsible for this account." In other words, Gateway told its

3  customers, who had spent millions of dollars on the Pro-ESP warranties: It's not

4  *our* problem, it's yours.

5      7.    Gateway did not act alone in shirking its responsibilities to Mr. Wilson

6  and the more than 1.7 million other customers who believed that their Pro-ESP

7  warranties would be serviced. NEW was also complicit in the purported assignment

8  of the warranties to MPC, because it knew that GCI was sold along with the

9  warranties to the at-risk-of-insolvency MPC, and failed to do anything after MPC's

10 bankruptcy to ensure that customers could receive the service under the NEW

11 warranties Gateway sold on its behalf.

12     8.    As a result of Gateway's and NEW's misconduct, Gateway's Pro-ESP

13 warranty customers hold worthless warranties for which they paid considerable

14 sums. In contrast, Gateway profited considerably by selling the warranties, not once

15 but twice—to customers, and then to MPC. Moreover, the sale of the Pro Business

16 line allowed Gateway to shed an unprofitable portion of its business, making it well-

17 positioned to have its more profitable business (the Consumer Division) acquired by

18 the computer giant, Acer, Inc., for more than $700 million. NEW also benefited

19 from its complicity; pursuant to its contract with Gateway, NEW was responsible

20 for reimbursing first Gateway, and then MPC, for the servicing performed on

21 customers' computers. From at least December 2008 to June 2010, Gateway's

22 "deflection" of customers to the bankrupt MPC resulted, on information and belief,

23 in an enormous windfall to NEW, which therefore did not have to reimburse any

24 entity for service, since none was performed.

25     9.    This suit is brought on behalf of a nationwide class of all persons who

26 purchased from Gateway a Pro-ESP warranty that was unexpired as of October 1,

27 2007 (the "Class"). It seeks, *inter alia*, damages, restitution and/or compensatory

28 damages for Plaintiff and each Class Member, including but not limited to damages,

CALDWELL
LESLIE &
PROCTOR

-3-

1  reimbursement, attorneys' fees, and the costs of this suit.  Just as important, Plaintiff

2  seeks injunctive and declaratory relief to prohibit Defendants from continuing to

3  engage in their unfair, unlawful, and deceptive trade practices and, specifically, to

4  require Gateway and NEW to administer and service the Pro-ESP warranties.

5       10.    This action, which was first filed in October 2009, has already served

6  as the catalyst for Gateway to take some corrective action for the benefit of the Pro-

7  ESP warranty holders.  Although Gateway continued to direct its customers to MPC

8  through May 2010, despite its knowledge that MPC could not provide service to

9  those customers, Gateway finally changed its website in June 2010—almost

10  certainly in response to this litigation—to inform customers that they could obtain

11  service by contacting other providers.  Although this is a necessary step, it does not

12  make up for Gateway's bait-and-switch tactics in purportedly assigning the Pro-ESP

13  warranties to a different company to begin with, nor does it resolve the damages

14  suffered by Mr. Wilson and others similarly situated who sought the bargained-for

15  service—from Gateway and from MPC—but did not receive it from either company

16  (or NEW), and so were forced to pay out-of-pocket for services that should have

17  been covered.

18  <u>**Jurisdiction and Venue**</u>

19       11.    Jurisdiction in this civil action is authorized pursuant to 28 U.S.C.

20  § 1332(d), as some class members' citizenship is diverse from Defendants, there are

21  more than 100 class members, and the amount in controversy is in excess of $5

22  million.

23       12.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2), as a

24  substantial part of the events or omissions giving rise to Plaintiff's claims occurred

25  in the Central District of California.

26       13.    Venue is also proper in this district under 28 U.S.C. § 1391(a)(2), on

27  the grounds that a substantial part of the events relating to Plaintiff's claims

28  occurred in the Central District of California.

CALDWELL
LESLIE &
PROCTOR

-4-

**Parties**

14.     Plaintiff Peter Wilson is a resident of the State of California, San Bernardino County.  Mr. Wilson purchased a Gateway computer with an extended warranty Gateway purported to assign to MPC.  Neither company will honor the warranty.  Accordingly, Mr. Wilson's warranty has been rendered worthless.

15.     Defendant Gateway, Inc. is incorporated under the laws of the State of Delaware, with its principal place of business located in Irvine, California.  Gateway does actual business throughout the State of California, including through the direct sale of its merchandise in the State.

16.     Plaintiff is informed and believes and thereon alleges that Defendant National Electronics Warranty LLC ("NEW") is a corporation organized and existing under the laws of Delaware, with its principal place of business in Sterling, Virginia.  According to NEW's website, NEW has been "the industry's leading provider of extended service plans (ESPs) and product protection programs for consumer products since 1983."

**Operative Facts**

**A.     Gateway Becomes One of the Country's Most Trusted Computer Brands**

17.     Founded in 1985 in an Iowa farmhouse, Gateway founders Ted Waitt and Mike Hammond successfully developed a business of direct sales of personal computers ("PCs").

18.     Gateway capitalized on its homespun, Midwestern roots by implementing advertising campaigns with the tagline "Computers from Iowa?" and by shipping its products in distinctive cow-patterned boxes.  For several years, cows featured prominently in Gateway's marketing materials and Gateway even sold dolls of its cow mascot.

19.     In 1991, *Inc.* magazine named Gateway the fastest growing private company in America.

CALDWELL
LESLIE &
PROCTOR

-5-

SECOND AMENDED CLASS ACTION COMPLAINT

20.   In 1993, Gateway completed an initial public offering and started trading on the NASDAQ.  By the mid-1990s, Gateway became a fixture on the *Fortune* 500 list of the largest companies worldwide.

21.   After relocating its headquarters to California in 1998, Gateway operated three divisions:  (1) the Professional Business, which sold computers to educational institutions, small businesses and governmental entities, as well as individuals within those particular markets ("Pro Business"); (2) the Consumer Business, which focused on direct sales to consumers (the "Consumer Business"); and (3) the retail division, which sold computers through major retailers such as Best Buy and Wal-Mart.  Many students purchased Gateway computers and Pro-ESP warranties through the Pro Business division.

22.   Gateway can easily discern whether a customer bought a product from the Pro Business or Consumer lines, as those lines have different model numbers assigned to them.

