1  DENLEA & CARTON LLP
2  JEFFREY I. CARTON (*pro hac vice*)
     *jcarton@denleacarton.com*
3  One North Broadway, Suite 509
4  White Plains, New York 10601
   Tel: (914) 920-7400
5
6  CALDWELL LESLIE & PROCTOR, PC
   ROBYN C. CROWTHER, State Bar No. 193840
7    *crowther@caldwell-leslie.com*
8  JEANNE A. FUGATE, State Bar No. 236341
     *fugate@caldwell-leslie.com*
9  MATTHEW O'BRIEN, State Bar No. 261568
     *obrien@caldwell-leslie.com*
10 725 South Figueroa Street, 31st Floor
11 Los Angeles, California  90017-5524
   Tel: (213) 629-9040 | Fax: (213) 629-9022
12
13 Attorneys for Plaintiff and others similarly situated

14             **UNITED STATES DISTRICT COURT**

15    **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

16

| | |
|---|---|
| 17 PETER WILSON, On behalf of himself and all others similarly situated, | Case No. CV-09-07560 GW (VBKx) |
| 18 | Hon. George H. Wu |
| 19            Plaintiff, | |
|       v. | **PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CONDITIONAL CLASS CERTIFICATION; DECLARATION OF ROBYN C. CROWTHER AND EXHIBITS THERETO** |
| 20 GATEWAY, INC., a California corporation; NATIONAL ELECTRONICS WARRANTY CORPORATION, a Delaware corporation, | |
| 21 | |
| 22 | |
| 23 | |
| 24            Defendants. | Date:  June 9, 2014 |
| 25 ———————————————— | Time:  8:30 a.m. |
| 26 GATEWAY, INC., | Courtroom: 10 |
| 27            Third Party Plaintiff, | |
|       v. | |

28

CALDWELL
LESLIE &
PROCTOR

1
2
3
4
5
6
7
8
9

NATIONAL ELECTRONICS
WARRANTY CORPORATION, a
Delaware corporation; CHARTIS
WARRANTY SERVICES, INC.
(F.K.A. AIG Warranty Services and
Insurance Agency, Inc.) a Delaware
corporation; and CHARTIS
WARRANTYGUARD, INC. (F.K.A.
AIG Warranty Guard, Inc.), a Delaware
corporation,

Third Party Defendants.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND FOR CONDITIONAL CLASS CERTIFICATION

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 9, 2014, at 8:30 a.m., or as soon thereafter as this matter may be heard, in Courtroom 10 of the above-entitled Court, located in the United States Courthouse, 312 N. Spring Street, Los Angeles, CA 90012, Plaintiff Peter Wilson will and hereby does move this Court for an order granting preliminary approval of a class-wide settlement reached in the above-captioned action, as well as for conditional certification of the Class defined in the Stipulation of Settlement and Release (the "Settlement Agreement").

This Motion is made pursuant to Fed. R. Civ. P. 23 and is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Robyn C. Crowther and exhibits thereto filed concurrently herewith, all of the pleadings and other documents on file in this case, all other matters of which the Court may take judicial notice, and any further argument or evidence that may be received by the Court at the hearing.

The required meet and confer pursuant to Local Rule 7-3 took place throughout the settlement negotiations, and, in particular, the filing of this Motion is contemplated by the Parties' Settlement Agreement, which states that Defendants will not oppose the Motion.  (Declaration of Robyn C. Crowther ("Crowther Decl."), ¶ 19.)

DATED:  May 12, 2014

Respectfully submitted,

CALDWELL LESLIE & PROCTOR, PC
ROBYN C. CROWTHER
JEANNE A. FUGATE
MATTHEW O'BRIEN

By ____/S/ Robyn C. Crowther____
     ROBYN C. CROWTHER
Attorneys for Plaintiff and others similarly situated

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ........................................................................... 1

II. PLAINTIFF'S SUMMARY OF CLAIMS AND PROCEDURAL
    HISTORY ................................................................................... 2

    A.  NEW and Gateway Sell 1.7 Million Professional Extended
        Service Plan Warranties .................................................. 2

    B.  Wilson's Warranty Purchase in 2005 ................................ 3

    C.  Wilson's Allegations of Defendants' Refusal to Service the
        Warranties ........................................................................ 3

        1.  Gateway Refers Wilson to the Bankrupt MPC ........... 3

        2.  Defendants Treated All Class Members Identically ...... 4

    D.  Plaintiff's Initiation of the Action .................................... 4

    E.  Wilson's Lawsuit Triggers a Change in Gateway's Conduct ......... 5

    F.  Procedural History Leading Up to the Mediation ............... 5

    G.  Mediation and the Settlement Agreement ......................... 7

III. SUMMARY OF THE SETTLEMENT AGREEMENT .................. 8

    A.  The Class Definition ......................................................... 8

    B.  The Significant Benefit to the Class ................................. 9

    C.  The Incentive and Fee Award .......................................... 9

IV. THE COURT SHOULD CERTIFY THE CLASS AND
    PRELIMINARILY APPROVE THE SETTLEMENT .................. 10

    A.  Standards for Preliminary Approval of the Settlement ......... 10

    B.  Class Certification Is Warranted ..................................... 11

        1.  The Proposed Class Satisfies the Numerosity Requirement
            of Rule 23(a)(1) .................................................. 12

        2.  The Proposed Class Satisfies the Commonality
            Requirement of Rule 23(a)(2) .............................. 13

        3.  The Proposed Class Satisfies the Typicality Requirement
            of Rule 23(a)(3) .................................................. 14

-i-

4.     The Proposed Class Satisfies the Adequacy Requirement of Rule 23(a)(4) ................................................................ 15

5.     The Requirements for Certification of an Injunctive Class Under Rule 23(b)(2) Are Met ...................................... 16

C.   The Settlement Meets the Requirements for Preliminary Approval ........................................................................................ 17

1.     The Settlement Agreement Should Be Presumed to Be Fair ......................................................................................... 18

2.     The Strength of Plaintiff's Case Weighs in Favor of Settlement Approval ........................................................... 19

3.     The Likely Duration of Further Litigation Weighs in Favor of Settlement Approval ...................................... 19

4.     The Risk of Maintaining Class-wide Status through Trial Weighs in Favor of Settlement Approval .................... 20

5.     The Settlement Consideration Weighs in Favor of Settlement Approval ........................................................... 20

6.     Plaintiff Has Sufficient Information to Determine the Propriety of the Settlement ............................................ 21

7.     The Experience and Views of Counsel Weigh in Favor of Settlement Approval ........................................................... 22

V.   PROCEDURAL ISSUES FOR THE RULE 23(B)(2) CLASS ...................... 22

A.   The Proposed Notice Is Reasonable ...................................... 22

1.     Settlement Administration and Content of the Class Notice ...... 23

2.     Dissemination of the Notice ...................................... 24

B.   The Appointment of the Class Representative and Class Counsel ....... 26

C.   Proposed Schedule of Events ............................................ 27

VI.   CONCLUSION ................................................................ 28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page(s)

Cases

*Amchem Prods. Inc. v. Windsor,*
    521 U.S. 591 (1997) ........................................................................ 10, 11, 14

*Blackie v. Barrack,*
    524 F.2d 891 (9th Circ. 1975) .................................................................... 13

*Browning v. Yahoo! Inc.,*
    No. C04-01463,
    2006 WL 3826714 (N.D. Cal. Dec. 27, 2006) .............................................. 17

*Celano v. Marriott Intern, Inc.,*
    242 F.R.D. 544 (N.D. Cal. 2007) ................................................................ 12

*Chavez v. Blue Sky Natural Beverage Co.,*
    268 F.R.D. 365 (N.D. Cal. 2010) ............................................................. 8, 13

*Churchill Village LLC v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004).......................................................................24

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir.1992).......................................................................10

*Consolidated Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473 (2nd Cir. 1995).........................................................................12

*Cotton v. Hinton,*
    559 F.2d 1326 (5th Cir. 1977).......................................................................22

*Dunleavy v. Nadler,*
    213 F.3d 454 (9th Cir. 2000).......................................................................11

*Grant v. Capital Management Services, L.P.,*
    10-CV-2471-WQH BGS,
    2013 WL 6499698 (S.D. Cal., Dec. 11, 2013)........................................16, 22

///
///

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND FOR CONDITIONAL CLASS CERTIFICATION

# TABLE OF AUTHORITIES
(continued)

Page(s)