**B.   Gateway's Market Share Erodes as It Struggles to Compete in the Competitive Computer Field**

23.   After riding high through the late 1990s, Gateway struggled in the dot-com bust.

24.   In the early 2000s, Gateway struggled to return to profitability by withdrawing from international markets, reducing retail outlets and entering into the consumer electronics markets.

25.   At the same time, the once-struggling Apple Inc. was reinvigorated with the introduction of new products and services that began to erode Gateway's market share.

26.   Moreover, Gateway's expansion into the consumer electronics marketplace saw only mild success and the company withdrew from that market segment in 2004.  Struggling to compete against these market forces, Gateway

1   determined to focus its energies on maximizing the profit potential for its consumer

2   businesses and attracting an acquirer.  The problem:  Gateway's Pro Business line,

3   which had warranty liabilities of approximately $60 million.

4       27.    On August 27, 2007, Gateway announced that it was "considering"

5   selling its Pro Business line, which would help Gateway streamline expenses by

6   $130 million to $150 million annually.  Later that same day, Gateway announced it

7   was being acquired by Acer, Inc., the Taiwan-based technology giant.  The

8   acquisition by Acer, which was valued at $710 million, did not include Gateway's

9   Pro Business.

10      28.    Desperate to shed its Pro Business in an effort to complete the Acer

11  acquisition, Gateway turned to Idaho-based MPC Corporation.  *Within a mere week,*

12  on September 4, 2007, Gateway trumpeted a deal with MPC in which MPC agreed

13  to acquire Gateway's Pro Business for $90 million.  Expressly included as part of

14  the MPC deal was that MPC would assume Gateway's warranty obligations to its

15  Pro-ESP warranty customers, a liability estimated to be at least $60 million.

16      29.    Gateway knew or should have known that MPC was not able to

17  shoulder the burden of the Pro-ESP warranties.  At the time the Pro Business sale

18  was announced, MPC itself was on the brink of insolvency.  Indeed, MPC's Form

19  10-Q for the period ended September 30, 2007—the quarter in which the acquisition

20  of Gateway's Pro Business was announced—which was publicly filed with the

21  United States Securities and Exchange Commission warned:

22      *[T]here can be no assurance that we will be able to*

23      *continue in the ordinary course of business due to our*

24      *significant liquidity constraints, unprofitable operations*

25      *and negative operating cash flows. . . .*

26      We face liquidity constraints . . . .

27      We may need to raise a significant amount of additional

28      funds to satisfy vendor payment obligations and to fund

CALDWELL
LESLIE &
PROCTOR

-7-

1    our business if our losses continue.  There can be no

2    assurance that we will be able to secure additional sources

3    of financing.  Even if we do obtain additional funding, the

4    amount of such funding may not be sufficient to fully

5    address all of our liquidity constraints, which could

6    negatively and materially impact our business and results

7    of operations.

8        30.    Despite these dire public warnings, in its desperation to rid itself of

9    liabilities and increase its attractiveness to Acer, Gateway ignored altogether the

10   interests of its customers who spent good money for warranties.  Thus, Gateway

11   purportedly assigned its Pro-ESP warranty obligations to MPC knowing that the

12   alleged assignment to MPC materially impaired the customers' ability to obtain

13   performance on a warranty claim.

14       31.    Immediately upon the close of the MPC deal in October 2007, Gateway

15   disclaimed any liability for warranty obligations for its Pro-ESP warranty customers

16   and referred them to MPC.  MPC, however, was not financially or otherwise

17   prepared to fulfill the warranty obligations.

18       32.    In fact, the risk to Gateway's warranty holders was immediately

19   apparent.  MPC's Form 10-K for the period ended December 31, 2007 identified

20   several "risk factors" to its business including, "Gateway's warranty and other

21   obligations assumed by us may exceed those contemplated at the time of the

22   acquisition."  Specifically, MPC's Form 10-K reported:

23       In connection with our acquisition of  [Gateway's]

24       Professional Business, we assumed all of the warranty

25       obligations and other obligations . . .of the Professional

26       Business.  The amount of the assumed obligations and

27       timing of related cash flows to fund such obligations may

28       differ from our estimates and could adversely impact our

CALDWELL
LESLIE &
PROCTOR

-8-

SECOND AMENDED CLASS ACTION COMPLAINT

limited ability to fund these obligations and adversely

impact our relationships with customers and suppliers.

MPC also reported that Gateway had become the largest holder of MPC's common stock and, as such, "is able to exercise significant influence over matters subject to shareholder approval."

**C.      Gateway Takes Steps to "Deflect" All Pro-ESP Warranty Customer Requests to MPC**

33.     Notwithstanding MPC's precarious financial situation,

34.

SECOND AMENDED CLASS ACTION COMPLAINT

CALDWELL
LESLIE &
PROCTOR

1    35.    Similar prompts were provided when customers emailed Gateway or

2 visited Gateway's technical support website.

3    36.    In addition, the Pro-ESP warranties themselves instructed customers to

4 call Gateway at 1-877-485-1464 in order to obtain service.

5

6

7

8

9    37.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    38.

26

27

28

39. 

40.

**D.    The Gateway Acquisition Pushes MPC into Insolvency**

41.    Within just a few months of acquiring Gateway's Pro Business, MPC's liquidity problems reached a crisis stage.  On May 8, 2008, the American Stock Exchange ("AMEX") notified MPC that it failed to satisfy a continued listing rule.  Specifically, MPC had stockholder equity of less than $2 million and sustained losses in two of its three most recent fiscal years.

42.    Although the AMEX accepted MPC's plan to regain compliance with its listing standards, MPC was given a deadline of November 9, 2008 to comply.

43.    MPC, however, could not regain compliance with the exchange's listing standards.  On October 27, 2008, MPC announced that the NYSE Alternext US LLC (which acquired the AMEX on October 1, 2008) intended to file a delisting application with the Securities and Exchange Commission striking MPC's common stock and warrants from the exchange.  On November 4, 2008, MPC was delisted from the NYSE Alternext as a resulted of its sustained losses.

44. MPC admitted that it appeared "questionable as to whether we will be able to continue operations." Gateway did nothing to stave off MPC's inevitable bankruptcy petition.