Cases

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir.1998)........................................................11, 14, 15, 23

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992).........................................................14

*Harris v. Palm Springs Alpine Estates, Inc.*,
    329 F.2d 909 (9th Cir. 1964).........................................................12

*In re Abbott Laboratories Norvir Anti-Trust Litigation*,
    C 04-1511 CW,
    2007 WL 1689899 (N.D. Cal. 2007)..............................................12

*In re First Alliance Mortgage Co.*,
    471 F.3d  977 (9th Cir. 2006).........................................................14

*In re Immune Response Securities Litigation*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........................................18

*In re Pacific Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995).........................................................22

*In re Paxil Litig.*,
    212 F.R.D. 539 (C.D. Cal. 2003) .................................................13

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008).......................................................10

*In re Tobacco II Cases*,
    46 Cal.4th 298 (2009).....................................................................14

*Monterrubio v. Best Buy Stores, L.P.*,
    291 F.R.D. 443 (E.D. Cal. 2013)....................................................11

///
///

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND FOR CONDITIONAL CLASS CERTIFICATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
(continued)

Page(s)

<u>Cases</u>

*National Rural Telecommunications Cooperative v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .......................................................19, 20, 21

*O'Connor v. Boeing N.Am., Inc.*,
    184 F.R.D. 311 (C.D. Cal. 1998) .................................................................. 8

*Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*,
    688 F.2d 615 (9th Cir. 1982)....................................................................17, 20

*Perez-Funez v. Dist. Director, INS*,
    611 F. Supp. 990 (C.D. Cal. 1984).................................................................12

*Petrovic v. AMOCO Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999).........................................................................10

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009)............................................................................9

*Schaefer v. Overland Express Family of Funds*,
    169 F.R.D. 124 (S.D. Cal. 1996).....................................................................14

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir.2003)....................................................................10, 11, 15

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S.Ct. 2541 (2011) .............................................................................16, 22

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998).........................................................................13

*Weeks v. Kellogg Co.*,
    CV 09-08102 (MMM)(RZx),
    2013 WL 6531177 (C.D. Cal. 2013).........................................................25, 26

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*West v. Circle K Stores, Inc.*,
  CIV. S-04-0438,
  2006 WL 1652598 (E.D. Cal. June 13, 2006)..........................................17, 18

*Williams v. Mohawk Indus., Inc.*,
  568 F.3d 1350 (11th Cir. 2009)......................................................................13

Statutes

28 U.S.C. § 1715..............................................................................................28

Rules

Fed. R. Civ. P. 23(a) ........................................................................................11

Fed. R. Civ. P. 23(a)(1)....................................................................................12

Fed. R. Civ. P. 23(a)(4)....................................................................................15

Fed. R. Civ. P. 23(b)(2) ..............................................................................12, 16

Fed. R. Civ. P. 23(c)(2)(A)..............................................................................23

Fed. R. Civ. P. 23(e)(2)....................................................................................17

Fed. R. Civ. P. 23(g)(1) ..............................................................................16, 27

Fed. R. Civ. P. 23(g)(2)....................................................................................27

Fed. R. Civ. P. 23(h)(1)....................................................................................28

Other Authorities

5 *Moore's Federal Practice*,
  § 23.85[2][e] (Matthew Bender 3d ed.)..........................................................21

CALDWELL
LESLIE &
PROCTOR

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND FOR CONDITIONAL CLASS CERTIFICATION

1

**TABLE OF AUTHORITIES**
(continued)

2
Page(s)

3   7B Wright, Miller & Kane, Fed. Prac. & Proc.:
4         Civil 3D, § 1797.6 ....................................................................23

5   *Manual for Complex Litigation*,
6         § 13.14 (4th ed. 2004) .................................................................1

7   *Manual for Complex Litigation, Third*,
8         § 30.42 (1995) ............................................................................21

9   William B. Rubenstein, *Newberg on Class Actions*,
10        § 8:14 (Dec. 2013)......................................................................23

11  William B. Rubenstein, *Newberg on Class Actions*,
          § 8:16 (Dec. 2013)......................................................................23

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CALDWELL
LESLIE &
PROCTOR

-vii-

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND FOR CONDITIONAL CLASS CERTIFICATION

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.     INTRODUCTION**

3       After more than four and a half years of litigation, Plaintiff Peter Wilson[1] and

4  Defendants Gateway, Inc. ("Gateway") and National Electronics Warranty Corp.

5  ("NEW") (collectively, "Defendants") have accepted a mediator's proposal and

6  reached an agreement to settle this consumer class-action pursuant to the terms set

7  forth in the accompanying Stipulation of Settlement and Release (the "Settlement

8  Agreement").  The Settlement Agreement is the product of a complex and hard-

9  fought litigation, followed by an appeal and nearly a year of arm's-length settlement

10  negotiations, including formal mediation under the auspices of a private mediator,

11  the Honorable Patricia L. Collins (ret.)  To facilitate the settlement, Wilson seeks

12  preliminary approval of the Settlement Agreement and conditional certification of a

13  settlement class.

14       In this action, Wilson is the class representative for a putative class of

15  consumers who allegedly did not receive the benefits of the approximately 1.7

16  million extended computer warranties they purchased from Defendants.  The

17  proposed Settlement Agreement provides injunctive relief for the entire class of

18  similarly situated consumers, securing for them the complete benefit of the

19  computer warranties they purchased, in exchange for the dismissal of all claims

20  asserted in this action.

21       Federal Rule of Civil Procedure 23(e) requires judicial approval for the

22  compromise of claims brought on a class-wide basis.  Approval under Rule 23(e)

23  involves a two-step process:  first, entry of a "preliminary approval" order; and

24  second, after a hearing has been held to consider the fairness, reasonableness and

25  adequacy of the proposed settlement, entry of a "final approval" order or judgment.

26  *See Manual for Complex Litigation*, § 13.14 (4th ed. 2004).  In this initial stage of

27

28

---

[1]  During the course of this action, Peter Wilson changed his name to Peter
Schweitzer due to marriage. For ease of reference, we use his former name herein.

1   the approval process, the Court need only determine that the proposed settlement is

2   within the range of reasonableness.

3        Here, the injunctive relief afforded in the Settlement Agreement provides real

4   benefits to the class.  As a result of this settlement, the class will receive a year of

5   warranty service, the retail value of which is approximately $60.00 per consumer.

6   The class-wide recovery is particularly significant because the settlement was

7   reached during the pendency of an appeal from this Court's November 10, 2011

8   order dismissing the class claims and ordering Wilson to arbitrate his individual

9   claims in light of the Supreme Court's decision in *AT&T Mobility v. Concepcion*, --

10  U.S. --, 131 S. Ct. 740 (2011).  Thus, Wilson secured injunctive relief with concrete

11  benefits for a class of more than a million consumers who faced a real possibility of

12  obtaining no relief whatsoever.  Wilson therefore requests that the Court

13  conditionally certify the class and preliminarily approve the class-wide Settlement

14  Agreement.

15  **II.    PLAINTIFF'S SUMMARY  OF CLAIMS AND PROCEDURAL**

16         **HISTORY**

17        The facts recited herein are Plaintiff's allegations and are not conceded or

18  agreed to by Defendants.

19        ***A.    NEW and Gateway Sell 1.7 Million Professional Extended Service***

20              ***Plan Warranties***

21        Since 2005, class members purchased approximately 1.7 million extended

22  service plans from the Professional Business Line of Gateway.  (Third Amended

23  Complaint ("TAC"), Ex. C, ¶ 3.)  The computer warranties were sold by Gateway,

24  partially administered by NEW, and underwritten by third-party defendant Chartis

25  Warranty Services, Inc. ("Chartis").  Among other terms, the warranties contained an

26  arbitration clause that included a class action waiver.  (Docket No. ("Dkt. No.") 188

27  at p. 66 (¶ 5).)

28

**B.      Wilson's Warranty Purchase in 2005**

On July 20, 2005, as part of his preparations to enroll in his first year of college, Wilson purchased a package comprised of a new Gateway computer and four warranties.  (Ex. C, ¶¶ 84, 86, 87.)  One of the warranties was a Limited Warranty, valid for only ninety days from the date of purchase, that came with every Gateway computer.  The other three warranties were four-year extended service plans, which Wilson bought for additional protection.  (The three four-year extended service plans (which were packaged together with the 90-day Limited Warranty in a single booklet) are referred to herein as the "Pro-ESPs.")