45. With this final blow, MPC could no longer function. On November 6, 2008, MPC filed a voluntary petition for bankruptcy pursuant to Chapter 11 of the United States Bankruptcy Code in the United States District Court for the District of Delaware. In a statement concerning the bankruptcy filing, MPC's chief executive officer attributed MPC's extensive losses to "unforeseen issues surrounding our integration of the Gateway Professional business unit . . . ."

46. By December 29, 2008, MPC announced that it would liquidate all of its remaining assets and close its doors. Unfortunately for the Pro-ESP warranty holders, MPC determined that it would not be able to service those warranties after its bankruptcy.

47. Even after MPC ceased operations and indicated that it could not service the Pro-ESP warranties, Gateway continued to "deflect" its customers to MPC and persisted in its refusal to offer any service to those Pro-ESP warranty customers who had warranty claims.

**E.     The Tangled Relationship Between Gateway and NEW**

48.

49. Historically, Gateway sold various extended warranties to customers who wished to insure that their products would be serviced for a period beyond the limited warranty provided to them at the time of sale. In doing so, Gateway

recognized that he sale of extended service warranties could provide an additional source of revenue for its business.  In order to implement the sale of extended warranties, Gateway sought out a third party with experience in constructing and pricing warranty programs to help Gateway ensure that its warranty programs were profitable.



50.

51.

52.





55.

56.

CALDWELL
LESLIE &
PROCTOR

**F.    Plaintiff Peter Wilson Purchases a Gateway Computer with a Now-Worthless Extended Warranty**

57.    On July 20, 2005, Plaintiff Peter Wilson, a resident of Big Bear, California, as a freshman student at Master's College, located in Santa Clarita, California, purchased a Gateway computer, M250-E Laptop, serial number 0035612802, along with a 4-year extended warranty.  Plaintiff purchased the Gateway Extended Service Plan, Priority Access, Accidental Damage and Limited Warranty Plan (collectively, "Extended Warranty Agreement"), which is one of the Pro-ESP warranties offered by Gateway.  The total purchase price was $1,475, plus $121.69 in sales tax.  The total purchase price was added to his Master's College billing statement, which Plaintiff paid in full.

58.    Plaintiff never had the ability to negotiate the terms of use of the Extended Warranty Agreement.  Rather, Gateway, a large multinational company with superior bargaining strength, drafted and unilaterally imposed the contract terms upon Wilson in a standardized form contract.  Under the circumstances, Gateway relegated to Wilson only the opportunity to adhere to the contract or reject it.

59.    The Extended Warranty Agreement is a single-spaced, standard-form contract comprised of four separate sections.  It uses a reduced, small-sized font on each of its twenty single-spaced pages, which each contain between 60 and 65 lines of text.  Buried on page 16, cloaked under a non-descript heading ("General"), and lumped together with several other unrelated contractual provisions (including choice of law, severability, modification, and integration provisions) is a totally one-

1  sided clause regarding assignment of warranty rights and obligations ("Unilateral

2  Assignment Provision").

3       60.    Gateway contends that the Unilateral Assignment Provision allows it to

4  assign the Extended Warranty Agreement and Gateway's obligation under the

5  agreement to virtually anyone it wants, without notice to or consent from the

6  customer, and without regard to the purported assignee's ability to perform.  As

7  such, consumers are left impotent to ensure that Gateway's warranty obligations will

8  be assigned to a person or entity capable of providing the warranty services they

9  purchased.  Moreover, the warranty purports to deny customers any recourse to

10  Gateway in the event that the assignee is unable to perform.  Finally, the Extended

11  Warranty Agreement expressly precludes customers from assigning the Gateway

12  Extended Warranty Agreement.

13       61.    Gateway clearly imposed the one-sided Unilateral Assignment

14  Provision in its standard-form Extended Warranty Agreement to gain an unfair

15  advantage over its customers.  The provision grossly and disproportionately favors

16  Gateway at the expense of customers.

17       62.    On or about February 6, 2009, with approximately five months

18  remaining until Plaintiff's Gateway Extended Warranty Agreement terminated,

19  Plaintiff's Gateway laptop ceased functioning completely and was in need of repair.

20  The Extended Warranty Agreement includes a section entitled "Customer

21  Requirements" for obtaining service, and provides the following options:

22       To obtain service under this Plan:

23           o    **Click**: You can reach Gateway support by going to

24               http://www.gateway.com/support for online, E-mail and online

25               chat support.

26           o    **Call Gateway Direct:**  You can call Gateway's technical

27               support hotline at 1-877-485-1464 or Automated

28

CALDWELL
LESLIE &
PROCTOR

-17-

SECOND AMENDED CLASS ACTION COMPLAINT

1          Troubleshooting Hotline at 1-800-846-2118, 24 hours a day, 7

2          days a week.

3    Pursuant to the terms of the Extended Warranty Agreement, Plaintiff contacted

4    Gateway directly at this time to exercise his Gateway Extended Warranty

5    Agreement and have Gateway honor its agreement to repair Plaintiff's computer.

6          63.    Upon contacting Gateway, Plaintiff was informed by a Gateway

7    representative that, due to the recent sale of the Pro Business line, all service and

8    support for Plaintiff's computer was now being handled by MPC, notwithstanding

9    that MPC had ceased all operations in December 2008.

10         64.    Plaintiff then contacted MPC, only to find out that MPC was out of

11   business and could not service Plaintiff's computer.  Plaintiff contacted Gateway for

12   a second time to complain that, after paying approximately $1,000 for a Pro-ESP

13   warranty and with more than five months remaining until the Pro-ESP warranty

14   expired, Plaintiff was entitled to have his laptop computer warranty honored by

15   Gateway.  Gateway refused, and again directed him to MPC, informing Plaintiff that

16   it was no longer responsible to warrant his computer as it had sold Plaintiff's

17   warranty to MPC, a bankrupt corporation.  In response to a Better Business Bureau

18   complaint filed by Mr. Wilson, Gateway stated:  "We do understand the frustration

19   that Mr. Wilson may be experiencing; however, Gateway is no longer responsible

20   for this account."

21         65.    Gateway never directed Plaintiff to contact any other service provider

22   or other party and instead simply "deflected" its service obligation to the bankrupt

23   MPC, without more.  Nor did NEW take any steps to ensure that Plaintiff received

24   the service for which he had paid.

25         66.    As such, Plaintiff's Pro-ESP warranty is worthless, and Plaintiff has

26   suffered damage.