**C.      Wilson's Allegations of Defendants' Refusal to Service the Warranties**

On August 27, 2007, Gateway announced that it was being acquired by Acer, Inc., the Taiwan-based technology giant.  (Ex. C, ¶ 41.)  Acer's $710 million acquisition did not include Gateway's Professional Business division (the Gateway division that sold the laptop and warranties to Wilson).  (*Id.*, ¶¶ 20-21.)  In October 2007, Gateway sold its Professional Business division to MPC Corporation ("MPC").  (*Id.*, ¶ 42.)  MPC would later service the approximately 1.7 million extended warranties.  (*Id.*)  Wilson contends that the terms of the sale confirm that Gateway knew, or should have known, about MPC's bleak financial situation.  (*Id.*, ¶ 43.)  In November 2008, MPC filed a voluntary petition for Chapter 11 bankruptcy.  (*Id.*, ¶¶ 51-55.)  Within one or two months of its bankruptcy filing, MPC stopped servicing all of the extended warranties, permanently.  (*Id.*, ¶¶ 54-55.)

**1.      Gateway Refers Wilson to the Bankrupt MPC**

In late 2008 or early 2009, Wilson's laptop stopped working.  (Ex. C, ¶ 115.)  As Gateway's own website directed, Wilson contacted Gateway by telephone for service.  (*Id.*, ¶ 116.)  A Gateway representative informed Wilson that, due to Gateway's recent sale of its Professional Business division to MPC, all service and support for Wilson's warranty was now being handled by MPC.  (*Id.*, ¶ 117.)

1  Wilson then contacted MPC, which informed him that it had ceased operations in

2  December 2008 due to its bankruptcy.  (*Id.*, ¶ 118.)

3         Wilson contacted Gateway for a second time to complain that he was entitled

4  to have his extended warranty honored by Gateway.  (*Id.*)  A Gateway

5  representative again referred Wilson to MPC.  (*Id.*)  Wilson then filed a Better

6  Business Bureau complaint, to which Gateway responded by stating:  "We do

7  understand the frustration that Mr. Wilson may be experiencing; however, Gateway

8  is no longer responsible for this account."  (*Id.*).

9              **2.    Defendants Treated All Class Members Identically**

10        Wilson was not alone.  Approximately 1.7 million extended warranties were

11  active as of October 1, 2007, when Gateway sold its Professional Business division

12  to MPC.  (Ex. C, ¶¶ 1, 8.)  Wilson contends that, after that date, Defendants treated

13  every extended warranty holder—i.e., every putative class member—exactly the

14  same.  (*Id.*, ¶¶ 72-83.)

15        Starting in late 2007, Gateway directed all warranty holders who called

16  Gateway's support hotline to MPC.  (*Id.*, ¶¶ 72-81.)  Wilson contends that similar

17  service refusals were provided when consumers emailed Gateway or visited its

18  technical support website.  (*Id.*, ¶ 75.)  Because the warranties instructed consumers

19  to call Gateway at 1-877-485-1464 to obtain service (the same number that Wilson

20  used to contact Gateway), Gateway transferred that number to MPC.  (*Id.*, ¶ 76.)

21        Rather than providing consumers with service, or directing them to NEW or

22  Chartis, Gateway informed consumers that they must contact MPC to obtain a

23  remedy.  (Dkt. No. 288, Schweitzer Decl., ¶¶ 11 & 15; Ex. C, ¶¶ 119-20.)

24      **D.    *Plaintiff's Initiation of the Action***

25        On October 16, 2009, Wilson filed suit on behalf of a nationwide class of all

26  persons who purchased an extended warranty from Gateway and whose warranty

27  service obligations were later transferred by Gateway to MPC in October 2007.

28  (Dkt. No. 1, ¶ 55.)  In his First Amended Complaint, filed on February 24, 2010,

1  Wilson brought claims for breach of contract and unjust enrichment against
2  Gateway.  (Dkt. No. 179.)  On March 24, 2010, Gateway filed its Answer and
3  asserted arbitration as its twenty-eighth affirmative defense.  (Dkt. No. 20 at p. 25.)
4  That same week, Gateway alerted NEW to this litigation by forwarding Wilson's
5  First Amended Complaint and Gateway's Answer to NEW's attorneys.  (Dkt. No.
6  288, Ex. D. to Crowther Decl.)

7  ### E.  *Wilson's Lawsuit Triggers a Change in Gateway's Conduct*

8  In June 2010, Gateway changed its website to instruct Pro-ESP holders how
9  to obtain support from Chartis.  (Dkt. No. 288, Crowther Decl., ¶¶ 10-11, 15); (Dkt.
10  No. 288, Ex. I to Crowther Decl.; Ex. C, ¶¶ 125-27.)  Sometime thereafter, NEW
11  reactivated the toll-free Pro-ESP support line.  (Ex. C, ¶ 127.)  The changes were a
12  direct result of this action and exemplify how Wilson *has already* ensured that
13  similarly situated consumers would receive the benefits of their Pro-ESP warranties.
14  (*Id.*, ¶ 128.)

15  ### F.  *Procedural History Leading Up to the Mediation*

16  Pursuant to the Court's scheduling orders regarding bifurcated discovery, the
17  Parties were to complete all class-related discovery by October 30, 2010.  (Court
18  Docket at p. 12 [Docket No. 39].)  Accordingly, between May and October, 2010,
19  Gateway and Wilson served each other with the full panoply of class-related
20  discovery, including document requests, interrogatories, requests for admission, and
21  deposition notices.  (Dkt. No. 177 at pp. 10-11; Dkt. No. 177-1, ¶ 3; Dkt. No. 177-3
22  – 177-7.)  Between July and November 2010, Gateway produced twenty massive
23  consumer databases and an additional 100,329 class-related documents to Wilson,
24  comprising 28 Gigabytes of data.  (Dkt. No. 300 at p. 25; Dkt. No. 63, Crowther
25  Decl., ¶ 2.)  On December 15, 2010, Gateway produced an additional 93,306 class-
26  related documents to Wilson, bringing its total production close to 200,000
27  documents.  (Dkt. No. 297 at p. 25; Dkt. No. 297-1, ¶ 6; Dkt. No. 288, ¶ 16.)

28

CALDWELL
LESLIE &
PROCTOR

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND FOR CONDITIONAL CLASS CERTIFICATION

1      On September 14, 2010, Gateway filed a Third Party Complaint with claims

2  for contractual indemnity and contribution against NEW and Chartis, alleging that

3  NEW and Chartis were liable to class members because NEW was the entity

4  responsible for servicing the extended warranties.  (Dkt. No. 179 at pp. 12-14; Dkt.

5  No. 288 at p. 4.)

6      On September 29, 2010, Wilson notified NEW that he would sue NEW for its

7  role in Gateway's alleged failure to honor the warranties.  (Dkt. No. 233, ¶ 5; Ex. C,

8  Ex. D at p. 1.).  Wilson filed a motion for leave to amend the First Amended

9  Complaint on October 12, 2010.  (Dkt. No. 288 at p. 4-5.)  In the Second Amended

10  Complaint ("SAC"), Wilson added claims under California's Unfair Competition

11  Law ("UCL") and Consumer Legal Remedies Act ("CLRA") against both Gateway

12  and NEW, and added NEW to the unjust enrichment claim.  (Dkt. No. 321 at p. 1;

13  Dkt. No. 179 at p. 2; Dkt. No. 288 at p. 4-6.)

14      On February 7, 2011, Wilson filed his Third Amended Complaint.  (Ex. C.)

15  The 57-page TAC included the same claims and parties as the SAC, but set forth

16  Wilson's allegations in more detail.  (*Id.*)

17      On February 10, 2011, the Court denied Gateway's initial motion to compel

18  arbitration, (Dkt. No. 186 at pp. 1-3), ruling that:

19          Gateway has waived its right to compel arbitration by

20          vigorously litigating this case virtually from its inception,

21          and by failing to compel arbitration or seek a stay in May

22          2010, when <u>certiorari</u> was granted in <u>Concepcion</u>.

23  (Dkt. No. 186 at p. 2.)  The denial was without prejudice, due to the Supreme

24  Court's forthcoming opinion in *Concepcion*.  (*Id*. at p. 1; Dkt. No. 358.)

25      NEW then filed its own motion to compel arbitration on February 24, 2011,

26  as well as a motion to dismiss the TAC and a motion to strike the TAC's class

27  allegations.  (Dkt. No. 267; Dkt. Nos. 206-208.)  Gateway also filed a motion to

28  dismiss, but did not seek to dismiss Wilson's UCL claim.  (Dkt. No. 267 at p. 5.)