27

28

CALDWELL
LESLIE &
PROCTOR

SECOND AMENDED CLASS ACTION COMPLAINT

**G.   Approximately 1.7 Million Customers Have Been Damaged as a Result of Gateway's Deception**

67.     Approximately 1.7 million customers like Peter Wilson have suffered as a result of Gateway's deception.  Web sites are full of complaints from individuals and small business owners left with worthless warranties.  *Infoworld* and other technology publications have reported consumer grievances over the worthlessness of Gateway warranties.  Numerous complaints have been submitted to the Better Business Bureau and state attorney generals.

68.     Unfortunately, many of the individuals suffering from Gateway's deception are students who acquired their computers through the Pro Business division, because that unit serviced educational institutions.  In addition to pecuniary losses, Gateway's refusal to honor its warranties has negatively impacted the studies of students throughout the nation.

**H.   Gateway's Remedial Actions and Third Party Complaint**

69.     Plaintiff filed his original class action complaint on October 16, 2009.  As of that date and through at least May 12, 2010, Gateway's technical support website continued to refer Pro-ESP warranty customers to MPC.  A true and correct copy of a screen shot from Gateway's technical support website as of May 12, 2010, is attached hereto as Exhibit "A."

70.     Plaintiff is informed and believes, and upon that basis alleges, that Gateway finally recognized—almost certainly in response to this litigation—that it was improper to continue to refer its warranty customers to a bankrupt entity that refused to honor the Gateway warranties and so, on or before June 29, 2010, updated its technical support webpage to direct its Pro-ESP warranty customers to entities other than MPC.  In particular, the technical support page now directs Pro-ESP warranty customers to contact Third-Party Defendants Chartis Warranty Services, Inc. (formerly known as AIG Warranty Services, Inc.) and Chartis

1  Warranty Guard, Inc. (formerly known as AIG Warranty Guard, Inc.) (collectively

2  "Chartis").  A true and correct copy of a screen shot from Gateway's technical

3  support page as of June 29, 2010, is attached hereto as Exhibit "B."

4       71.   Plaintiff is informed and believes, upon that basis alleges, that this

5  lawsuit was a catalyst motivating Gateway to provide this remedy, and that the the

6  lawsuit provided this catalytic effect by threat of victory, not by dint of nuisance and

7  threat of expense.

8       72.   On August 16, 2010, Gateway formally demanded that Chartis, along

9  with Defendant National Electronics Warranty Corporation ("NEW"), defend and

10  indemnify itf rom these class action claims.  Shortly thereafter, Gateway obtained

11  leave to file its Third-Party Complaint.

12       73.



21       74.   Also according to allegations in Gateway's Third-Party Complaint and

22  the documents produced by Gateway and NEW to date, NEW continued to have

23  these obligations after Gateway sold its Pro Business to MPC, including its

24  subsidiary GCI, and therefore NEW remains responsible for honoring the Pro-ESP

25  warranties held by Plaintiff and other similarly situated persons.

26       75.   Plaintiff is informed and believes, and upon that basis alleges, that

27  NEW was aware of Gateway's improper assignment of Pro-ESP warranties to MPC,

28  and thatn either MPC nor NEW serviced or administered the Pro-ESP warranties

CALDWELL
LESLIE &
PROCTOR

-20-

1  after MPC's bankruptcy, and NEW has taken no steps to ensure that Plaintiff and

2  others similarly situated can obtain the bargained-for service under their warranties.

3       76.    NEW benefited from this complicity. █████████████████

4  ████████████████████████████████████████████

5  ████████████████    Plaintiff is informed and believes, and upon that basis

6  alleges, that MPC did not provide the same level of service as Gateway from

7  October 2007 until its bankruptcy in December 2008, ███████████████

8  ████████████████████████████████████████████

9  ████████████████████████████████████████████

10 ████████████████████████████████████████████

11 ████████████████████████████████████████████

12       77.    Furthermore, Gateway and NEW were both aware of, and had access

13 to, the toll-free telephone number (1-877-485-1464) listed in the Pro-ESP warranties

14 for customer support.  This number apparently went defunct soon after MPC's

15 bankruptcy in late 2008.  Although Gateway and NEW were aware that the number

16 no longer worked, both waited until at least June 2010 to attempt to secure the

17 number so that servicing might resume.

18       78.   ███████████████████████████████████████

19 ████████████████████████████████████████████

20 ████████████████████████████████████████████

21 ████████████████████████████████████████████

22 ████████████████████████████████████████████

23 ████████████████████████████████████████████

24 ████████████████████████████████████████████

25                          **Class Action Allegations**

26       79.    Plaintiff brings this action on his own behalf and additionally, pursuant

27 to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a nationwide class

28

CALDWELL
LESLIE &
PROCTOR

1  of all persons who purchased from Gateway a Pro-ESP warranty that was unexpired
2  as of October 1, 2007 (the "Class").

3     80.    Excluded from the Class are Defendants; any parent, subsidiary, or
4  affiliate of Defendants; any entity in which Defendants have or had a controlling
5  interest, or which Defendants otherwise control or controlled; and any officer,
6  director, employee, legal representative, predecessor, successor, or assignee of
7  Defendants.

8     81.    This action is brought as a class action for the following reasons:

9        a.    The Class consists of at least thousands of persons and is
10  therefore so numerous that joinder of all members, whether otherwise required or
11  permitted, is impracticable;

12        b.    There are questions of law or fact common to the Class that
13  predominate over any questions affecting only individual members, including:

14            i.    whether the Unilateral Assignment Provision is
15  unconscionable and unenforceable, and, accordingly, Gateway breached its
16  contractual obligations by failing to honor its warranty obligations based on
17  its purported assignment of its warranty obligations to a nearly insolvent
18  corporation for the purpose of materially impairing Plaintiff's and other Class
19  Members' ability to obtain the performance for which they had paid
20  substantial sums;

21            ii.    whether Defendants violated contractual warranties and
22  obligations, including the covenant of good faith and fair dealing, by refusing
23  to honor their warranty obligations purportedly based on the assignment of
24  Gateway's warranty obligations to an insolvent corporation for the purpose of
25  materially impairing Plaintiff's and other Class Members' ability to obtain the
26  performance for which they had paid substantial sums;