The Court issued tentative written rulings on Defendants' motions and heard oral argument on April 21, 2011.  (Dkt. No. 341; Dkt. No. 267 at pp. 1-3.)  In the tentative rulings, the Court denied NEW's motion to strike, granted the motions to dismiss as to Wilson's contract claims, and ruled that Wilson had adequately pled both the UCL and CLRA claims, which could go forward.  (Dkt. No. 267 at pp. 1-3.)  However, the Court did not adopt its tentative opinions, and took the motions under submission.  (Dkt. No. 267 at p. 1.)

Six days later, on April 27, 2011, the Supreme Court issued *AT&T Mobility v. Concepcion*, -- U.S. --, 131 S. Ct. 740 (2011).  On May 23, 2011, Gateway filed a second motion to compel arbitration, and NEW filed a supplemental brief to its pending motion to compel.  (Dkt. Nos. 277 & 279; Dkt. Nos. 275 & 276.)  Extensive briefing on these motions ensued, and the Court heard five additional oral arguments on the subject.  (Dkt. No. 312; Dkt. No. 308; Dkt. No. 333.)  The Court finally granted each Defendant's motion to compel arbitration and dismissed the case with prejudice on November 10, 2011 (the "Arbitration Order").  (Dkt. No. 321 at pp. 1-2.)  The Arbitration Order expressly incorporated the five prior oral arguments and a tentative opinion from September 22, 2011.  (*Id.* at p. 2.)  By enforcing the arbitration clause and class action waiver in the Pro-ESPs, the Arbitration Order left each putative class member to pursue his or her own individual claims through arbitration.

Wilson filed a Notice of Appeal on December 5, 2011.  (Dkt. No. 324 at pp. 1-4.)  Briefing on the appeal was completed in July 2012 and the Ninth Circuit scheduled oral argument for May 6, 2013.

### G.   *Mediation and the Settlement Agreement*

On March 13, 2013, after the Appeal was fully briefed and prior to oral argument, the Parties participated in a full-day mediation under the guidance of the Honorable Patricia L. Collins (ret.) of ADR Services, Inc.  Following the mediation, there was a mediator's proposal and, after approximately a year of negotiating the

1  long-form settlement agreement between all Parties, the Settlement Agreement was

2  reached.  (Crowther Decl., ¶ 3.)

3       On February 28, 2014, Wilson filed an unopposed motion requesting that the

4  Ninth Circuit issue a limited remand to this Court to evaluate the proposed

5  Settlement Agreement.  The Ninth Circuit granted the motion.

6  **III.    SUMMARY OF THE SETTLEMENT AGREEMENT**

7       ***A.    The Class Definition***

8       Subject to several enumerated exceptions, the Settlement Agreement defines

9  the "Class" as "[A]ll holders of Extended Service Plans ("ESP") purchased for

10  Gateway computers on or before December 1, 2008 that had not expired as of

11  December 1, 2008."[2]  (Settlement Agreement, ¶ 1.3.)

12       "A class definition should be 'precise, objective and presently ascertainable."

13  *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010)

14  (quoting *Rodriguez v. Gates*, 2002 WL 1162675 at * 8 (C.D. Cal. 2002)).  A class

15  definition is sufficient if the description of the class is "definite enough so that it is

16  administratively feasible for the Court to ascertain whether an individual is a

17  member."  *O'Connor v. Boeing N.Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).

18  The Class definition meets this standard, as it has only two criteria:  (1) a holder of a

19  Pro-ESP purchased prior to December 1, 2008 (*i.e.*, prior to MPC's bankruptcy);

20  and (2) the ESP had not expired as of December 1, 2008.  These criteria are precise

21  and objective, and members of the class are easily ascertainable from the serial

22  numbers on the consumers' computers.  (*See* Settlement Agreement, ¶ 7.2(b).)

23

24

25

---

26  [2]  Excepted from the Class definition are officers, directors, employees (or
    immediate family members of the foregoing) of Defendants, including any parent,
27  subsidiary or affiliate of the Defendants, and counsel for Defendants and their
28  immediate family members.  (Settlement Agreement, ¶ 1.3(a)-(c).)

### B.      The Significant Benefit to the Class

Under the Settlement Agreement, every member of the Class (a "Class Member") will receive an additional year of warranty service, commencing on the date of the Court's final approval order.  (Settlement Agreement, ¶ 4.2(a).)  NEW is required to service the warranties.  (*Id.*)  Moreover, NEW must establish a dedicated phone number and implement appropriate protocols and training procedures for the personnel who will be charged with handling service claims made by the Class. (*Id.*)  NEW shall pay any and all costs associated with the shipping and handling of the Class Members' equipment, and must make arrangements for the repair and/or replacement of a Class Member's equipment at no cost to the Class Member.  (*Id.*) NEW estimates the retail price for the twelve additional months of warranty coverage for each Class Member who submits a valid claim to be $60.00. (Settlement Agreement, ¶ 7.5(b).)  Given that the Court previously dismissed the claims of the Class Members, the injunctive relief provides a significant benefit to each member of the Class that otherwise would be nonexistent.

### C.      The Incentive and Fee Awards

Under the Settlement Agreement, Class Counsel may request an incentive award for Wilson in the amount of $10,000.00, which Defendants will not oppose. (Settlement Agreement, ¶ 4.3(a).)  *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive *awards* are fairly typical in class action cases.").  The incentive award, if approved by the Court, will be paid by NEW, in addition to any amounts necessary to provide the Class relief.  (Settlement Agreement, ¶ 4.3(a).)  Accordingly, the incentive award will not erode or diminish the benefits to the Class in any way.  (*Id.*)

After reaching agreement upon all other material terms of the Settlement Agreement, the Parties negotiated the provisions relating to attorneys' fees, costs and expenses.  (Settlement Agreement, ¶ 10.1.)  Defendants agreed not to object to any application for an award of attorney's fees, costs and expenses of up to one

1  million dollars.  (Settlement Agreement, ¶ 10.3.)  The maximum fee award is less

2  than 50% of the lodestar for proposed Class Counsel's fees.  (Crowther Decl., ¶ 4.)

3  Significantly, the effectiveness of the Settlement Agreement is not conditioned upon

4  the Court's approval of the incentive award or the fee application.  (Settlement

5  Agreement, ¶¶ 4.3(b), 10.7.)

6  **IV.   THE COURT SHOULD CERTIFY THE CLASS AND**

7  **PRELIMINARILY APPROVE THE SETTLEMENT**

8    *A.    Standards for Preliminary Approval of the Settlement*

9      The Ninth Circuit has declared that a "strong judicial policy" favors

10  settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276

11  (9th Cir. 1992); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)

12  ("[T]here is a strong judicial policy that favors settlements, particularly where

13  complex class action litigation is concerned.").  Indeed, class action settlement

14  agreements should be deemed presumptively valid.  *See Petrovic v. AMOCO Oil*

15  *Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("[a] strong public policy favors

16  [settlement] agreements, and courts should approach them with a presumption in

17  their favor") (citations and quotations omitted).

18      Where, as here, "parties reach a settlement agreement prior to class

19  certification, courts must peruse the proposed compromise to ratify both the

20  propriety of the certification and the fairness of the settlement."  *Staton v. Boeing*

21  *Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  There are thus two parts to the Court's

22  inquiry.  "First, the district court must assess whether a class exists."  *Id.*; *Amchem*

23  *Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Such attention is of vital

24  importance, for a court asked to certify a settlement class will lack the opportunity,

25  present when a case is litigated, to adjust the class, informed by the proceedings as

26  they unfold.").  "Second, the district court must carefully consider 'whether a

27  proposed settlement is fundamentally fair, adequate, and reasonable,' recognizing

28  that '[i]t is the settlement taken as a whole, rather than the individual component

parts, that must be examined for overall fairness'." *Staton*, 327 F.3d at 952 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)) (citations omitted). However, at the stage of preliminary approval, the Court must determine only if the settlement falls within the "range of possible judicial approval." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 448 (E.D. Cal. 2013).

Here, the two-part inquiry dictates that the Court should (1) conditionally certify the class; and (2) preliminarily approve the Settlement Agreement.