27

28

CALDWELL
LESLIE &
PROCTOR

-22-
SECOND AMENDED CLASS ACTION COMPLAINT

iii.    whether Gateway and NEW unjustly enriched themselves by selling warranty obligations and eviscerating their customers' ability to use warranty services;

iv.    whether NEW failed to administer or service the warranties pursuant to its obligations after MPC's bankruptcy;

iv.    whether the Defendants engaged, and continue to engage, in unfair, unlawful and deceptive trade practices;

v.    whether the Defendants' conduct violated provisions of the Consumers Legal Remedies Act;

vi.    whether members of the Class have sustained damages and/or other compensable losses and, if so, the proper measure thereof; and

vii.    whether declaratory and injunctive relief is necessary to prohibit Defendants from engaging in the conduct described herein.

c.    The claims asserted by Plaintiff are typical of the claims of the members of the Class;

d.    Plaintiff will fairly and adequately protect the interests of the Class, and Plaintiff has retained attorneys experienced in class and complex litigation, including related litigation involving contracts and consumer fraud;

e.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

i.    Absent a class action, Class Members as a practical matter will be unable to obtain redress, Defendants' violations of its legal obligations will continue without remedy, additional customers will be harmed, and Defendants will continue to retain their ill-gotten gains;

ii.    It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

iii.    When the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Class;

CALDWELL
LESLIE &
PROCTOR

-23-
SECOND AMENDED CLASS ACTION COMPLAINT

iv.     A class action will permit an orderly and expeditious administration of Class claims, foster economies of time, effort, and expense, and ensure uniformity of decisions; and

v.     The lawsuit presents no difficulties that would impede its management by the Court as a class action.

f.     Defendants have acted on grounds generally applicable to Class Members, making class-wide relief appropriate; and

g.     The prosecution of separate actions by individual members of the Class would create a risk of incompatible standards of conduct for Defendant and of inconsistent or varying adjudications for all parties.

82.     Defendants' violations of the common law and statutory law are applicable to all members of the Class.

83.     The contemplated notice to the Class Members will be through direct mail to each Class Member.

## FIRST CLAIM FOR BREACH OF CONTRACT –
## UNCONSCIONABILITY OF ASSIGNMENT PROVISION
**(Brought by all Plaintiffs including the Class Representative,**
**in His Individual and Representative Capacity, and the Class**
**Members Against Gateway.)**

84.     Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

85.     Plaintiff and other Class Members purchased Pro-ESP warranties from Gateway with the justified expectation that Gateway would honor its obligations under the warranties to offer repair and replacement services.  To obtain the benefit of the Pro-ESP warranties, Plaintiff and other Class Members paid substantial sums.

86.     Plaintiff and the Class Members have fulfilled their obligation under the Pro-ESP warranty contract by paying for the warranty protection.

87.     When entering into the contract for warranty services, Plaintiff and other Class Members had no ability to negotiate the Pro-ESP warranties' terms, including the terms regarding assignment of the warranty rights and obligations. Instead, Gateway used its superior bargaining strength to impose those terms upon customers.  Customers had no meaningful choice whether to accept or reject the provisions.  Thus, the Pro-ESP warranties were the product of oppression and the lack of negotiation, not any meaningful choice.

88.     Every Pro-ESP warranty contains a Unilateral Assignment Provision as part of its boilerplate terms.  As described above, Gateway hid the Unilateral Assignment Provision within its small-type, prolix printed form; disguised it under a nebulous heading; and buried it among sundry other unrelated contractual terms.

89.     The Unilateral Assignment Provision is, accordingly, procedurally unconscionable.

90.     In imposing the Unilateral Assignment Provision, Gateway sought to create for itself an unlimited ability to evade its obligations under the warranty by assigning those obligations to whomever it desired.  It did so without providing any protection or assurance to consumers that Gateway's warranty obligation would only be assigned to people capable of providing the purchased warranty services, and Gateway sought to disclaim any responsibility to consumers in the event the assignee could not perform the obligations consumers paid Gateway to provide.

91.     The Unilateral Assignment Provision is totally one-sided and unreasonably favorable to Gateway.  It uniquely favors Gateway at the expense of customers, and Gateway clearly hid that term in its standard-form contract to gain unfair advantage over its consumers.

92.     The Unilateral Assignment Provision is, as outlined above, substantively oppressive because it reallocates risk between consumers and Gateway in an objectively unreasonable and unexpected manner by permitting Gateway to assign its obligations in complete derogation of the rights of consumers.

CALDWELL
LESLIE &
PROCTOR

-25-

SECOND AMENDED CLASS ACTION COMPLAINT

93.     Both procedurally and substantively, the Unilateral Assignment Provision is unduly oppressive and unconscionable.

94.     Under California Civil Code § 1670.5, the Unilateral Assignment Provision is unenforceable by Gateway.  The application of the Unilateral Assignment Provision should be limited to avoid the unconscionable result of permitting Gateway to evade its obligations under the Pro-ESP warranties—and thereby depriving Plaintiff and other Class Members of their bargained-for rights under the warranties—by assigning its warranty obligations to a party unable to perform them.  Thus, Gateway's purported assignment of its warranty obligation does not relieve Gateway of its obligations under the Pro-ESP warranties, because the purported "consent" of Plaintiff and the Class Members to that assignment under the Unilateral Assignment Provision is unconscionable and unenforceable.  Absent consent, Gateway is precluded as a matter of law from assigning its warranty obligations, and must satisfy those obligations itself.

95.     Additionally, to the extent that the Unilateral Assignment Provision purports to release Gateway from its obligations and require consumers to look solely to the assignee for performance without regard to the assignee's ability to perform, that provision is unconscionable and unenforceable.  Gateway, therefore, continues to be liable to perform those warranty obligations.

96.     Gateway's refusal to honor its warranty obligations to Plaintiff and other Class Members is a material breach of contract, which has resulted in harm to Plaintiff and other Class Members who cannot obtain the benefit of their bargain.

97.     By reason of the foregoing, Defendant has breached the parties' contract and is liable to Plaintiff and the other members of the Class.

**SECOND CLAIM FOR BREACH OF CONTRACT**

**INCLUDING THE COVENANT OF GOOD FAITH AND FAIR DEALING**

**(Brought by all Plaintiffs including the Class Representative,**

**in His Individual and Representative Capacity, and the Class**

**Members Against Gateway.)**

98.   Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

99.   Plaintiff and other Class Members purchased Pro-ESP warranties from Gateway with the justified expectation that Gateway would honor its obligations under the warranties to offer repair and replacement services. To obtain the benefit of the warranties, Plaintiff and other Class Members paid substantial sums.