### B.  Class Certification Is Warranted

The Ninth Circuit has long recognized that class actions may be certified for the purpose of settlement only. *See Hanlon*, 150 F.3d at 1019 (discussing "proposed settlement class"); *see also Amchem Prods. Inc.*, 521 U.S. at 620 (discussing approval of settlement class).  The Court has wide discretion in certifying a class for settlement purposes and will be reversed "'only upon a strong showing that [its] decision was a clear abuse of discretion.'" *Dunleavy v. Nadler*, 213 F.3d 454, 461 (9th Cir. 2000) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)).

Rule 23(a) sets forth the four prerequisites to class certification:  (1) the class must be so numerous "that joinder of all members is impracticable," (2) there must be "questions of law or fact common to the class," (3) the claims of the representative plaintiff must be "typical of the claims . . . of the class," and (4) the class representative must show that he "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  These requirements are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy of representation."  *Hanlon*, 150 F.3d at 1019.

In addition to satisfying the certification criteria of Rule 23(a), one of the four non-exclusive factors in Rule 23(b) must be satisfied.  Rule 23(b)(2) authorizes class certification where injunctive relief is sought, that is, where the Defendants have "acted or refused to act on grounds that apply generally to the class, so that final

1  injunctive relief or corresponding declaratory relief is appropriate respecting the

2  class as a whole."  Fed. R. Civ. P. 23(b)(2).

3      Under these standards, for settlement purposes, the Court should conditionally

4  certify a class for injunctive relief consisting of:  "[A]ll holders of Extended Service

5  Plans ("ESP") purchased for Gateway computers on or before December 1, 2008

6  that had not expired as of December 1, 2008."  (Settlement Agreement, ¶ 1.3.)

7      **1.      The Proposed Class Satisfies the Numerosity Requirement of**

8      **Rule 23(a)(1)**

9      Rule 23(a)(1) requires that the class be so numerous that joinder of all class

10  members is "impracticable."  Fed. R. Civ. P. 23(a)(1).  Impracticable does not mean

11  impossible, only that it would be difficult or inconvenient to join all members of the

12  class.  *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th

13  Cir. 1964).  Classes consisting of only 25 members have been held to be large

14  enough to justify certification.  *See Perez-Funez v. Dist. Director, INS*, 611 F. Supp.

15  990, 995 (C.D. Cal. 1984).  Indeed, Courts generally presume numerosity for

16  proposed classes that include 40 or more members.  *See Consolidated Rail Corp. v.*

17  *Town of Hyde Park*, 47 F.3d 473, 483 (2nd Cir. 1995); *Celano v. Marriott Intern,*

18  *Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal. 2007) (generally the requirement is satisfied

19  when the class comprises 40 or more members).

20      Here, the Class is at the other end of the spectrum, consisting of up to 1.7

21  million consumers who purchased warranties that were unexpired on December 1,

22  2008.  *See In re Abbott Laboratories Norvir Anti-Trust Litigation*, C 04-1511 CW,

23  2007 WL 1689899 *6 (N.D. Cal. 2007) ("Where 'the exact size of the class is

24  unknown, but general knowledge and common sense indicate that it is large, the

25  numerosity requirement is satisfied.'") (quoting 1 Alba Cone & Herbert B.

26  Newberg, Newberg on Class Actions § 3.3 (4th ed. 2002)).  This number easily

27  satisfies the numerosity requirement because joinder of such a large number of

28  individuals would be impracticable.

## 2. The Proposed Class Satisfies the Commonality Requirement of Rule 23(a)(2)

In addition, questions of fact and law are common to the proposed Class, as Rule 23(a)(2) mandates.  *See In re Paxil Litig.*, 212 F.R.D. 539, 549 (C.D. Cal. 2003) ("[T]he commonality requirement is interpreted to require very little.").  The question of commonality focuses on the relationship of facts and legal issues among class members.  *Chavez*, 268 F.R.D. at 377.  "It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).  The question is one of "common sense"; where "the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable," commonality is not defeated "by slight differences in class members' positions." *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).  The commonality requirement may be satisfied if the claims of the prospective class have even one significant issue common to the class.  *See, e.g.*, *Hanlon*, 150 F.3d at 1019-20; *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009) (finding that Rule 23(a)(2)'s "common question" requirement creates only a "low hurdle" to class certification).

The legal questions that Wilson asserts are common to each member of the Class include, but are not limited to, the following:

- whether Gateway violated contractual warranties and obligations;
- whether Defendants made representations and assertions that violated the Consumer's Legal Remedies Act; and
- whether Defendants engaged in unfair, unlawful, and deceptive trade practices in violation of the Unfair Competition Law.

(Ex. C, ¶ 131(b).)

1    Significantly, Wilson contends that Defendants treated all members of the

2    Class identically and that there is no real question that common questions of fact and

3    law predominate.

4         **3.     The Proposed Class Satisfies the Typicality Requirement of**

5                  **Rule 23(a)(3)**

6         The typicality requirement of Rule 23(a)(3) is satisfied when the claims or

7    defenses of the party representing the class are typical of the claims or defenses of

8    the other class members.  *See Amchem Prods.*, 521 U.S. at 625-26.  The purpose of

9    the typicality requirement is to ensure that the class representative will be motivated

10   to protect the interests of the class.  *See Hanon v. Dataproducts Corp.*, 976 F.2d

11   497, 508 (9th Cir. 1992).  "Some degree of individuality is to be expected in all

12   cases, but that specificity does not necessarily defeat typicality."  *Hanlon*, 150 F.3d

13   at 1020; *see also Staton*, 327 F.3d at 957 ("[T]ypicality does not mean that the

14   claims of the class representative[s] must be identical or substantially identical to

15   those of the absent class members." (internal citations omitted)).

16        Wilson's claims are typical of the Class that he seeks to represent:  each class

17   member purchased a Pro-ESP warranty that was unexpired as of December 1, 2008

18   and allegedly did not receive the full benefit of his or her Pro-ESP.[3]  (*See* Ex. C,

19   ¶¶ 135, 150, 158 & 166.)  As a result of this litigation, Pro-ESP holders are no

20   _____

21   [3]  Wilson's claims regarding Defendants' deceptive practices are made pursuant to
     the UCL and CLRA, not common law fraud.  "[R]elief under the UCL is available

22   without individualized proof of decision, reliance and injury," and Wilson must
     show only that "members of the public are likely to be deceived."  *In re Tobacco II*

23   *Cases*, 46 Cal.4th 298, 320 (2009).  Indeed, where, as here, a "centrally-orchestrated

24   scheme to mislead" is alleged, it is the scheme and not the precise details of any
     individual's experience that forms the nucleus of the class claims.  *In re First*

25   *Alliance Mortgage Co.*, 471 F.3d  977, 991 (9th Cir. 2006); *Schaefer v. Overland*

26   *Express Family of Funds*, 169 F.R.D. 124, 128-29 (S.D. Cal. 1996) (cases
     challenging the same unlawful conduct which affects both the named plaintiffs and

27   the putative class usually satisfy the typicality requirement irrespective of the

28   varying fact patterns underlying the individual claims).

1  longer directed to MPC.  Wilson's claims are thus the same (not just typical) as

2  those of the other Class Members.

3          **4.**        **The Proposed Class Satisfies the Adequacy Requirement of**

4                  **Rule 23(a)(4)**

5       The final requirement of Rule 23 provides that the class representative "fairly

6  and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The

7  Ninth Circuit has established a two-prong test for this requirement:  "(1) Do the

8  representative plaintiffs and their counsel have any conflicts of interest with other

9  class members, and (2) will the representative plaintiffs and their counsel prosecute

10  the action vigorously on behalf of the class?"  *Staton*, 327 F.3d at 957.  Wilson

11  meets both standards.

12       First, Wilson's interests are aligned with those of the other members of the

13  Class.  All allege the same problem:  they were denied the value of the Pro-ESPs

14  they purchased from Defendants.  *See Hanlon*, 150 F.3d at 1021 ("each potential

15  plaintiff has the same problem").  Wilson, like all other Class members who

16  contacted Gateway for warranty service during the relevant time period, was

17  repeatedly misdirected by Gateway to MPC.  (Ex. C, ¶¶ 74, 117.)  Wilson's interests

18  are thus not antagonistic to the proposed Class; rather, his interests are aligned

19  directly with those of the Class.