100.   Plaintiff and the Class Members have fulfilled their obligations under the Pro-ESP warranty contract by paying for the warranty protection.

101.   The essential purpose of the Pro-ESP warranty for which Plaintiff and the Class Members paid Gateway was the provision by Gateway of warranty service.

102.   Desperate to rid itself of liabilities and increase its attractiveness to potential purchasers, Gateway consciously and deliberately ignored the interest of its customers and purportedly assigned its warranty obligations knowing that the assignment materially impaired the customers' ability to obtain performance on a warranty claim. Gateway's assignment of the Pro-ESP warranties to MPC was in bad faith, with knowledge that the warranties would be rendered worthless.

103.   Because of Gateway's conscious, deliberate and objectively unreasonable conduct, Plaintiff and other Class Members have not obtained the reasonably expected benefit of their bargain from Gateway and the essential purpose of the Pro-ESP warranty contract has been unfairly frustrated.

104.   Gateway breached the covenant of good faith and fair dealing by refusing to honor its contractual obligations based on its purported assignment of

1  those obligations to a nearly insolvent company that it knew or should have known
2  was unable to perform.

3      105.   Gateway's refusal to honor its warranty obligations is a material breach
4  of contract, which has resulted in harm to Plaintiff and other Class Members who
5  cannot obtain the benefit of their bargain.

6      106.   By reason of the foregoing, Gateway has breached the Pro-ESP
7  warranty agreement, including the covenant of good faith and fair dealing and its
8  obligation to provide warranty services, and, therefore, is liable to Plaintiff and the
9  other members of the Class.

10     107.   As a direct and proximate result of Gateway's actions as described
11  herein, Plaintiff and the Class have suffered, and continue to suffer, injury in fact
12  and have lost money as a result of Defendant's deception.

13

14              **THIRD CLAIM FOR UNJUST ENRICHMENT**
15         **(Brought by all Plaintiffs including the Class Representative,**
16           **in His Individual and Representative Capacity, and the Class**
17                **Members Against All Defendants.)**

18     108.   Plaintiff repeats and realleges each and every allegation contained
19  above, as though fully set forth herein.

20     109.   Plaintiff and the Class have conferred benefits on Defendants by paying
21  value for Pro-ESP warranties that they expected the Defendants to honor throughout
22  the warranties' terms.

23     110.   Defendants knowingly and willingly accepted monetary benefits from
24  Plaintiff and the Class, although Defendants did not honor their Pro-ESP warranty
25  obligations.  Rather, Defendants profited from the sales of Pro-ESP warranties,
26  which were then sold to a nearly insolvent company only to leave the Plaintiff and
27  the Class with worthless warranties.

28

CALDWELL
LESLIE &
PROCTOR

-28-
SECOND AMENDED CLASS ACTION COMPLAINT

111.   Under the circumstances described herein, it is inequitable for Defendants to retain the full monetary benefit at the expense of Plaintiff and the Class.

112.   By engaging in the conduct described above, Defendants have been unjustly enriched at the expense of Plaintiff and the Class and are required, in equity and good conscience, to compensate Plaintiff and the Class for harm suffered as a result of Defendants' actions.

113.   As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and the Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement from Defendants of the benefit conferred by Plaintiff and the Class.

**FOURTH CLAIM FOR UNFAIR COMPETITION UNDER CALIFORNIA LAW (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**
**(Brought by all Plaintiffs including the Class Representative, in His Individual and Representative Capacity, and the Class Members Against All Defendants.)**

114.   Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

115.   The aforesaid conduct of Defendants constitutes unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*  In particular, Gateway relied on an unconscionable assignment provision to transfer the Pro-ESP warranties to a company that was financially unable to service those warranties, made misrepresentations to Pro-ESP warranty customers about MPC's ability to service the warranties, refused to honor the warranties after MPC's bankruptcy, and continued to "deflect" Pro-ESP warranty customers to the bankrupt MPC.

116.

CALDWELL
LESLIE &
PROCTOR

-29-
SECOND AMENDED CLASS ACTION COMPLAINT

1

2

3

4

5

6    117.   Defendants engaged in these unfair practices to increase their profits.

7    Accordingly, Defendants have also engaged in unlawful trade practices, as defined

8    and prohibited by Section 17200 *et seq*. of the California Business and Professions

9    Code.

10   118.   The aforementioned practices, which Defendants have used, and

11   continue to use, to their significant financial gain, also constitute unlawful

12   competition and provide an unlawful advantage over Defendants' competitors as

13   well as injury to the general public.

14   119.   Plaintiff, and those similarly situated, relied to their detriment on

15   Defendants' false, deceptive, unfair, and illegal representations that the Pro-ESP

16   warranties would be serviced.  Plaintiff, and those similarly situated, would not have

17   purchased the Pro-ESP warranties but for the Defendants' deceptive, unfair and

18   unlawful representations.  Plaintiff, and the Putative Class Members, were similarly

19   induced to purchase the Pro-ESP warranties with the belief that they would receive

20   the full value of the warranties.  Plaintiff, and the Putative Class Members, would

21   not have purchased the Pro-ESP warranties but for Defendants' deceptive, unfair,

22   and unlawful representations.

23   120.   Plaintiff seeks, on behalf of all those similarly situated, full restitution

24   of monies, as necessary and according to proof, to restore any and all monies

25   acquired by Defendants from Plaintiff, the general public, or those similarly situated

26   by means of the unfair and/or deceptive trade practices complained of herein, plus

27   interest thereon.

28

CALDWELL
LESLIE &
PROCTOR

-30-

SECOND AMENDED CLASS ACTION COMPLAINT

121.   Plaintiff seeks, on behalf of all those similarly situated, an injunction to prohibit Defendants from continuing to engage in the unfair trade practices complained of herein.  Specifically, Plaintiff seeks an Order by this Court requiring Defendants to administer and service any Pro-ESP warranties where the warranty remains valid.  The acts complained of herein occurred, at least in part, within four (4) years preceding the filing of the Class Action Complaint.