20       Second, Wilson has represented the class fairly and sought the best for them.

21  (*See* Section II. C, *supra*)  Wilson has been motivated to seek justice for the

22  allegedly improper denial of warranty service since Gateway deflected his inquiries

23  in early 2009.  (*Id.*)  Wilson initiated a formal complaint with the Better Business

24  Bureau and was upset by Gateway's utter failure to ensure that his computer was

25  serviced.  (*Id.*)  Wilson initiated this action after he learned that there were other

26  people who had purchased Pro-ESP warranties and been denied service.  (*Id.*)

27  Indeed, Wilson has already obtained significant benefits for the Class:  In June 2010

28  Gateway finally changed its website—as a result of this litigation—to instruct Pro-

ESP holders how to obtain support from Chartis, and sometime thereafter NEW

reactivated the toll-free Pro-ESP support line.  (*See* Section II.E, *supra*.)

In addition, the two law firms serving as proposed class counsel are well-suited to represent the interests of the proposed Class.  *See* Fed. R. Civ. P. 23(g)(1).  Wilson has engaged experienced, competent legal counsel to represent the Class.  (Crowther Decl. ¶¶ 6 & 10, Exs. A & B.)  Counsel have considerable experience with complex consumer class actions and have no conflicts that would prevent them from adequately representing the interests of the Class.  (Crowther Decl., ¶¶ 7-11.)

## 5.  The Requirements for Certification of an Injunctive Class Under Rule 23(b)(2) Are Met

The Rule 23(b)(2) Class should be certified because each "party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2); *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2557 (2011) ("Rule 23(b)(2) applies . . . when a single injunction or declaratory judgment would provide relief to each member of the class.").

Here, the first requirement of Rule 23(b)(2), that defendants "acted or refused to act on grounds that apply generally to the class," is easily met as explained in Section II.C, *supra*.  Indeed, Wilson seeks injunctive relief to remedy the Class's inability to obtain servicing under their Pro-ESPs.  The second requirement of Rule 23(b)(2), "that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," also is met.  Each Class Member was similarly unable to obtain the benefits of their Pro-ESP warranties.  Plaintiff's claims do not "entitle named or unnamed class members to any form of individualized injunctive relief."  *Grant v. Capital Management Services, L.P.*, 10-CV-2471-WQH BGS, 2013 WL 6499698, *4 (S.D. Cal., Dec. 11, 2013 ).  Rather, the equitable relief provided for in the Settlement Agreement provides the same

1   relief for the entire Class:  an additional 12-months of warranty service.

2   Accordingly, the Class is appropriate for certification under Rule 23(b)(2).

3              **C.     *The Settlement Meets the Requirements for Preliminary Approval***

4          Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action

5   settlement should be approved if it is "fair, reasonable, and adequate."  Fed. R. Civ.

6   P. 23(e)(2); *Officers for Justice v. Civil Service Comm'n of the City and County of*

7   *San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("the universally applied standard

8   is whether the settlement is fundamentally fair, adequate and reasonable").  "At this

9   first step of preliminary approval, the Court must conduct a *prima facie* review of

10  the relief and notice provided by the [Settlement Agreement], before the Court

11  orders notice sent to the tentative Settlement Class Members."  *Browning v. Yahoo!*

12  *Inc.*, No. C04-01463, 2006 WL 3826714, at *4 (N.D. Cal. Dec. 27, 2006) (citing

13  David F. Herr, *Annotated Manual For Complex Litigation* § 21.632 (4th ed. 2005)).

14  "The initial decision to approve or reject a settlement proposal is committed to the

15  sound discretion of the trial judge."  *Officers for Justice*, 688 F.2d at 625.

16         In conducting this analysis, the Court may look to the factors which it will

17  eventually consider in granting final approval of the settlement.  *See West v. Circle*

18  *K Stores, Inc.*, CIV. S-04-0438, 2006 WL 1652598, at *9 (E.D. Cal. June 13, 2006).

19  In the Ninth Circuit, district courts balance several factors in determining whether to

20  grant final approval:  (1) the strength of the plaintiff's case, (2) the risk, expense,

21  complexity, and likely duration of further litigation, (3) the risk of maintaining class

22  action status throughout the trial, (4) the amount offered in settlement, (5) the extent

23  of discovery completed and the stage of the proceedings, (6) the experience and

24  views of counsel, (7) the presence of a governmental participant, and (8) the

25  reaction of the proposed class members to the proposed settlement.  *Id.* (quoting

26  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  "Given that some

27  of these factors cannot be fully assessed until the court conducts its fairness hearing,

28

'a full fairness analysis is unnecessary at this stage.'"[4] *Id.* (quoting *Reade-Alvarez v. Eltman, Eltman & Cooper, PC*, 2006 WL 1367414, at *7 (E.D.N.Y. May 18, 2006)). Indeed, "[t]he court is really only concerned with 'whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys.'" *Id.* at *11 (quoting *Tenuto v. Transworld Sys., Inc.*, 2001 WL 1347235, at *1 (E.D. Pa. Oct. 31, 2001)).

> ### 1.    The Settlement Agreement Should Be Presumed to Be Fair

"As an initial matter, the fact that the settlement agreement was reached in arm's length negotiations after relevant discovery [has] taken place create[s] a presumption that the agreement is fair." *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) (quotations omitted) (alterations in original). Here, the Settlement Agreement is the product of extensive arm's-length negotiations conducted by experienced counsel and after significant discovery. (Crowther Decl., ¶¶ 3, 13.) Indeed, prior to the Arbitration Order, the Parties had exchanged more than 200,000 documents and engaged in lengthy motion practice. (*See* Section II.F, *supra*.) Then, during the pendency of the appeal from the Arbitration Order, the Parties voluntarily engaged in mediation before the Honorable Patricia L. Collins (ret.) of ADR Services, Inc. Following the mediation, there was a mediator's proposal and approximately a year of negotiations that led to the Settlement Agreement. These arm's-length negotiations that followed significant discovery "are highly indicative of fairness." *In re Immune Response Securities Litigation*, 497 F. Supp. 2d at 1171. Accordingly, the fairness, adequacy, and reasonableness of the Settlement Agreement may be presumed.

---

[4] Because there is no governmental participant and the reaction of class members cannot be gauged until the final approval hearing, these two factors weigh in favor of preliminary approval or, at a minimum, are neutral.

2.      **The Strength of Plaintiff's Case Weighs in Favor of Settlement Approval**

This factor requires the Court to balance the strength of the Plaintiff's case on the merits against the amount offered in settlement. *See National Rural Telecommunications Cooperative v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) [hereinafter "*NRTC*"] (citing 5 Moore Fed. Practice, § 23.85[2][b] (Matthew Bender 3d ed.)). "[A] proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." *Id.* Thus, in *National Rural Telecommunications Cooperative*, the court reviewed the settlement agreement and considered the issues in the case, and determined that "the settlement terms compare favorably to the uncertainties associated with continued litigation regarding the contested issues" in the case. *Id.*

Here, the Court already dismissed the class claims and ordered Wilson to arbitrate his individual claims. That Arbitration Order is on appeal. If this settlement were not approved, and Wilson's appeal were unsuccessful, the Class would receive no benefit whatsoever and each Class Member would be required to arbitrate his or her individual claims. In contrast, the Settlement Agreement provides immediate class-wide relief without the risks, costs, and time of individual arbitrations. The immediate and concrete benefits of the Settlement Agreement outweigh the uncertainties of obtaining no class relief at all.

3.      **The Likely Duration of Further Litigation Weighs in Favor of Settlement Approval**

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *NRTC*, 221 F.R.D. at 526 (quoting 4 A. Conte & H. Newberg, *Newberg on Class Actions,* § 11:50 at 155 (4th ed. 2002)). "It has been held proper to take the bird in hand instead of a prospective flock in the bush." *Id.* (quoting *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974)).

1    The parties in this lawsuit have engaged in aggressive, time-consuming, and
2   costly pretrial litigation.  Defendants have contested the merits of Wilson's claims
3   and his ability to pursue his class claims.  Those efforts resulted in the Arbitration
4   Order and an appeal.  In the absence of a settlement there are two scenarios:  (1) the
5   Arbitration Order is affirmed, in which case the class claims are dismissed and the
6   Class gets nothing; and (2) the Arbitration Order is reversed, and the case would be
7   remanded to this Court for a certification hearing and potential trial on the merits,
8   and presumably another appeal.  *See NRTC*, 221 F.R.D. at 527 ("Avoiding such a
9   trial and the subsequent appeals in this complex case strongly militates in favor of
10  settlement rather than further protracted and uncertain litigation.").  Given these two
11  alternatives to the Settlement Agreement, the compromise that gives immediate and
12  concrete benefits to the Class weighs heavily in favor of approval.  At a minimum,
13  the Settlement Agreement is well within the realm of reasonableness required for
14  preliminary approval.