122.   Plaintiff and those similarly situated are further entitled to, and do seek, both a declaration that the above-described trade practices are unfair, unlawful, and/or fraudulent, and injunctive relief restraining Defendants from engaging in any such deceptive, unfair and/or unlawful practices in the future.  Such misconduct by Defendants, unless and until enjoined and restrained by Order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same.  This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants, to which Defendants are not entitled.  Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Profession Code alleged to have been violated herein.

123.   As a direct and proximate cause of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional limit of this Court.

CALDWELL
LESLIE &
PROCTOR

-31-
SECOND AMENDED CLASS ACTION COMPLAINT

**FIFTH CLAIM FOR VIOLATION OF THE CALIFORNIA CONSUMERS**

**LEGAL REMEDIES ACT (California Civil Code § 1750 *et seq.*)**

**(Brought by all Plaintiffs including the Class Representative,**

**in His Individual and Representative Capacity, and the Class**

**Members Against All Defendants.)**

124.   Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

125.   This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.* ("CLRA").

126.   Defendants' actions, representations, and conduct have violated, and continue to violate, the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

127.   Plaintiff and other Putative Class Members are "consumers," as that term is defined by the CLRA in California Civil Code § 1761(d).

128.   The provision of computers and Pro-ESP warranties for the service thereof that Plaintiff and others similarly situated purchased from Defendants were "goods" within the meaning of California Civil Code § 1761.

129.   By engaging in the actions, representations, and conduct described above, Defendants have violated and continue to violate § 1770(a)(9), (14), (16), and (19) of the California Civil Code by advertising goods or services with the intent not to sell them as advertised.  Specifically, in violation of § 1770(a)(9), (14), (16), and (19), Gateway relied on an unconscionable assignment provision to transfer the Pro-ESP warranties to a company that was financially unable to service those warranties, made misrepresentations to Pro-ESP warranty customers about MPC's ability to service the warranties, refused to honor the warranties after MPC's bankruptcy, and continued to "deflect" Pro-ESP warranty customers to the bankrupt MPC.  Likewise, NEW failed to administer or service the Pro-ESP warranties after

1   MPC's bankruptcy, ███████████████████████████████

2   ███████████████████████████████

3       130.   CIVIL CODE § 1782 NOTICE:  Plaintiff, on or about October 12,

4   2010, provided to Defendants notice and demand that within thirty (30) days from

5   that date, Defendants correct, repair, replace or otherwise rectify the unlawful,

6   unfair, false, and or deceptive practices complained of herein.  Defendants failed to

7   do so.

8       131.   Pursuant to California Civil Code § 1780, on behalf of similarly

9   situated Class Members, Plaintiff seeks damages of at least $100 million, punitive

10  damages, and an award of $5,000 for each Class Member who is a disabled person

11  or a senior citizen, and restitution of any ill-gotten gains due to Defendants' acts and

12  practices.

13      132.   Plaintiff also requests that this Court award him costs and reasonable

14  attorneys' fees pursuant to California Civil Code § 1780(d).

15

16      WHEREFORE, Plaintiff respectfully requests that the Court enter judgment

17  against Defendants as follows:

18      1.     Certifying this action as a class action, pursuant to Rule 23(a) and

19  Rules 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, with a class

20  as defined above;

21      2.     On Plaintiff's First Cause of Action, declaring the Unilateral

22  Assignment Provision unenforceable and awarding Plaintiff and the Class all

23  appropriate remedies, including but not limited to damages as well as consequential

24  and incidental damages;

25      3.     On Plaintiff's Second Cause of Action, awarding Plaintiff and the Class

26  all appropriate remedies, including but not limited to damages as well as

27  consequential and incidental damages;

28

CALDWELL
LESLIE &
PROCTOR

-33-

SECOND AMENDED CLASS ACTION COMPLAINT

1        4.     On Plaintiff's Third Cause of Action, awarding Plaintiff and the Class

2   all appropriate remedies, including but not limited to reimbursement, restitution, and

3   disgorgement of all profits unjustly retained by Defendants;

4        5.     On Plaintiff's Fourth Cause of Action, awarding Plaintiff and the Class

5   all appropriate remedies, including but not limited to restitution and injunctive

6   relief.

7        6.     On Plaintiff's Fifth Cause of Action, awarding Plaintiff and the Class

8   all appropriate remedies, including but not limited to damages, as well as

9   consequential, incidental, statutory and punitive damages, and restitution and

10  injunctive relief.

11       7.     Awarding Plaintiff and the Class interest, costs and attorneys' fees; and

12       8.     Awarding Plaintiff and the Class such other and further relief as this

13  Court deems just and proper.

14

15  DATED: November 23, 2010          Respectfully submitted,

16                                    MEISELMAN, DENLEA, PACKMAN,
17                                    CARTON & EBERZ, P.C.
18                                    CALDWELL LESLIE & PROCTOR, PC

19

20  By _____ /MSR

21                                    ROBYN C. CROWTHER

22                                    Attorneys for Plaintiff and others similarly
                                      situated
23

24

25

26

27

28

CALDWELL
LESLIE &
PROCTOR

-34-
SECOND AMENDED CLASS ACTION COMPLAINT

# EXHIBIT A

**Gateway.**

Search [_____] GO

### News & Information

Press Releases · Background · Fact Sheet · Photo Library · Reviews · Locations · Consumers · Media

## Professional Segment Acquisition by MPC

MPC Corporation ("MPC") purchased Gateway's professional division (e.g. small, medium & large business, government and education lines) in October of 2007. Pursuant to the parties' agreement, MPC acquired, among other things, contracts between Gateway and its professional customers and any associated warranty service and support obligations. As such, all warranty requests should be directed to MPC's attention. Gateway is no longer responsible for warranty service and support obligations for customers who purchased professional division products.

### Support Content

As a courtesy to former Gateway professional customers, Gateway is providing links to drivers, downloads, specifications, user guides and other support documents on our website. This information is provided on an "as-is" basis. Gateway does not warrant the accuracy, correctness, reliability, comprehensiveness, or currency of any content. Gateway disclaims all warranties, express or implied, regarding any content, and further disclaims liability for any consequences from the use or misuse of any content.

### Additional Resources

Gateway does not endorse or support the use of third parties to provide support to former Gateway professional customers. However, Gateway is aware of a support forum for former Gateway professional customers looking for suggestions on how to receive support.