15          **4.      The Risk of Maintaining Class-wide Status through Trial**
16                  **Weighs in Favor of Settlement Approval**

17          This Court has already determined that Wilson's claims must be arbitrated on
18  an individual, not class-wide, basis.  (Ex. D, at 2.)  Although the Arbitration Order is
19  the subject of appeal, there is a significant risk that it will be upheld and the Class
20  will be provided no relief.  Accordingly, this factor weighs so heavily in favor of
21  approval that it alone may be sufficient.  *See NRTC*, 221 F.R.D. at 525-26 ("Under
22  certain circumstances, one factor alone may prove determinative in finding
23  sufficient grounds for court approval.").

24          **5.      The Settlement Consideration Weighs in Favor of Settlement**
25                  **Approval**

26          In evaluating the consideration obtained by the class members, "[i]t is the
27  complete package taken as a whole, rather than the individual component parts, that
28  must be examined for overall fairness."  *Officers for Justice*, 688 F.2d at 628.  "[A]

proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *NRTC*, 221 F.R.D. at 527. Here, the settlement relief weighs in favor of approval. Initially, by filing this action, Wilson argues that he brought an end to Defendants' questionable conduct, and a resumption of honoring the extended warranties at issue. By doing so, as of June 2010, Wilson brought about the cessation of the alleged ongoing harm to the Class. The Settlement Agreement provides further relief, securing an extra year of warranty coverage for all Class Members. Thus, although the settlement does not include direct monetary relief for the Class, it formally stops Defendants' alleged unlawful practices and provides the entire Class with injunctive relief, the retail price of which is approximately $60.00 per valid claim. The significant benefits Wilson has secured for the Class weigh in favor of preliminary approval of the Settlement Agreement.

### 6.   Plaintiff Has Sufficient Information to Determine the Propriety of the Settlement

The extent of discovery may be relevant in determining the adequacy of the parties' knowledge of the case." *Manual for Complex Litigation, Third*, § 30.42 (1995). "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." 5 *Moore's Federal Practice*, § 23.85[2][e] (Matthew Bender 3d ed.).

Prior to the Arbitration Order, the Parties engaged in extensive discovery and Defendants produced more than 200,000 documents. The most significant obstacle to class-wide relief—the contractual arbitration provision with a class-action waiver—was extensively briefed and argued to this Court and the Ninth Circuit. The Parties arrived at a compromise based on a full understanding of the legal and factual issues. Indeed, the Settlement Agreement is a quintessential compromise

1   reached at a point in the litigation where, in the absence of a settlement, the Class

2   was at risk of receiving no relief whatsoever.

3           **7.      The Experience and Views of Counsel Weigh in Favor of**

4                    **Settlement Approval**

5           "'Great weight' is accorded to the recommendation of counsel, who are most

6   closely acquainted with the facts of the underlying litigation." *NRTC*, 221 F.R.D. at

7   528 (internal quotations and citations omitted); *see also Cotton v. Hinton*, 559 F.2d

8   1326, 1330 (5th Cir. 1977) ("the trial court is entitled to rely upon the judgment of

9   experienced counsel for the parties").  The basis for this reliance is that "[p]arties

10  represented by competent counsel are better positioned than courts to produce a

11  settlement that fairly reflects each party's expected outcome in the litigation." *In re*

12  *Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Indeed, when

13  evaluating a proposed settlement, the Court, "absent fraud, collusion, or the like,

14  should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559

15  F.2d at 1330.

16          Here, Class Counsel have extensive experience in prosecuting and settling

17  class actions, including consumer class actions.  (Crowther Decl., ¶¶ 6 & 10, Exs. A

18  & B.)  Class Counsel agree that the Settlement Agreement represents a strong result

19  for the Class, especially given the Arbitration Order and the significant risk that in

20  the absence of a settlement agreement each class member would be forced to pursue

21  his or her individual claims in arbitration.  (*Id.*, ¶ 18.)  Preliminary approval of a

22  settlement and notice of the settlement to the proposed class is appropriate.

23  **V.    PROCEDURAL ISSUES FOR THE RULE 23(B)(2) CLASS**

24          **A.     *The Proposed Notice Is Reasonable***

25          "When a class is certified under Rule 23(b)(2) and only provides for

26  injunctive relief, no notice of class certification is required." *Grant*, 2013 WL

27  6499698, at \*6; *see also Wal-Mart Stores, Inc.*, 131 S.Ct. at 2559 (Rule 23(b)(2)

28  "does not require that class members be given notice and opt-out rights").  Rather,

1   when certifying a class under Rule 23(b)(2), "the court may direct appropriate notice

2   to the class."  Fed. R. Civ. P. 23(c)(2)(A).  As the rule indicates, whether to direct

3   notice under Rule 23(c)(2)(A) is a decision within the court's discretion.  *See id.*

4          Nonetheless, "[a]s part of the court's process in reviewing the proposed

5   settlement, Rule 23(e) states that '[t]he court *must* direct notice in a reasonable

6   manner to all class members *who would be bound by the proposal.*'"  William B.

7   Rubenstein, *Newberg on Class Actions*, § 8:14 (Dec. 2013).  Notice under Rule

8   23(e) is not the same as Rule 23(c)(2)(A) notice.  Thus, while "[a]dequate notice is

9   critical to court approval of a class settlement under Rule 23(e)," *Hanlon*, 150 F.3d

10  at 1025, there is no statutory or due process requirement that extraordinary efforts be

11  made to ensure that all Class Members receive actual notice of the settlement.

12  Indeed, the Court has significant latitude to determine the type and extent of notice

13  that would be reasonable for the settlement of a claim.  *See* 7B Wright, Miller &

14  Kane, Fed. Prac. & Proc.: Civil 3D, § 1797.6 ("The court has complete discretion in

15  determining what constitutes a reasonable notice scheme, both in terms of how

16  notice is given and what it contains.").

17         The specifics of the notice are dictated by two requirements:  (1) "that the

18  court hold a fairness hearing on the proposed settlement," and (2) "the guarantee

19  that class members have the right to object to the settlement."  *Newberg on Class*

20  *Actions*, § 8:16.  Here, the Settlement Agreement and proposed notice to the Class

21  (the "Notice") provide for the administration of the settlement, the content of the

22  Notice, and the dissemination of the Notice (collectively, the "Notice Plan").  The

23  Notice Plan is calculated to ensure that Class Members have reasonable notice of the

24  fairness hearing and a right to object to the settlement, opt out of the Class, or enjoy

25  the benefits of the Settlement Agreement.

26         **1.    Settlement Administration and Content of the Class Notice**

27         The Settlement Agreement calls for the appointment of NEW as the

28  Settlement Administrator (subject to Court approval).  (Settlement Agreement, ¶

7.1.)  In this role, NEW assumes responsibility for performing (or for retaining and supervising Rust Consulting, Inc. ("Rust") in performing) and paying for all costs associated with:  (a) arranging for and overseeing publication of the Class Notice through internet banner advertisements; (b) creating and maintaining a settlement website (the "Settlement Website"); (c) creating and maintaining a toll-free number (the "Toll-Free Number") through which information about the Settlement Agreement can be obtained; (d) receiving requests for exclusion, or opt-outs, from the Class and compiling records relating to those requests; and (e) receiving and compiling objections to the Settlement Agreement.  (Settlement Agreement, ¶ 7.1.)

"Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quotations omitted).  The Parties negotiated the form of the Notice, which provides a definition of the Class, highlights the terms of the settlement, and provides instructions for requesting exclusion from the Class and objecting to the Settlement Agreement.  (Settlement Agreement, Ex. 1.)  The Notice also sets forth the date, time and place of the final approval hearing, along with the deadlines and procedures for requesting exclusion for the Class and objecting to the Settlement Agreement, and includes the addresses of the Court, Plaintiff's counsel, and the settlement administrator.  (*Id.*)

In total, the Notice provides more than enough information to provide Class Members the right to object to the Settlement Agreement, and, although not required, the Notice provides opt-out rights.

## 2.    Dissemination of the Notice

The Notice Plan is targeted at reaching the 1.7 million consumers who purchased the Pro-ESPs.  However, for the most part, Defendants did not sell computers directly to consumers and the sales occurred at least six years ago.  Accordingly, it would be cost prohibitive to attempt to track down current contact

1   information for individual Class Members.  Where, as here, "a national class . . .