Gateway products are available through select retailers.

© 2010 Gateway | Legal | Privacy

Site Map ┊ About Us ┊ Feedback ┊ Contact Us

🌐 ┊ United States  (change country or region)

# EXHIBIT A

# EXHIBIT B

 **Gateway.**

Search ⟦ GO! ⟧

**News & Information**          Press Releases ⁝ Background ⁝ Fact Sheet ⁝ Photo Library ⁝ Reviews ⁝ Locations ⁝ Consumers ⁝ Media

## Professional Segment Acquisition by MPC

MPC Corporation ("MPC") purchased Gateway's professional division (e.g. small, medium & large business, government and education lines) in October of 2007. Pursuant to the parties' agreement, MPC acquired, among other things, contracts between Gateway and its professional customers and any associated warranty service and support obligations. As such, all warranty requests should be directed to MPC's attention. Gateway is no longer responsible for warranty service and support obligations for customers who purchased professional division products.

**Support Content**
As a courtesy to former Gateway professional customers, Gateway is providing links to drivers, downloads, specifications, user guides and other support documents on our website. This information is provided on an "as-is" basis. Gateway does not warrant the accuracy, correctness, reliability, comprehensiveness, or currency of any content. Gateway disclaims all warranties, express or implied, regarding any content, and further disclaims liability for any consequences from the use or misuse of any content.

**Third-Party Extended Service Plans**
Some Gateway professional division customers purchased third-party Extended Service Plans through Gateway. Those plans are generally products of AIG Warranty Guard, Inc. ("AIGWG") or AIG Warranty Services and Insurance Agency, Inc. ("AIGWS"). Many of those plans provide contact information for AIGWG and AIGWS. For example, "AIGWS and AIGWG can be contacted at 300 Riverside Plaza, Chicago, IL 60606. Telephone 1-800-250-3819." Those plans also provide that, "if, within sixty (60) days we have not paid a covered claim, provided you with a refund or you are otherwise dissatisfied you may make a claim directly to the insurance company." As of May 1, 2010, AIGWS and AIGWG's telephone number (1-800-250-3819) plays the following recorded message:

> Thank you for calling the warranty division of Chartis.

> Please listen carefully to this message. This is not a customer service or repair line. That number can be located in the service paragraph of your terms and conditions. This line is designed for claims that are over 60 days old. If you have such a claim you must send a complete and legible copy of the service plan contract you received, a copy of the original receipt, any other supporting documents, along with a brief description of what has taken place. Make sure to include all your contact information, preferably an email address. You can email it to warranty@aig.com, you can fax it to 1-866-668-8879, or you can mail it to our physical address at 80 Pine Street, 13th Floor, New York, NY 10005. After reviewing your information we will begin our research, and if we have questions, we will contact you.

> If you are a company inquiring about our product, please send either an email or a fax with your contact information and we will get back to you.

> Again, if you are a customer calling for any customer issue, such as service, registration, cancellation, parts, etc., contact the repair service number listed in your terms and conditions in the service paragraph. These customer lines are open 24 hours a day 7 days a week to assist you. To hear this message again, please press one.

Please review the terms of your specific third-party Extended Service Plan for applicable information.

**Additional Resources**
Gateway does not endorse or support the use of third parties to provide support to former Gateway professional customers. However, Gateway is aware of a support forum for former Gateway professional customers looking for suggestions on how to receive support.

Gateway products are available through select retailers.                    Site Map ⁝ About Us ⁝ Feedback ⁝ Contact Us

© 2010 Gateway ⁝ Legal ⁝ Privacy                                     🌐 United States (change country or region)

# EXHIBIT B

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

At the time of service, I was over 18 years of age and **not a party to this action**. I am
employed in the County of Los Angeles, State of California. My business address is 1000

4

Wilshire Boulevard, Suite 600, Los Angeles, California 90017-2463.

5

On November 23, 2010, I served true copies of the following document(s) described as

**REDACTED SECOND AMENDED CLASS ACTION COMPLAINT** on the interested parties

6

in this action as follows:

7

**SEE ATTACHED SERVICE LIST**

8

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be
sent from e-mail address harper@caldwell-leslie.com to the persons at the e-mail addresses listed

9

in the Service List. I did not receive, within a reasonable time after the transmission, any
electronic message or other indication that the transmission was unsuccessful.

10

**BY OVERNIGHT DELIVERY:** I enclosed said document(s) in an envelope or package

11

provided by the overnight service carrier and addressed to the persons at the addresses listed in the
Service List. I placed the envelope or package for collection and overnight delivery at an office or

12

a regularly utilized drop box of the overnight service carrier or delivered such document(s) to a
courier or driver authorized by the overnight service carrier to receive documents.

13

I declare under penalty of perjury under the laws of the United States of America that the

14

foregoing is true and correct and that I am employed in the office of a member of the bar of this
Court at whose direction the service was made.

15

Executed on November 23, 2010, at Los Angeles, California.

16

17

18

_____

Lauren Harper

19

20

21

22

23

24

25

26

27

28

**SERVICE LIST**
**Wilson v. Gateway**
**Case No. CV-09-07560 GW (VBKx)**

| | |
|---|---|
| Paul F. Rafferty<br>Eric M. Kennedy<br>JONES DAY<br>3161 Michelson Drive. Suite 800<br>Irvine, CA 92612<br>949-851-3939 Telephone<br>949-553-7539 Facsimile<br>prafferty@jonesday.com<br>emkennedy@jonesday.com | Counsel for Gateway, Inc. |
| David M. Walsh<br>Geoffrey T. Stover<br>Adam M. Sevell<br>PAUL, HASTINGS, JANOFSKY &<br>WALKER<br>515 South Flower, 25th Floor<br>Los Angeles, CA  90071<br>213-683-6000 Telephone<br>213-627-0705 Facsimile<br>davidwalsh@paulhastings.com<br>geoffstover@paulhastings.com<br>adamsevell@paulhastings.com | Counsel for National Electronics Warranty,<br>Inc. |
| Gail Lees<br>GIBSON DUNN & CRUTCHER LLP<br>333 S. Grand Avenue<br>Los Angeles, CA 90071<br>213-229-7000 Telephone<br>213-229-7520 Facsimile<br>glees@gibsondunn.com | Counsel for Chartis Warranty Services, Inc. |