2   consists of persons with unknown addresses, notice by publication is reasonable."

3   *Weeks v. Kellogg Co.*, CV 09-08102 (MMM)(RZx), 2013 WL 6531177, at \*11

4   (C.D. Cal. 2013).

5        In *Weeks*, for example, Judge Morrow approved notice by online publication

6   to a class of consumers who bought Kellogg's Rice Krispies and Cocoa Krispies:

7              [1] notice was published in online versions of newspapers,

8              websites sponsored by television stations, parenting

9              websites, and 782 parenting and consumer affairs blogs;

10             [2] by the creation of a website specifically addressing the

11             settlement; and [3] by the establishment of a toll-free

12             number that 120 class members had called as of July 15,

13             2011 to obtain information regarding the settlement.

14  *Id.*, at \*1, \*11.

15       Here, the Notice Plan in the Settlement Agreement applies a similar three-

16  pronged approach to target consumers who own a Gateway computer, because

17  common sense dictates that the easiest way to find unknown individuals who own a

18  computer is via a computer (*i.e.*, through online advertisements).  *See* Fed. R. Civ. P.

19  23(e)(1) (notice of settlement must be in a "reasonable manner").

20       First, as in *Weeks*, notice will be published on a vast array of online media

21  and publications.  In particular, ads on the social networking site *Facebook.com* will

22  yield an estimated 14,150,943 impressions.  Ads on *24/7 Real Media* will reach a

23  network that represents more than 5,000 websites across a variety of interests.  The

24  advertisements will yield an estimated 14,140,943 impressions.  Ads on *Specific*

25  *Media* will reach a portfolio of websites that include sites in the genres of arts &

26  entertainment, automotive, business, personal finance, careers & jobs, community,

27  family & parenting, food & drink, health, home & garden, news & media, pets,

28  politics, portals, real estate, reference, research & education, shopping, sports &

recreation, technology, toys & games, travel & tourism, and weather.  The *Specific Media* ads will yield an estimated 5,665,722 impressions.  In total, in excess of 61,000,000 impressions are expected from the online advertisements alone.  (Settlement Agreement, ¶ 7.2(b).)  These online advertisements will take the form of "banners," that when clicked will take the consumer to the Settlement Website.  (Settlement Agreement, Ex. 2.); *cf. Weeks*, 2013 WL 6531177, *4 (approving banner ads that redirect consumers to a settlement website).

Second, as in *Weeks*, NEW shall retain and pay Rust Consulting, Inc. ("Rust") to set up and maintain a Settlement Website.  The Settlement Website will allow visitors to access and print a complete copy of the Class Notice, the Settlement Agreement, a Q&A Form, and to determine whether they are class members.  (Settlement Agreement, ¶ 7.2(b).)  The Settlement Website will be accessible through the aforementioned banner advertisements, as well as through routine Internet searches like those at google.com and yahoo.com.

Third, also as in *Weeks*, NEW, working with Rust, will set up and maintain the Toll-Free Number, which shall allow callers to request copies of the Class Notice and the Settlement Agreement and to determine whether they are members of the Class.  (Settlement Agreement, ¶ 7.2(c).)

Finally, Class Members also can obtain full relief by calling the toll-free number in their warranty, which was reactivated as a result of this litigation almost four years ago in 2010.  (*See* Section II.E, *supra*.)

This multi-pronged Notice Plan satisfies the reasonableness requirements of Rule 23(e).

### B.   *The Appointment of the Class Representative and Class Counsel*

The Settlement Agreement calls for the preliminary approval of Wilson as the class representative for settlement purposes only.  (Settlement Agreement, ¶ 5.1(d).)  It also calls for the preliminary approval of Denlea & Carton LLP and Caldwell Leslie & Proctor, PC as "Class Counsel."  (*Id.*, § 5.1(c).)

First, Wilson should be preliminarily approved as the class representative.  He has diligently pursued his rights against Defendants since 2008 and, as explained above, his claims are typical of the Class that he seeks to represent:  each Class Member purchased a Pro-ESP warranty that was unexpired as of December 1, 2008 and was allegedly denied the benefit of his or her bargain.

Second, "a court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).  When an applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4).  *See* Fed. R. Civ. P. 23(g)(2).  Under Rule 23(g)(1), the Court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1).  Under Rule 23(g)(4), class counsel must fairly and adequately represent the interests of the class.

Here, the proposed Class Counsel have diligently prosecuted this action for almost five years.  They have investigated the facts and the applicable law, and invested thousands of hours and a significant amount of their own financial resources in pursuing this action.  Moreover, proposed Class Counsel have experience in commercial class-action litigation and have fairly and adequately represented the interests of the Class.  Indeed, in the absence of the diligence of Class Counsel, the Class would be obtaining no relief whatsoever.

## C.    *Proposed Schedule of Events*

In connection with preliminary approval of the settlement, the Court must set a final approval hearing date, as well as dates for providing Notice to the Class, and setting deadlines for objecting to or in support of the Settlement Agreement.  Under the Class Action Fairness Act, notice of the settlement also must be provided to certain state and federal officials no later than ten business days following the filing

1  of this motion for preliminary approval.  28 U.S.C. § 1715.  Additionally, the final

2  approving hearing may not be set until at least 90 days after Defendants provide the

3  notification to federal and state officials.  *See id*.

4       In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys'

5  fees] must be served on all parties and, for motions by class counsel, directed to

6  class members in a reasonable manner."  Fed. R. Civ. P. 23(h)(1).  Here the Notice

7  and Settlement Agreement satisfy the requirements of Rule 23(h)(1), as they notify

8  the Class Members that Plaintiff's counsel will apply to the Court for attorneys' fees

9  on the same date as the fairness hearing.  The details of the agreement regarding

10  attorneys' fees are available at the Settlement Website, which is accessible through

11  the banner advertisements, the Toll-Free Number and the Internet.

12       Based on the foregoing and the agreement of the Parties, Wilson proposes the

13  schedule attached hereto as Appendix A, which contemplates a hearing for final

14  approval on August 25, 2014.

15  **VI.   CONCLUSION**

16       For all the foregoing reasons, Plaintiff Peter Wilson requests that the Court

17  grant his motion to conditionally certify the class, preliminarily approve the

18  Settlement Agreement, and endorse the schedule attached at Appendix A.

19

20  DATED:  May 12, 2014            Respectfully submitted,

21                                 CALDWELL LESLIE & PROCTOR, PC
22                                 ROBYN C. CROWTHER
23                                 JEANNE A. FUGATE
                                   MATTHEW O'BRIEN
24

25                                 By ____/S/ Robyn C. Crowther____
26                                       ROBYN C. CROWTHER
27                                 Attorneys for Plaintiff and others similarly
                                   situated
28

## APPENDIX A

| | |
|---|---|
| Motion for preliminary approval to be filed | May 12, 2014 |
| Opposition (if any) to Wilson's motion for preliminary approval | May 19, 2014 |
| Deadline for serving CAFA notice to state and federal authorities.  28 U.S.C. § 1715. | May 22, 2014 |
| Reply (if any) in support of motion for preliminary approval | May 26, 2014 |
| Hearing on motion for preliminary approval | June 9, 2014 (8:30 a.m.) |
| Motion for attorney's fees and costs to be filed. | July 7, 2014 |
| Publication of Class Notice | 30 days after the entry of the Preliminary Approval Order |
| Deadline for requesting exclusion from the Class | Requests must be postmarked no later than thirty (30) days following the publication of the Class Notice |
| Deadline for Objecting to the Settlement Agreement | Objections must be postmarked no later than thirty (30) days following the publication of the Class Notice |
| Opposition (if any) to motion for attorney's fees and costs | July 21, 2014 |
| Reply (if any) to motion for attorney's fees and costs | July 28, 2014 |
| Deadline for filing initial papers in support of final approval the Settlement Agreement | July 28, 2014 |

CALDWELL
LESLIE &
PROCTOR

1
2
3

Deadline for filing opposition
(if any) to motion for final
approval the Settlement
Agreement

August 4, 2014

4
5
6

Deadline for Class Members to
file and serve notice of
appearance at the fairness
hearing

August 4, 2014

7
8
9

Deadline for filing reply papers
(if any) in support of motion for
final approval the Settlement
Agreement

August 7, 2014

10
11
12

Fairness Hearing (motions for
final approval and attorney's
fees and costs)

August 25, 2014 (8:30 a.m.)

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28